1  Sean Alex Roundtree
   2840 S. Diamond Bar Blvd. #L-149
2  Diamond Bar, CA 91765
   peaceandrest@live.com
3  602.472.8269
4  Plaintiff in Pro Per

5

6

7                              **CV-14-00438-PHX-NVW**

8            **IN THE UNITED STATES DISTRICT COURT**
9              **FOR THE DISTRICT OF ARIZONA**

10
   SEAN ALEX ROUNDTREE; and            Civil Action No:
11 SEAN ALEX ROUNDTREE,
12 on behalf of his minor son, E. J. N.   **COMPLAINT FOR DAMAGES**
                                          **PURSUANT 18 U.S.C. § 1962**
13                Plaintiffs               **RICO STATUETS**

14                                         **JURY TRIAL DEMANDED**
   vs.
15
16 PHOENIX SUNS LIMITED PARTNERSHIP,
   a Delaware company; JERRY COLANGELO    RICO (A)(C) & (D)
17 and JANE DOE COLANGELO, husband and    Injunctive Relief
18 wife; MEL SHULTZ and JANE DOE SHULTZ,  Declaratory Relief
   husband and wife; DAVID EATON and JANE  Common Law Fraud
19 DOE EATON, husband and wife; UNKNOWN   AZRAC
   PHOENIX SUNS LIMITED PARTNERSHIP       42 USC 1983
20 PARTNERS I-XX, husbands and wives;     42 USC 1985
21 PHOENIX ARENA SPORTS LIMITED          18 USC 242
   PARTNERSHIP d/b/a ARIZONA RATTLERS,    Lack of Consent/Battery
22 a Delaware limited partnership; UNKNOWN  Aiding/Abetting
23 PHOENIX ARENA SPORTS LIMITED          Unjust Enrichment
   PARTNERSHIP PARTNERS I-XX,             Successor Corporation
24 husbands and wives; SPORTS AND        Fraudulent Concealment
25 ENTERTAINMENT SERVICES, INC,          Constructive Fraud
   an Arizona company; BRYAN COLANGELO   Equitable Estoppel
26 and BARBARA COLANGELO, husband and    Bad Faith
27 wife; WILFORD DANNY WHITE and JANE    Aiding/Abetting
   DOE WHITE, husband and wife; PETE KETTELA  Civil Conspiracy
28

THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICES
AND IS SUBJECT TO REJECTION BY THE COURT.

REFERENCE  7.1(b)(i)
                    (Rule Number/Section)

                    Complaint

1

and JANE DOE KETTELA, husband and wife;
MATT ANDERSON, ATC and JANE DOE ANDERSON,
husband and wife; CENTER FOR SPORTS MEDICINE
AND ORTHOPEDICS PLLC; DR. JOEL S. SELLERS
and JANE DOE SELLERS, husband and wife;
DR. D. MATTHEW MADDOX and JANE DOE
MADDOX, husband and wife; DR. EDWARD
P. MCDERMOTT and JANE DOE MCDERMOTT,
husband and wife; DR. RICHARD EMERSON and
JANE DOE EMERSON, husband and wife; ARIZONA
FOOT HEALTH formerly AMERICAN MEDICAL
FOOTCARE CENTER, an Arizona company; DR.
MICHAEL JUDAH KATES and JANE DOE KATES,
husband and wife; DR. JEFFERY COPOLOFF and
JANE DOE COPOLOFF, husband and wife;
ESTATE of DR. KENNETH A. JOHNSON; DR.
TODD A. KILE and JANE DOE KILE, husband and
wife; DR. J.P. NELSON and JANE DOE NELSON,
husband and wife; GEOFFERY P. FLETCHER and
JANE DOE FLETCHER, husband and wife; MAYO
CLINIC d/b/a MAYO CLINIC SCOTTSDALE, a
Minnesota Corporation; MAYO FOUNDATION
FOR MEDICAL EDUCATION AND RESEARCH,
a Minnesota company; ROBERT SARVER and
JANE DOE SARVER, husband and wife; SUNS
LEGACY PARTNERS LLC, d/b/a PHOENIX
SUNS, a Delaware company; UNKNOWN SUNS
LEGACY PARTNERS I-XXX, husbands and wives;
SUNS LEGACY HOLDINGS LLC, a Delaware
company; UNKNOWN SUNS LEGACY HOLDINGS
PARTNERS I-XXX, husbands and wives; SUNS LEGACY
PROPERTIES LLC, a Delaware company; UNKNOWN
SUNS LEGACY PROPERTIES PARTNERS I-XXX,
husbands and wives; LEGACY GP, LLC d/b/a PHOENIX
ARENA SPORTS LIMITED PARTNERSHIP, a Delaware
company; UNKNOWN LEGACY GP PARTNERS I-XXX,
husbands and wives; PHOENIX ARENA GP, LLC d/b/a
PHOENIX ARENA DEVELOPMENT LIMITED
PARTNERSHIP, a Delaware company; UNKNOWN
PHOENIX ARENA GP, LLC PARTNERS I-XXX,
husbands and wives; STATE COMPENSATION FUND
OF ARIZONA, d/b/a COPPER POINT MUTUAL INSURANCE

Good Faith Fair Dealing
Alter Ego/Corporate
Tortious Interference
IIED
NIED
Negligent Supervision
Fraudulent Misrepresent
Negligent Misrepresent
Intentional Misrepresent
Negligence
Aiding/Abetting
Gross Negligence
Aiding/Abetting
Loss of Consortium
Loss of Earning Capacity
Pain and suffering
Anxiety
Breach of Contract
Punitive Damages

1  COMPANY, COPPER POINT NATIONAL INSURANCE
   COMPANY, COPPER POINT PREMIER INSURANCE
2  COMPANY, COPPER POINT WESTERN INSURANCE
3  COMPANY, Arizona Corporations; HCX, INC., d/b/a APS
   HEALTHCARE INC., a Delaware Corporation; LYNELL
4  S. BROWN and JOHN DOE BROWN, wife and husband;
   GARVIS R. BRAND and JANE DOE BRAND, husband
5  and wife; JERRY JIMENEZ and JANE DOE JIMENEZ,
6  husband and wife; PETER KILGARD and JANE DOE
   KILGARD, husband and wife; VALARIE MOORE and
7  JOHN DOE MOORE, wife and husband; J.A.K. and
8  JOHN/JANE J.A.K. DOE, husband and wife; E.V.A. and
   JOHN/JANE E.V.A. DOE, husband and wife; C.A.M.
9  and JOHN/JANE C.A.M. DOE, husband and wife;
10 UNKNOWN SCF SECURITY GUARD and JOHN/JANE
   UNKNOWN SCF SECURITY GUARD DOE, husband and
11 wife; JANINE MILLS and JOHN DOE MILLS, wife and husband;
12 SHARON M. HENSLEY and JOHN DOE HENSLEY, wife
13 and husband; MARILYN WAITE AND JOHN DOE WAITE, wife
   and husband; SUE SULLIVAN and JOHN DOE SULLIVAN,
14 wife and husband; ELLEN COUGHLIN and JOHN DOE
15 COUGHLIN, wife and husband; EVA KELLER, and JOHN
   DOE KELLER, wife and husband; CHRISTI LUKASZKIEWICZ
16 and JOHN DOE LUKASZKIEWICZ, wife and husband;
17 DEBBIE WALKER and JOHN DOE WALKER, wife and
   husband; BOBBY J. FOX and JOHN DOE FOX, wife and
18 husband; DONALD A. SMITH and JANE DOE SMITH,
19 husband and wife; JUDITH PATRICK and JOHN DOE
   PATRICK, wife and husband; BILL SHELDON and JOHN
20 DOE SHELDON, husband and wife; BRENT NELSON
21 and JANE DOE NELSON, husband and wife; JAMES STABLER
   and JOHN DOE DOHERTY, husband and wife; GINNY ARNETT
22 CARO and JOHN DOE CARO, wife and husband; DANIEL A.
23 WITT and JOHN DOE WITT, husband and wife; MARK KENDALL
   and JANE DOE KENDALL, husband and wife; BARRY &
24 HETZER, an Arizona corporation; UNKNOWN BARRY
   & HETZER ATTORNEYS I-V, husbands and wives; JULIE
25 A. DOHERTY and JOHN DOE DOHERTY, wife and husband;
26 KLEIN, DOHERTY, LUNDMARK, BARBERICH & LA MONT,
   P.C., an Arizona company; INDUSTRIAL COMMISSION OF
27 ARIZONA, a quazi-governmental entity; LAURA MCGORY
28 and JOHN DOE MCGORY, wife and husband, individual

and/or official capacity; UNKNOWN 1996 INDUSTRIAL
COMMISSION OF ARIZONA DIRECTOR, husband and
wife, individual and/or official capacity; KAREN
HAMILTON-ELLERMAN and JOHN DOE ELLERMAN, wife and husband
ROBERT T. WILSON and JANE DOE WILSON, husband and
wife, individual and/or official capacity; WALTER W. GALLAHER
and JANE DOE GALLAHER, husband and wife, individual
and/or official capacity; EILEEN S. WILLETT and JOHN DOE
WILLETT, wife and husband, individual and/or official capacity;
UNKNOWN 1996 ICA DIRECTOR and and JOHN/JANE
DOE, husband and wife; LAYNA TAYLOR and JOHN DOE
TAYLOR, wife and husband, individual and/or official capacity;
HARRIET L. TURNEY and JOHN DOE TURNEY, wife and
husband, individual and/or official capacity; MELINDA K. POPPE,
and JOHN DOE POPPE, wife and husband, individual and/or
official capacity; DEBORAH NYE and JOHN DOE NYE, wife
and husband, individual and/or official capacity; GLORIA
GONZALEZ and JOHN DOE GONZALEZ, wife and husband,
individual and/or official capacity; DR. RICHARD P. JACOBY
and JANE DOE JACOBY, husband and wife; VALLEY FOOT
SURGEONS, is an Arizona corporation; DR. WILLIAM J.
LEONETTI and JANE DOE LEONETTI, husband and wife;
JUAN DOE and JANE JUAN DOE, husband and wife;
ARIZONA FOOT & ANKLE CARE, P.C., an Arizona company;
DENNIS R. KURTH and JANE DOE KURTH, husband and
wife; ALAN M. SCHIFFMAN and JANE DOE SCHIFFMAN,
husband and wife; JAVIER A. PUIG and JANE DOE PUIG,
husband and wife; MATTHEW CRAIG FENDON, and JANE
DOE FENDON, husband and wife; DON A. FENDON and JANE
DOE FENDON, husband and wife, FENDON LAW FIRM, P.C.,
an Arizona company; DR. STANLEY GRAVES and JANE DOE
GRAVES, husband and wife; DR. STANLEY GRAVES, M.D.
FOOT AND ANKLE, P.C., an Arizona company;
PHOENIX MUNICIPAL JUDGE LANCE P. JACOBS
and JANE DOE JACOBS, husband and wife, official and/or
individual capacity; UNKNOWN PHOENIX MUNICIPAL
COURT CLERK and JOHN/JANE DOE UNKNOWN CLERK,
husband and wife, individual and/or official capacity; SARAH
PENTTINEN and JOHN DOE PENTTINEN, wife and husband;
individual and/or official capacity; DR. JEROME COHN and JANE
DOE COHN, husband and wife; COLLENE COLE and JOHN
DOE COLE, husband and wife; INDUSTRIAL COMMISSION

SPECIAL FUND, a quazi-governmental entity; UNKNOWN
1999 SPECIAL FUND DIRECTOR, husband and wife;
LINDA LODWICK and JOHN DOE LODWICK, wife and
husband; ALJ JOSEPH MOORE and JANE DOE MOORE,
husband and wife, individual and/or official capacity;
ROBERT GAYLEN and JANE DOE GAYLEN,
husband and wife; PALMER MARTINES and
JANE DOE MARTINES, husband and wife;
PHX BIKE, an Arizona Company.

Defendants

---

## ORIGINAL COMPLAINT

**COMES NOW,** Sean Alex Roundtree, ("*the* Plaintiff or Roundtree") and Plantiff or Roundtree on behalf of Roundtree minor child, E.J.N., and by and through himself, hereby submits this well plead Complaint as Pro Se as follows:

## SUMMARY OF COMPLAINT

1. In 1993, a group of individuals, in all phases of workers compensation insurance and already concertedly associated for a common purpose of engaging in conspiracy to limit liability to employer's workmens compensation policies.

2. Roundtree, a professional football player injured with Arizona Rattlers was defrauded of his claims to benefits and workmen's compensation benefits[1] (*collectively,* Benefits) as well as his Workmens Compensation Rights, U.S. Constitutional Rights, Fourteenth Amendment Rights, Arizona Constitutional Rights and Human Rights (*collectively,* Rights).

3. The Employer/Policyholder: Named PSLP Defendant Jerry Colangelo (J. Colangelo) and/or named LEGACY Defendant Robert Sarver (Sarver), the former and current

---

[1] To include Medical, Compensation and Vocational Benefits.

managing partners of Phoenix Suns respectively, through the power and influence of their rise, executive positions, partnerships, subsidiary companies, contacts and/or agents have paid and continue to pay Defendant officers, directors, employees, trainers, doctors, agents and/or associate-in-fact enterprise members conspired to include but not limited to commit willful misconduct; perjury; misrepresenting, concealing, omitting and/or failing to disclose actual present symptoms of injury and/or accurate factual medical foundation; and defrauding Roundtree[2] of his Benefits and Rights.

4. The Insurer: Named SCF Defendant officers, directors, lawyers, doctors, employees, contacts, agents and/or associate-in-fact enterprise members fraudulently and deliberately furthered this fraud to include but not limited to conspiracy to commit: willful misconduct; misrepresenting, concealing, omitting and/or failing to disclose actual present symptoms of injury and/or accurate factual medical foundation; terminating or denying Benefits through fraudulent means; paying operating costs with embezzled Benefits; paying embezzled Benefits as dividends to policyholders; misrepresenting, concealing and/or spoliation of evidence; conspiring to commit perjury; conspiring to deny due process; coercion; intimidation; retaliation; harassment; and extortion per se.

---

[2] Roundtree contends Defendants fraud is bigger than him and discovery might well uncover thousands of employee and non-employee victims of Defendants elaborate fraud scheme and also might well show Defendant SCF huge revenues after the 1969 seperation from the ICA were derived by fraudulent means.

5. The Regulatory Agency: Named ICA Defendant officers, directors, ALJs, employees, agents and/or associate-in-fact enterprise members fraudulently and deliberately furthered this fraud to include but not limited to: obstruction of justice; misrepresenting, concealing and/or omitting actual present injury symptoms and/or accurate factual medical foundation; misrepresent, conceal and/or spoliation of evidence; conspiring to commit perjury; conspiring to deny due process; conspiring to deny right to property; conflict of interests; duress; abuse of process; abuse of discretion; misrepresenting vocational rehabilitation benefits; threats; intimidation; harassment and retaliation.

6. As a direct and proximate result of Defendants, pattern of racketeering activities, Roundtree suffered reasonably and foreseeable injury including but not limited to:[3]

   a. Loss of property interest in his right to good faith and fair dealing with his employer;

   b. Loss of property interest in his right to good faith and fair dealing with his insurer;

   c. Loss of property interest in his right to good faith and fair dealing with the ICA;

   d. Loss of property interest in his right to a fair and impartial hearing;

   e. Loss of property interest in his right to due process;

   f. Loss of property interest in his loss and/or use of his Rights;

   g. Loss of property interest in his claim to Benefits;

   h. Loss of property interest in his loss and/or use of his Benefits;

---

[3] Roundtree contends but for Defendants conduct constituting the violations described herein Roundtree would not have been injured on June 18, 1993 or thereafter.

i.   Loss of property interest in his loss and/or use of vocational rehabilitation benefits;

j.   Loss of business interest in his loss and/or use of business as a professional football player;

k.   Loss of business interest in loss and/or use of future football business relationships;

l.   Loss of property interest in loss and/or use of football and related career opportunities;

m.   Loss of property interest in loss and/or use of football and related employment opportunities;

n.   Loss of business interest in loss and/or use of business reputation as a professional football player;

o.   Loss of property interest in loss and/or use of past and future income;

p.   Loss of property interest in loss and/or use of earning capacity;

q.   Loss of property interest in his loss of his family;

**JURISDICTION AND VENUE**

7.   This Court has complete jurisdiction over this action pursuant 28 U.S.C. § 1331; 18 U.S.C. § 1964; and 42 U.S.C. §§ 1983 & 1985; as well as supplemental jurisdiction over related state law claims.

8.   The venue is proper in this District pursuant 28 U.S.C. §1391(b)(2) and 18 U.S.C. §§ 1965(a) & (b) because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district. The acts out of which this Complaint arises occurred within the District of Arizona and/or caused Plaintiff's damages here in the

District of Arizona and/or because Defendants are subject to personal jurisdiction in this district under 18 U.S.C. §§ 1965 as RICO stipulates that process may be served in "any judicial district of the United States" when required by the "ends of justice." [4]

## PARTIES

9. Plaintiff Sean Alex Roundtree (Roundtree) is of legal age and a resident of the State of California.

10. At all relevant times, Roundtree is a professional football player who contracted with the Arizona Rattlers of the Arena Football League in April 1993 on advice of his Agent to promote and market his skills and talents to the National Football League (NFL) and Canadian Football League (CFL).

11. Plaintiff E.J.N. is the minor son of Roundtree born in 2012 and a resident of the State of California.

12. Defendant Phoenix Suns Limited Partnership (PSLP) d/b/a Phoenix Suns (Suns) are a professional basketball team organized and existing in Delaware, with its principal place of business at 201 E. Jefferson Street, Phoenix, Arizona 85004-2412.

13. At all relevant times, PSLP controls and operates and is the alter ego of Phoenix Arena Sports Limited Partnership, Sports and Entertainment Services Inc., Center for

---

[4] The Ninth Circuit holds that such "nationwide service of process" provisions also confer personal jurisdiction over a defendant in any judicial district as long as the defendant has minimum contacts with the United States *See Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1182 (C.D. Cal. 1998), (aff'd, 248 F.3d 915 (9th Cir. 2001) ("Where a defendant is properly served in the United States under RICO's nationwide service provision, that defendant's national contacts, rather than its minimum contacts with the forum state, determine whether the district court has personal jurisdiction over the defendant").

Sports Medicine and Orthopaedics PLLC, and Phoenix Arena Development Limited Partnership.

14. Defendant Jerry Colangelo and Joan Colangelo, husband and wife, (J. Colangelo) is an individual and a resident of the State of Arizona.

15. At all relevant times, J. Colangelo is the managing partner of PSLP and controls and operates ArenaSports, PAD, SESI and Center for Sports Medicine and Orthopaedics, PLLC.

16. At all relevant times, J. Colangelo is a partner owner of Defendant LEGACY and Chairman of the Board of LEGACY.

17. Defendant Mel Shultz and Jane Doe Shultz, husband and wife, (Shultz) is an individual and a resident of the State of Arizona.

18. At all relevant times, Shultz is a non-managing partner of PSLP.

19. Defendant David Eaton Jane Doe Eaton, husband and wife, (Eaton) is an individual and a resident of the State of Arizona.

20. At all relevant times, Eaton is a non-managing partner of PSLP.

21. Defendant Unknown PSLP partners I-XX, husbands and wives, are individuals and a resident of the State of Arizona and/or possibly other states.

22. At all relevant times, Defendants PSLP, J. Colangelo, Shultz and Eaton and Unknown PSLP Partners are (*collectively*, PSLP)

23. Defendant Phoenix Arena Development Limited Partnership (PAD) is the managing operator of America West Arena now d/b/a U.S. Airways Center (AWA), is an entity

organized and existing in Delaware, with its principal place of business at 201 E. Jefferson Street, Phoenix, Arizona 85004-2412.

24. Defendant Sports and Entertainment Services Inc. (SESI) provides security and other services to AWA is an entity organized and existing in Arizona, with its principal place of business at 201 E. Jefferson Street, Phoenix, Arizona 85004-2412.

25. Defendant Phoenix Arena Sports Limited Partnership (ArenaSports) d/b/a Arizona Rattlers (Rattlers) is an entity organized and existing in Delaware with its principal place of business at 201 E. Jefferson Street, Phoenix, Arizona 85004-2412.

26. At all relevant times, ArenaSports is established on January 14, 1992.

27. Defendant Bryan Colangelo and Barbara Colangelo, husband and wife (B. Colangelo) is an individual and U.S. citizen working and living in Toronto, Ontario, Canada.

28. At all relevant times, B. Colangelo is President ArenaSports.

29. At all relevant times, B. Colangelo is a partner owner of Defendant LEGACY.

30. Defendant Wilford Danny White and Jane Doe White, husband and wife, (White) is an individual and resident of Arizona.

31. At all relevant times, White is Rattlers General Manager and Head Football Coach.

32. Defendant Pete Kettela and Jane Doe Kettela, husband and wife, (Kettela) is an individual and resident of Arizona.

33. At all relevant times, Kettela is Rattlers Director of Player Personnel and assistant coach.

34. Defendant Matt Anderson, ATC and Jane Doe Anderson, husband and wife, (Anderson) is an Athletic Trainer licensed to practice in the State of Arizona.

35. At all relevant times, Anderson is Rattlers, Head Athletic Trainer.

36. At all relevant times, Anderson is a former collegiate trainer at Northern Arizona University where Roundtree suffered 1989 left foot injury and sesamoidectomy.

37. Defendant Center for Sports Medicine and Orthopedics, PLLC (SportsMed) is an entity organized and existing in Arizona with a principal place of business at 4344 W. Bell Road, Suite 102, Glendale, Arizona 85308 with a former location near 19th Avenue and Indian School Road.

38. At all relevant times, SportsMed is home to Suns and Rattlers team doctors who also doubled as workers compensation doctors.[5]

39. Defendant Dr. Joel S. Sellers, D.O. and Jane Doe Sellers, husband and wife, (Sellers) is a physician licensed to practice in the State of Arizona.

40. At all relevant times, Sellers' is PSLP and/or ArenaSports employee and/or agent.

---

[5] "An employer, other than the state or a political subdivision thereof, who secures compensation to his employees in the manner provided in [A.R.S. § 23-961(A)] ... may, in lieu of making premium payments for medical, surgical and hospital benefits, provide such benefits to injured employees and may collect one-half of the cost thereof from his employees...." also see *Lee v. Industrial Com'n Of Arizona*, 860 P.2d 1318, 176 Ariz. 265 (Ct. App. 1993).

Roundtree contends PSLP controls and operates SportsMed. PSLP and/or ArenaSports team doctors also work as workers compensation doctors for PSLP and/or ArenaSports employees and other employers. SportsMed is/was connected to HealthSouth Rehabilitation Inc. as the two, shared office space at their former 19th Avenue and Indian School Road location.

41. Defendant Dr. D. Matthew Maddox, D.O. and Jane Doe Maddox, husband and wife, (Maddox) is a physician licensed in the State of Arizona.

42. At all relevant times, Maddox is PSLP and/or ArenaSports employee and/or agent.

43. Defendant Dr. Edward P. McDermott, D.O., F.A.O.A.O and Jane Doe McDermott, husband and wife, (McDermott) is a physician licensed in the State of Arizona.

44. At all relevant times, McDermott is PSLP and/or ArenaSports employee and/or agent.

45. Defendant Dr. Richard J. Emerson, D.O., F.A.O.A.O and Jane Doe Emerson, husband and wife, (Emerson) is a physician licensed in the State of Arizona.

46. At all relevant times, Emerson is PSLP and/or ArenaSports employee and/or agent.

47. Defendant Colleen Cole and John Doe Cole, husband and wife, (Cole) is an individual and resident of Arizona.

48. At all relevant times, Cole is the medical liaison between SportsMed and PSLP and/or ArenaSports.

49. Defendant Arizona Foot Health, formerly American Medical Footcare Center, (FootHealth) is an entity organized and existing in Arizona with a principal place of business at 3401 W. Bethany Home Road, Phoenix, Arizona 85017.

50. At all relevant times, FootHealth is owned and operated by Dr. Michael Judah Kates.

51. Defendant Dr. Michael Judah Kates, DPM and Jane Doe Kates, husband and wife, (Kates) is a podiatrist licensed in the State of Arizona.

52. At all relevant times, Kates becomes certified podiatrist in Arizona on April 21, 1970 under license #0080.

53. At all relevant times, Kates is hired in 1975 by J. Colangelo as Team Podiatrist for PSLP.

54. At all relevant times, Kates is PSLP and/or ArenaSports employee and/or agent.

55. Defendant Jeffery Copoloff, DPM and Jane Doe Copoloff, husband and wife, (Copoloff) is a podiatrist licensed in the State of Arizona.

56. At all relevant times, Copoloff graduated from Ohio College of Podiatric Medicine in 1990.

57. At all relevant times, Copoloff completed his podiatric surgical residency at Community Hospital in Phoenix from 1990 to 1991.

58. At all relevant times, Copoloff became certified podiatrist in Arizona on June 25, 1991 under license #0355.

59. At all relevant times, Copoloff completed his Fellowship-Arthritic and Reconstructive Foot Surgery at Humana Hospital in Phoenix from 1991-1992.

60. At all relevant times, Copoloff is FootHealth employee and/or agent and/or PSLP and/or ArenaSports employee and/or agent.

61. Defendant Robert Sarver and Jane Doe Sarver, husband and wife, (Sarver) is an individual and resident of Arizona and/or California.

62. At all relevant times, Sarver is current managing partner of Suns Legacy Partners, LLC.

63. Defendant Suns Legacy Partners, LLC, is an entity organized and existing in Delaware with a principal place of business at 201 E. Jefferson Avenue, Phoenix, Arizona 85004.

64. At all relevant times, Suns Legacy Partners, LLC, controls and operates and is the alter ego of Suns Legacy Holdings LLC, Suns Legacy Properties LLC, Legacy GP LLC, d/b/a Phoenix Arena Sports Limited Partnership (ArenaSports) and Phoenix Arena GP, LLC d/b/a Phoenix Arena Development Limited Partnership (PAD).

65. At all relevant times, Suns Legacy Partners, LLC, is a successor corporation of PSLP.

66. Defendants Unknown Suns Legacy Partners I-XXX, husbands and wives; is an individual and resident of Arizona or other states.

67. Defendants Suns Legacy Holdings LLC, is an entity organized and existing in Delaware with a principal place of business at 201 E. Jefferson Avenue, Phoenix, Arizona 85004.

68. Defendants Unknown Suns Legacy Holdings Partners I-XXX, husbands and wives, is an individual and resident of Arizona or other states.

69. Defendants Suns Legacy Properties LLC, is an entity organized and existing in Delaware with a principal place of business at 201 E. Jefferson Avenue, Phoenix, Arizona 85004.

70. Defendants Unknown Suns Legacy Properties Partners I-XXX, husbands and wives, is an individual and resident of Arizona or other states.

71. Defendants Legacy GP LLC, d/b/a Phoenix Arena Sports Limited Partnership, is an entity organized and existing in Delaware with a principal place of business at 201 E. Jefferson Avenue, Phoenix, Arizona 85004.

72. Defendants Unknown Legacy GP Partners I-XXX, husbands and wives, is an individual and resident of Arizona or other states.

73. Defendants Phoenix Arena GP, LLC d/b/a Phoenix Arena Development Limited Partnership, is an entity organized and existing in Delaware with a principal place of business at 201 E. Jefferson Avenue, Phoenix, Arizona 85004.

74. Defendants Unknown Phoenix Arena GP, LLC Partners I-XXX, husbands and wives, is an individual and resident of Arizona or other states.

75. At all relevant times, Suns Legacy Partners, LLC., Unknown Suns Legacy Partners I-XXX, Suns Legacy Holdings LLC, Unknown Suns Legacy Holdings Partners I-XXX, Suns Legacy Properties LLC, Unknown Suns Legacy Properties Partners I-XXX, Legacy GP LLC, d/b/a ArenaSports, Unknown Legacy GP Partners I-XXX, Phoenix Arena GP, LLC d/b/a PAD and Unknown Phoenix Arena GP, LLC Partners I-XXX, (*collectively,* LEGACY).

76. Defendant Mayo Clinic d/b/a Mayo Clinic Scottsdale is an entity organized and existing in Minnesota with a principal place of business at 200 First Street SW, Rochester, Minnesota 55905.

77. At all relevant times, Mayo Clinic Scottsdale is where Roundtree had surgery by Dr. Kenneth A. Johnson, Dr. Todd A. Kile and others.

78. Defendant Mayo Foundation for Medical Education and Research is an entity organized and existing in Minnesota with a principal place of business at 200 First Street SW, Rochester, Minnesota 55905.

79. At all relevant times, Mayo Foundation for Medical Education and Research provided intern Dr. Todd A. Kile for Mayo Clinic Scottsdale.

80. At all relevant times, Mayo Clinic d/b/a Mayo Clinic Scottsdale and Mayo Foundation for Medical Education and Research (*collectively*, Mayo).

81. Defendant Estate of Dr. Kenneth A. Johnson and/or Administrator [6] and survived by (1) son, Gunnar B. Johnson, Washington D.C. and (3) daughters; Helen Foltz, Detroit Lakes, MN; Laura C. Johnson, Phoenix, AZ and; Rosella Johnson, Cave Creek, Arizona (*collectively*, Johnson) is a physician licensed in the State of Arizona.[7]

82. At all relevant times, Johnson is Chief of Orthopedic Surgery at Mayo and PSLP and/or ArenaSports agent.

83. Defendant Dr. Todd A. Kile and Jane Doe Kile, husband and wife, (Kile) is a physician licensed in the State of Arizona.

---

[6] Dr. Kenneth A. Johnson died 12/6/93, from injuries sustained in a 12/4/93 plane crash. At 1030, on the morning of the crash, Johnson and passenger were observed in the airport's coffee shop eating breakfast. Management described Johnson as not appearing to have been in a hurry and rather "laid back."

Toxicology tests of the Johnson's blood showed 0.065 ug/g of dihydrocodeine & 25 ug/g of salicylate (aspirin). Dihydrocodeine & salicylate were also detected in his urine. Facts taken from (http://aircrashed.com/cause/cLAX94FA065.shtml)

[7] One state appellate court has held that civil RICO claims against a defendant may survive and that an estate, through its administrator, is a "person" and has capacity to be sued on a RICO claim. See *Bank of Northern Illinois v. Nugent*, 584 N.E.2d 948, 958-59 (Ill. App. Ct. 1991). That court noted disagreement among the federal district courts on the issue, but allowed the civil RICO claims to survive because they allegedly occurred both before and after the decedent's death, which is the case instantly. *Id.*

84. At all relevant times, Kile is Johnson's assistant and took over Roundtree's case after Johnson's death.

85. At all relevant times, Kile is Mayo employee and PSLP and/or ArenaSports agent.

86. Defendant Geoffery P. Fletcher and Jane Doe Fletcher, husband and wife, (Fletcher) is a radiologist licensed in the State of Arizona.

87. At all relevant times, Fletcher is a radiologist/x-ray technician at Mayo and PSLP and/or ArenaSports agent.

88. Defendant Dr. J.P. Nelson and Jane Doe Nelson, husband and wife, (Nelson) is a physician licensed in the State of Arizona in 1993.

89. At all relevant times, Nelson is Mayo employee and PSLP and/or ArenaSports agent.

90. Defendant State Compensation Fund of Arizona now d/b/a SCF Premier Insurance Company, CopperPoint Mutual Insurance Company, CopperPoint National Insurance Company, CopperPoint Premier Insurance Company and CopperPoint Western Insurance Company (*collectively*, SCF) is an entity organized and existing in Arizona with a principal place of business at 3030 N. 3rd Street, Phoenix, Arizona 85012.

91. At all relevant times, SCF is PSLP and/or ArenaSports and/or LEGACY agent.

92. Defendant APS Healthcare Inc. (APS), formerly Health Care Excellence, Inc., (HCX) is an entity organized and existing in Delaware with a principal place of business at 3030 N. 3rd Street, Ste. 1050, Phoenix, Arizona 85012.

93. At all relevant times, HCX manages healthcare for SCF.

94. At all relevant times, SCF controls and operates and is the alter ego of HCX.

95. Defendant Lynell S. Brown and John Doe Brown, wife and husband, (Brown) is an individual and resident of Arizona.

96. At all relevant times, Brown is SCF claims representative originally assigned to Roundtree's claim.

97. Defendant Valarie Moore and John Doe Moore, wife and husband, (Moore) is an individual and resident of Arizona.

98. At all relevant times, Moore is IME coordinator for SCF in 1995.

99. Defendant Gervais R. Brand and Jane Doe Brand, husband and wife, (Brand) is an individual and resident of Arizona.

100.    At all relevant times, Brand is SCF in-house attorney.

101.    Defendant Peter C. Kilgard and Jane Doe Kilgard husband and wife, (Kilgard) is an individual and resident of Arizona.

102.    At all relevant times, Kilgard is 1995-96 SCF Chief Counsel.

103.    Defendant Mark Kendall and Jane Doe Kendall, husband and wife, (Kendall) is an individual and resident of Arizona.

104.    At all relevant times, Kendall is 1995-96 SCF Assistant Chief Counsel.

105.    Defendant J.A.K. and Jane/John Doe J.A.K., husband and wife, (J.A.K.) is an individual and resident of Arizona.

106.    At all relevant times, J.A.K. is SCF employee.

107.    At all relevant times, J.A.K. signed off on fraudulent temporary total disability payments on 12/23/93 and 8/31/94.

108. Defendant E.V.A. and Jane/John Doe E.V.A, husband and wife, (E.V.A.) is an individual and resident of Arizona.

109. At all relevant times, E.V.A is an SCF employee.

110. At all relevant times, E.V.A signed off on fraudulent Benefit settlement payment on 7/15/94.

111. Defendant C.A.M and Jane/John Doe C.A.M, husband and wife, (C.A.M) is an individual and resident of Arizona.

112. At all relevant times, C.A.M is SCF employee.

113. At all relevant times, C.A.M fraudulently terminated compensation Benefit payments on 6/12/95.

114. Defendant J.R.C. and Jane/John Doe J.R.C. husband and wife, (J.R.C.) is an individual and resident of Arizona.

115. At all relevant times, J.R.C. is SCF employee.

116. At all relevant times, J.R.C. signed off on fraudulent compensation Benefit payment on 5/17/96.

117. Defendant J.S.S. and Jane/John Doe J.S.S., husband and wife, (J.S.S.) is an individual and resident of Arizona.

118. At all relevant times, J.S.S. is SCF employee.

119. At all relevant times, J.S.S. signed off on fraudulent compensation Benefit payment on 12/28/95.

120.   Defendant Jerry Jimenez and Jane Doe Jimenez, husband and wife, (Jimenez) is an individual and resident of Arizona.

121.   At all relevant times, Jimenez is SCF claims representative.

122.   Defendant Janine Mills and John Doe Mills, wife and husband, (Mills) is an individual and resident of Arizona.

123.   At all relevant times, Mills is SCF Senior Claims Representative assigned to Roundtree claim after reopening on 5/27/11.

124.   Defendant Sharon M. Hensley and John Doe Hensley, wife and husband, (Hensley) is an individual and resident of Arizona.

125.   At all relevant times, Hensley is SCF in-house attorney.

126.   Defendant Marilyn Waite and John Doe Waite, wife and husband, (Waite) is an individual and resident of Arizona.

127.   At all relevant times, Waite is SCF, Assistant Claims Manager; Compensation Section, 1996.

128.   Defendant Sue Sullivan and John Doe Sullivan, wife and husband, (Sullivan) is an individual and resident of Arizona.

129.   At all relevant times, Sullivan is SCF employee.

130.   Defendant Ellen Coughlin and John Doe Coughlin, wife and husband, (Coughlin) is an individual and resident of Arizona.

131.   At all relevant times, Coughlin is SCF employee.

132. Defendant Eva Keller, and John Doe Keller, wife and husband, (Keller) is an individual and resident of Arizona.

133. At all relevant times, Keller is SCF employee.

134. Defendant Christi Lukaszkiewicz and John Doe Lukaszkiewicz, wife and husband, (Lukaszkiewicz) is an individual and resident of Arizona.

135. At all relevant times, Lukaszkiewicz is SCF employee.

136. Defendant Barry & Hetzer (B&HLaw) is an entity organized and existing in Arizona with a former principal place of business at 4041 N. Central Avenue, Ste. 135, Phoenix Arizona 85012.

137. At all relevant times, B&HLaw is SCF agent.

138. Defendant Unknown B&HLaw Attorney(s) I-V, husbands and wives, are individuals and residents of Arizona.

139. At all relevant times, unknown B&HLaw attorney's I-V assisted SCF in defrauding Roundtree out of fraudulently terminated Benefits on 7/15/94.

140. Defendant Bobby J. Fox and John Doe Fox, wife and husband, (Fox) is an individual and resident of Arizona.

141. At all relevant times, Fox is SCF Legal Compliance & Risk Manager.

142. At all relevant times, Fox used an outdated Arizona address for Roundtree to file a workplace injunction against Roundtree for harassment in Phoenix Municipal Court.

143.  Defendant Unknown SCF Security Guard and Jane Doe Unknown SCF Security Guard, husband and wife, (Unknown SCF Security Guard) is an individual and resident of Arizona.

144.  At all relevant times, Unknown SCF Security Guard threatened Roundtree to sign non-jurisdictional workplace injunction in order to receive his benefit check and SCF file copy.

145.  Defendant Donald A. Smith and Jane Doe Smith, husband and wife, (Smith) is an individual and resident of Arizona.

146.  At all relevant times, Smith is SCF President, CEO and Board Member and in charge of SCF daily operations.

147.  Defendant Judith Patrick and John Doe Patrick, wife and husband, (Patrick) is an individual and resident of Arizona.

148.  At all relevant times, Patrick is SCF Board Chairwomen since 1993.

149.  Defendant Bill Sheldon, and Jane Doe Sheldon, husband and wife, (Sheldon) is an individual and resident of Arizona.

150.  At all relevant times, Sheldon is SCF General Counsel and Chief Compliance Officer.

151.  Defendant Brent Nelson and Jane Doe Nelson, husband and wife, (Nelson) is an individual and resident of Arizona.

152.  At all relevant times, Nelson is SCF General Counsel and Chief Compliance Officer.

153.    Defendant James Stabler and Jane Doe Stabler, husband and wife, (Stabler) is an individual and resident of Arizona.

154.    At all relevant times, Stabler is SCF VP of Legal and Chief Counsel and former Assistant Chief Counsel in 1996.

155.    Defendant Ginny Arnett Caro and John Doe Caro, wife and husband, (Caro) is an individual and resident of Arizona.

156.    At all relevant times, Caro is SCF VP of Claims Services.

157.    Defendant Daniel A. Witt and Jane Doe Witt, husband and wife, (Witt) is an individual and resident of Arizona.

158.    At all relevant times, Witt is SCF Director Claims Services.

159.    Defendant Klein, Doherty, Lundmark, Barberich & La Mont, P.C., (KDLBLLaw) is an entity organized and existing in Arizona with a principal place of business at 5333 N. 7th Street, Suite B-112, Phoenix, Arizona 85014.

160.    At all relevant times, KDLBLLaw is SCF agent.

161.    Defendant Julie A. Doherty and John Doe Doherty, wife and husband, (Doherty) is an individual and resident of Arizona.

162.    At all relevant times, Doherty is co-owner at KBLBLaw.

163.    Defendant Industrial Commission of Arizona (ICA) is a quazi-state governmental entity organized and existing in Arizona with a principal place of business at 800 W. Washington Avenue, Phoenix, Arizona, 85007.

164.    At all relevant times, ICA is Arizona's regulatory of workmen's compensation insurance.

165.    Defendant Industrial Commission of Arizona Special Fund (Special Fund) is a quazi-state governmental entity organized and existing in Arizona with a principal place of business at 800 W. Washington Avenue, Phoenix, Arizona, 85007.

166.    At all relevant times, Special Fund provides vocational rehabilitation for injured workers.

167.    Defendant Robert T. Wilson and Jane Doe Wilson, husband and wife, (ALJ Wilson) is an individual and resident of Arizona.

168.    At all relevant times, ALJ Wilson is ICA employee and former SCF attorney.

169.    Defendant Karen Hamilton-Ellerman and John Doe Ellerman, wife and husband, (Hamilton-Ellerman) is an individual and resident of Arizona.

170.    At all relevant times, Hamilton-Ellerman is 1996 ICA Claims Manager.

171.    Defendant Walter W. Gallaher and Jane Doe Gallaher, husband and wife, (ALJ Gallaher) is an individual and resident of Arizona.

172.    At all relevant times, ALJ Gallaher is ICA employee.

173.    Defendant Eileen S. Willett and John Doe Willett, wife and husband, (Chief ALJ Willett) is an individual and resident of Arizona.

174.    At all relevant times, Willett is 1996 ICA Chief Administrative Law Judge and former SCF attorney and currently a sitting Superior Court Judge.

175.   Defendant Unknown 1996 ICA Director and John/Jane Doe Unknown 1996 ICA Director, wife and husband, (Unknown 1996 ICA Director) is an individual and a resident of Arizona.

176.   Defendant Melinda K. Poppe and John Doe Poppe, wife and husband, (Poppe) is an individual and a resident of Arizona.

177.   At all relevant times, Poppe is 2013 ICA Claims Manager and former SCF Assistant Chief Counsel.

178.   Defendant Harriet Turney and John Doe Turney, wife and husband, (ALJ Turney) is an individual and resident of Arizona.

179.   At all relevant times, ALJ Turney is 2013 Chief ALJ at ICA.

180.   Defendant Layna Taylor and John Doe Taylor, wife and husband, (ALJ Taylor) is an individual and resident of Arizona.

181.   At all relevant times, ALJ Taylor is ICA employee.

182.   Defendant Deborah Nye and John Doe Nye, wife and husband, (ALJ Nye) is an individual and a resident of Arizona.

183.   At all relevant times, ALJ Nye is ICA employee and former agent attorney for SportsMed and/or former SCF employee.

184.   Defendant Gloria Gonzalez and John Doe Gonzalez, wife and husband, (Gonzalez) is an individual and a resident of Arizona.

185.   At all relevant times, Gonzalez is ICA administrative assistant to ALJ Nye.

186.    Defendant Linda Lodwick and John Doe Lodwick, wife and husband, (Lodwick) is an individual and a resident of Arizona.

187.    At all relevant times, Lodwick is ICA administrative assistant to ALJ Nye.

188.    Defendant Laura McGory and John Doe McGory, wife and husband, (McGory) is an individual and a resident of Arizona.

189.    At all relevant times, McGory is current ICA Director.

190.    Defendant Valley Foot Surgeons Limited (VFS) is an entity organized and existing in the State of Arizona with a principal place of business at 7301 E 2nd St. Scottsdale, Arizona 85251.

191.    At all relevant times, VFS is co-owned by Dr. Richard P. Jacoby.

192.    Defendant Dr. Richard P. Jacoby and Jane Doe Jacoby, husband and wife, (Jacoby) is a physician licensed in the State of Arizona.

193.    At all relevant times, Jacoby is SCF agent.

194.    Defendant Arizona Foot & Ankle Care, P.C. (AFAC), is an entity organized and existing in Arizona with a principal place of business at 3201 W. Peoria Avenue, #A200, Phoenix, Arizona 85029.

195.    At all relevant times, AFAC is owned and operated by Dr. William J. Leonetti.

196.    Defendant Dr. William J. Leonetti and Jane Doe Leonetti, husband and wife, (Leonetti) is a physician licensed in the State of Arizona.

197.    At all relevant times, Leonetti is SCF and/or PSLP and/or ArenaSports and/or LEGACY and/or agent.

198.   At all relevant times, misrepresentations in Leonetti's 7/14/11 IME triggered the Plaintiffs August 2011 investigation.

199.   Defendant Juan Doe and Jane Doe, husband and wife, (Juan) is a licensed x-ray technician in the State of Arizona.

200.   At all relevant times, Juan Doe is assistant/x-ray technician at AFAC.

201.   Defendant Dennis R. Kurth and Jane Doe Kurth, husband and wife, (Kurth) is a licensed attorney in the State of Arizona.

202.   At all relevant times, Kurth reviewed Roundtree's SCF file #93-46568 in 1995 and in 2011.

203.   Defendant Javier A. Puig and Jane Doe Puig, husband and wife, (Puig) is a licensed attorney in the State of Arizona.

204.   At all relevant times, Puig reviewed Roundtree's SCF file #93-46568 2011 and is a former SCF in-house attorney.

205.   Defendant Alan M. Schiffman and Jane Doe Schiffman, husband and wife, (Schiffman) is a licensed attorney in the State of Arizona.

206.   At all relevant times, Schiffman reviewed Roundtree's SCF file #93-46568 with Puig in 2011.

207.   Defendant Fendon Law Firm, P.C. (FendonLaw) is an entity organized and existing in Arizona with a principal place of business at 2001 N. 3rd St #104, Phoenix, Arizona 85004.

208.   At all relevant times, FendonLaw is owned by Don A. Fendon, a former SCF attorney.

209.   Defendant Attorney Matthew Craig Fendon, and Jane Doe Fendon, husband and wife, (M. Fendon) is an individual and resident of Arizona.

210.   At all relevant times, M. Fendon is partner and son of FendonLaw owner and former SCF attorney Don A. Fendon.

211.   Defendant Don A. Fendon and Jane Doe Fendon, husband and wife, (D. Fendon) is an individual and resident of Arizona.

212.   At all relevant times, D. Fendon is former SCF in-house attorney.

213.   Defendant Dr. Stanley Graves M.D., Foot and Ankle (GravesMed) is an entity organized and existing in Arizona with a principal place of business at 4440 N 36th St Suite 100, Phoenix AZ 85018.

214.   At all relevant times, GravesMed is owned by Dr. Stanley Graves.

215.   Defendant Dr. Stanley Graves M.D. and Jane Doe Graves, husband and wife, (Graves) is a physician licensed in the State of Arizona.

216.   At all relevant times, Graves is Fendonlaw agent.

217.   At all relevant times, Graves is associated with SportsMed, and named Defendant doctors.

218.   Defendant Sarah Penttinen and John Doe Penttinen, wife and husband, (Penttinen) is an individual and resident of Arizona.

219.    At all relevant times, Penttinen is State of Arizona Board of Podiatry Examiners (Examiners) Executive Director.

220.    At all relevant times, Dr. Joseph Leonetti is Examiners Board President and former business partner and brother of Defendant Leonetti.

221.    At all relevant times, Defendant Leonetti has had several complaints for making false statements in his IME reports however all complaints have been dismissed without action by Examiners.

222.    Defendant Dr. Jerome Cohn and Jane Doe Cohn, husband and wife, (Dr. Cohn) is a physician licensed in the State of Arizona.

223.    At all relevant times, Dr. Cohn is Examiners investigator assigned to investigate Roundtree's complaint against Defendant Leonetti.

224.    Defendant Phoenix Municipal Judge Lance P. Jacobs and Jane Doe Jacobs, husband and wife, (Judge Jacobs) is an individual and resident of Arizona.

225.    Defendant Unknown Phoenix Municipal Court Clerk and John/Jane Doe Unknown Phoenix Municipal Court Clerk, wife and husband, (Unknown Clerk) is an individual and resident of Arizona.

226.    Defendant Palmer Martines and Jane Doe Martines, husband and wife, (Martines) is an individual and resident of Arizona.

227.    Defendant PHX Bike (PHX Bike) is a former entity organized and existing in Arizona with a principal place of business at 130 N. Central Avenue, Suite #104, Phoenix AZ 85004.

228. At all relevant times Martines is owner and operator of PHX Bike.

229. The fictitiously named Defendant(s) are individuals and entities who committed acts or omissions or caused events to occur that resulted in injury or damage to Roundtree. Once the identity of these Defendants is discovered this Complaint shall be amended accordingly. All Defendant officers, directors, employees and/or agents and all other Defendants with apparent, or de facto, legal authority and responsibility may not dissociate themselves from the fraud scheme described herein.

## DEFENDANTS ASSOCIATE-IN-FACT ENTERPRISES

230. Roundtree incorporates and re-alleges, by reference, all other defendants and paragraphs of this Complaint as if more fully set forth in the following paragraphs.

### Sports Enterprise

231. Sports Enterprise is made of the following individuals: PSLP, J. Colangelo, Shultz, Eaton, Unknown PSLP partners I-XX, LEGACY, Sarver, Unknown LEGACY partners I-XXX, SESI, PAD, ArenaSports, B. Colangelo, White, Kettela, Anderson, SportsMed, Cole, Sellers, Maddox, McDermott, Emerson, FootHealth, Copoloff, Kates, Mayo, Johnson, Kile, Fletcher, Nelson, SCF, HCX, Brown, Brand, Kilgard, J.A.K., C.A.M., E.V.A., Unknown Security Guard, Moore, Walker, Keller, Waite, Jimenez, Couglin, Sullivan, Lukaszkiewicz, Kendall, Mills, Hensley, Fox, Stabler, Smith, Patrick, Sheldon, Nelson, Caro, Witt, B&HLaw, unknown B&HLaw attorneys I-V, Fendonlaw, C. Fendon, D. Fendon, Graves, GravesMed, Doherty, KDLBLLaw, VFS, Jacoby, AFAC, Leonetti, Judge Jacobs, Unknown Court Clerk, Kurth,

Schiffman, Puig, Martines, PHX Bike, Penttinen and Cohn (*collectively*, Sports Enterprise).

232.    The participation by PSLP and/or LEGACY, PAD, SESI, ArenaSports, SportsMed, SCF and their respective subsidiaries and/or agents in the Sports Enterprise allows the enterprise to function more effectively, given that many of the functions provided by these entities and agents, such as medical care would normally be conducted by independent entities. SportsMed, FootHealth, AFAC GravesMed and VFS participation in the enterprise allows the normal checks and balances within the medical care process to be eliminated, permitting Defendants to advance their fraud scheme unchecked by controlling all aspects of the medical care process by actively misleading and/or concealing a claimants injuries and, thereafter, concealing the nature and extent of their criminal activities by fraudulent means, as pled herein.

233.    What is more, SCF and their claims reps are only protecting the interests of their policyholders and do that, by any means necessary, especially against pro se claimants.

234.    Additionally, with numerous former SCF Attorneys representing clients within workers compensation system in private practice against SCF, allows the Sports Enterprise to operate without normal checks and balances within the legal process, permitting Sports Enterprise Defendants to advance their scheme unchecked by former attorneys and/or those associated with such former employees to misrepresent

Claimants cases and thereafter, conceal the nature and extent of their associated-in-fact criminal activities by fraudulent means.

**Insurance Enterprise**

235.   Insurance Enterprise is made of the following individuals: SCF, HCX, Brown, Brand, Kilgard, J.A.K., C.A.M., E.V.A., Unknown Security Guard, Moore, Walker, Keller, Waite, Jimenez, Couglin, Sullivan, Lukaszkiewicz, Kendall, Mills, Hensley, Fox, Stabler, Smith, Patrick, Sheldon, Nelson, Caro, Witt, B&HLaw, unknown B&HLaw attorneys I-V, Fendonlaw, C.Fendon, D. Fendon, Graves, GravesMed, Doherty, KDLBLLaw, VFS, Jacoby, AFAC, Leonetti, Judge Jacobs, Unknown Court Clerk, Kurth, Schiffman, Puig, ICA, Special Fund, Hamilton-Ellerman, Wilson, Gallagher, Willet, Gaylen, Poppe, Taylor, Moore, Turney, Nye, Gonzalez; Lodwick, McGory, Martines, PHXBIKE, Unknown 1996 ICA Director, and Unknown 1999 Special Fund Director.

236.   The participation by SCF and ICA in the Insurance Enterprise allows the Enterprise to function more effectively, given the fact that ICA Claims managers, such as Hamilton-Ellerman and Poppe, are former SCF employees and would normally be conducted by personnel without a conflict of interest. Roundtree contends this is the way SCF and ICA do business. SCF and ICAs participation in the enterprise allows the normal checks and balances within the workers compensation process to be eliminated, permitting Defendants to advance their scheme unchecked by actively misleading and concealing the fraudulent activity through affirmative conduct especially against pro se claimants, as pled herein.

**Regulator Enterprise**

237.    Regulatory Enterprise is made of the following individuals: PSLP, J. Colangelo, Shultz, Eaton, Unknown PSLP partners I-XX, LEGACY, Sarver, Unknown LEGACY partners I-XXX, SESI, PAD, ArenaSports, B. Colangelo, White, Kettela, Anderson, SportsMed, Cole, Sellers, Maddox, McDermott, Emerson, FootHealth, Copoloff, Kates, Mayo, Johnson, Kile, Fletcher, Nelson, SCF, HCX, Brown, Brand, Kilgard, J.A.K., C.A.M., E.V.A., Unknown Security Guard, Moore, Walker, Keller, Waite, Jimenez, Couglin, Sullivan, Lukaszkiewicz, Kendall, Mills, Hensley, Fox, Stabler, Smith, Patrick, Sheldon, Nelson, Caro, Witt, B&HLaw, unknown B&HLaw attorneys I-V, Fendonlaw, C.Fendon, D. Fendon, Graves, GravesMed, Doherty, KDLBLLaw, VFS, Jacoby, AFAC, Leonetti, Judge Jacobs, Unknown Court Clerk, Kurth, Schiffman, Puig, Penttinen and Cohn, ICA, Special Fund, Hamilton-Ellerman, Wilson, Gallagher, Willet, Gaylen, Poppe, Taylor, Moore, Turney, Nye, Gonzalez, Lodwick, McGory, Unknown 1996 ICA Director, Martines, PHXBIKE, and Unknown 1999 Special Fund Director.

238.    The participation by former SCF employees and/or former Defendant agents subsequently working at the ICA allows the Regulatory Enterprise to function more effectively, given that this entity, regulates workers compensation rules and laws which would normally be conducted by personnel free of a conflict of interest or those willing to admit to them before involving themselves in hearings against their former employer. ICAs, directors, officers, ALJs and claims manager's participation in the Regulatory Enterprise allows the normal checks and balances within the regulatory

process to be eliminated; permitting Defendants cart blanche upon unsuspecting claimants.

## LIABILITY

### Joint And Several

239.  All associate-in-fact Defendants are interrelated, interdependent and are jointly and severally liable.

240.  Arizona has abolished the doctrine of joint and several liability. Tortfeasors are only severally liable for the amount of claimant's damages equal to their percentages of fault, unless they were in a principal-agent relationship, acting in concert, or pursuing a common plan or design to commit a tortious act and actively taking part in it, as described herein. Ariz. Rev. Stat. Ann. § 12-2506 (West 1994 & Supp. 1997).

241.  Defendant's corporate formalities will be disregarded in favor of joint and several liability.

### Vicarious Liability

242.  Defendants are liable under the doctrine of respondeat superior, principle of ostensible and/or apparent agency.

## STATUTE OF LIMITATIONS

243.  Roundtree would like this Honorable Court to consider the Arizona Discovery Rule, Continuing Violation Doctrine, Nuisance and Trespass, Equitable Tolling, Equitable Estopppel, Constructive Fraud and Fraudulent Concealment as well as those

unnamed theories unknown to this pro se Plaintiff to toll the statute of limitations of all applicable federal and state law claims.[8]

244.    Roundtree also contends ICA administrative hearings since August 2011 should toll applicable statutes. As the hearings are direct results of Defendants fraud and bad faith as well as deliberate attempt to run the statutes of limitations on any of Roundtree's federal and state claims.

### Arizona Discovery Rule

245.    Under Arizona's discovery rule, a claim does not accrue until "the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause." *Gust, Rosenfeld & Henderson v. Prudential Inc. Co.*, 898 P.2d at 964, 966 (Ariz. 1995).

246.    Roundtree in the course of more than 2.5 years of investigating has found it difficult and continues to find it difficult to determine his injuries (not yet determined) however Roundtree has knowledge of Defendants fraud as of the date of this document.

### Continuing Violation Doctrine

247.    Roundtree contends Defendants violations form a pattern of unlawful conduct and Defendants unlawful conduct is continuing at the time of this filing and therefore should toll the statutes of all his federal and state claims.

### Nuisance & Trespass Theory

---

[8] Equitable Tolling, Equitable Estoppel, Constructive Fraud and Fraudulent Concealment theories will be discussed below.

248.   Roundtree contends Defendants actions as a whole violate nuisance and trespass theory and therefore should toll the statutes of his federal and state claims.

## DEFENDANTS DUTY TO ROUNDTREE

249.   All Defendants have a fiduciary duty to Roundtree and hold a demonstrated 'superiority of position' over him and that 'superiority of position' is distinctly seen in the fiduciary's will in all the transactions at issue and described herein.

250.   At all times material to this complaint Defendants owed a duty to Plaintiff, there was a breach of that duty, and Roundtree had a right to rely on information and did so to his own detriment, and was damaged proximately and directly related to that breach of duty.

## THE POWER AND INFLUENCE OF JERRY COLANGELO[9]

251.   1960, J. Colangelo transfers to University of Illinois-Urbana-Champaign and becomes member of Phi Kappa Psi fraternity with Johnny "Red" Kerr.

252.   1966, J. Colangelo is hired by Chicago Bulls.

253.   1968, J. Colangelo is Vice-president of Chicago Bulls and is sent west to oversee the Phoenix Suns expansion with fraternity brother Johnny "Red" Kerr.

254.   1968, J. Colangelo is General Manger of the Suns, alternating duties as Head Coach and Scout.

---

[9] J. Colangelo has been Director of Stratford American Corp. since April 1989. He serves as a Director of Team ACA at The Arizona Commerce Authority. He serves as a Director of SCRS, SAPC and SAGVC. He serves as a Director of National Italian American Foundation. He served as Director of Grand Canyon Education, Inc. (Grand Canyon University) from October 2009 to July 1, 2011.

255.    1975, J. Colangelo hires Defendant Kates as Team Podiatrist, making Kates the first podiatrist to hold such as position for an NBA team.[10]

256.    Kates is later named Team Podiatrist for the Rattlers, Mercury and Phoenix Coyotes. (*Id.*)

257.    1976, Don Bolles, is killed in car bomb in Phoenix investigating land fraud, gambling and organized crime activity.

258.    Reporters accuse J. Colangelo of connections to gambling establishments in Phoenix and J. Colangelo sues.

259.    J. Colangelo forms various real estate companies JDMD Enterprises and/or JDM Inc., Investments, among unknown others.

260.    1987, J. Colangelo leads a group to purchase the Suns.

261.    1987, J. Colangelo is President, CEO and General Manager of PSLP.

262.    1991, J. Colangelo purchases an AFL franchise for $250,000.00, half of which was paid upfront and the other half of which would be paid out of future expansion fees owed to the Suns organization (PSLP) when and if the league expanded and procured those fees.[11] With J. Colangelo stating "it cost the *Suns* only $125,000.00 to end up with a Rattler franchise that is probably worth $6,000,000.00, today." (*Id.*)

263.    January 6, 1992, Phoenix Arena Sports Limited Partnership (ArenaSports) is incorporated in Delaware.

---

[10]    Source, Biography, Dr. Michael J. Kates, Arizona Foot Health website.
[11] Sources, Biography, *Jerry Colangelo, How You Play the Game: Lessons for Life from the Billion-Dollar Business of Sports, 1999*; Phoenix Suns and Wikipedia, Biography, Bryan Colangelo.

264.    January 14, 1992, ArenaSports is registered to do business in Phoenix, Arizona.

265.    1992, B. Colangelo graduates Cornell University and becomes President of ArenaSports the alledged owning entity of the Rattlers.

266.    1996, B. Colangelo becomes General Manager of the Suns.

267.    1996, J. Colangelo is granted franchises in the NHL by transferring the Winnipeg Jets to the Phoenix Coyotes, WNBA with the Phoenix Mercury in 1998 and Major League Baseball with the Arizona Diamondbacks in 1998.

268.    2000, B. Colangelo is named President of the Suns.

269.    2004, J. Colangelo allegedly sells PSLP, PAD, ArenaSports, SESI and SportMed for $404 Million Dollars to Robert Sarver and LEGACY.

270.    2004, J. Colangelo continues as part of new LEGACY ownership and as Suns CEO and Team Chairman.

271.    2004, B. Colangelo continues as part of new LEGACY ownership and oversees all basketball operations as Suns President and General Manger.

272.    2005, J. Colangelo is named USA Basketball Chairman, winning Gold Medals at the 2008 and 2012 Olympics.

273.    2005, The Valley of the Sun United Way bestowed the Spirit of Caring award, to J. Colangelo for improving lives in the community.

274.    2006, B. Colangelo resigns as Suns President and General Manager and is named Toronto Raptors new President and GM.

275.    2011, J. Colangelo is named to Governor Jan Brewer's controversial Arizona Commerce Authority being investigated by the Center for Public Intergrity and several other organizations for using public money for private business and failing to disclose their activities as a matter of law.

276.    2012, J. Colangelo is named Chairman of the Basketball Hall of Fame.

277.    2013, J. Colangelo continues to serve as Chairman of the Board and Director of Suns Legacy Partners, LLC.

## THE ON-GOING ASSOCIATION BETWEEN
## STATE COMPENSATION FUND OF ARIZONA
## AND THE INDUSTRIAL COMMISSION OF ARIZONA

278.    1925, SCF was created by the Legislature as part of Arizona's original Workman's Compensation Act (Act). The Act provided start-up capital of $100,000 for SCF and required SCF to repay the amount. The capital was fully repaid by 1938. From 1925 through 1968, the ICA administered SCF.

279.    1969, SCF was removed from ICA, becoming a separate entity. As of November, 2008, SCF was structured as two entities: SCF and the much smaller SCF Premier Insurance Company.

280.    SCF is under the direct supervision of a Board of Directors, which consists of five members appointed by the Governor for staggered five-year terms. The members are required to be policyholders or employees of a policyholder of SCF. Additionally, the Governor annually appoints the chairman of the Board from among its members. The

Board is required to appoint a manager of SCF, who is responsible for SCF's daily operations.

281.    SCF's mission is to provide a ready market of workers' compensation insurance for Arizona's employers at the lowest possible cost. SCF is a nonprofit agency. All income is derived from policyholders' premiums and investments. Income that is not used to provide benefits to injured workers or for operating expenses is returned to policyholders in the form of dividends.

282.    According to the April, 2009 Auditor General's report, as of 2007, SCF Arizona competes in the private market with other insurers and is the largest carrier of workers' compensation insurance with reported coverage of 55,000 businesses, representing more than one million employees and 58% of Arizona's employers.

283.    Per a May, 2010 article in the Phoenix Business Journal, SCF has more than 500 employees and $3 billion in assets. However, SCF's premium revenue has been hurt by Arizona's slumping economy. In 2009, SCF reported $11 million in net income on $275 million in premium revenue compared with $15 million in net income on premium revenue of $408 million in 2008.[12]

## THE END OF THE ON-GOING ASSOCIATION BETWEEN STATE COMPENSATION FUND OF ARIZONA AND THE INDUSTRIAL COMMISSION OF ARIZONA

284.    In something of a surprising turn of events, the Arizona State Legislature passed Senate Bill 1045 which privatized SCF as of January 1, 2013. SCF goes from

---

[12] Sources, The Examiner, Spring 2010 and Arizona State Senate Background Brief, June 23, 2011.

functioning as a "quasi-governmental" entity to operating as a mutual insurance company that is wholly owned by its policyholders, now called *Copper Point Mutual Insurance Company,* among others.

285. Speaking to the Phoenix Business Journal, named SCF Defendant James Stabler (Stabler) indicates that the privatization of SCF follows a countrywide trend that has led to 26 other state compensation funds being privatized, beginning with Minnesota's state fund in the 1990s and including the most recent state fund privatization in West Virginia. Stabler said privatization will allow SCF to become licensed to write coverage in other states, thereby allowing it to compete on a national basis with larger multi-state commercial workers' compensation carriers.

286. Since 1968, SCF was involved with ICA, in handling claims for private insurance carriers that had become insolvent. Statute required SCF to use its resources to investigate, manage and pay valid Arizona claims of insolvent carriers and SCF would then be reimbursed by ICA Special Fund for the amount SCF paid together with reasonable costs.

287. The 2013, termination of SCF, self-insured employers, including workers' compensation pools, are required to pay a tax, on or before March 31 of each year, of not more than three per cent of the premiums that would have been paid if the employer or pool had been fully insured by an insurance carrier authorized to transact workers' compensation insurance in Arizona. The deviation rate for the purposes of

1   calculating any tax or assessment to be paid is to be set at ten per cent for calendar

2   years 2013, 2014 and 2015.

3   288.  ICA, upon the termination of SCF, will assign improperly processed or unpaid

4   workers' compensation claims to the Special Fund to ensure that the claims are

5   processed and paid. ICA Special Fund will use third party processors or other legal,

6   medical, claims or labour market personnel to assist in the processing and payment of

7   claims and use monies for any expense or service that is necessary to ensure the

8   payment of assigned claims. ICA Special Fund will be required to reimburse the

9   Administrative Fund for all expenses incurred to the processing and payment of

10  assigned claims.[13]

### RICO VIOLATIONS AGAINST STATE OFFICERS
### JUDGE EILEEN S. WILLETT, JUDGE LANCE JACOBS,
### SARAH PENITTINEN AND DR. JEROME COHN [14]

289.  There is one exception to this general rule. In Ex parte Young, the Supreme Court

held the Eleventh Amendment does not bar suit against a state official acting in

violation of federal law. *Ex parte Young*, 209 U.S. 123 (1908); *Pennhurst State Sch.*

*& Hosp. v. Halderman,* 465 U.S. 89, 102-03 (1984). As such, the Ex parte Young

exception is "inapplicable in a suit against state officials on the basis of state law," but

allows a plaintiff to bring suit in federal court against a state officer accused of

violating federal law. Id. at 102, 104-6. "This exception is narrow: It applies only to

_____

[13] Facts taken from The Examiner, Spring 2010 and Arizona State Senate Background Brief, June 23, 2011.

[14] If named SCF and/or ICA Defendants are considered State Actors then they would also be considered here.

prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146 (1993); *Edelman v. Jordan,* 415 U.S. 651 (1974) (finding that a federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief).

## STATEMENT OF THE FACTS
## COMMON TO ALL CAUSES

290.   August 1987, Roundtree attends Northern Arizona University (NAU) to play football and plays as a freshman. August 1989, Roundtree redshirts due to injury to his tibial sesamoid and has sesamoidectomy.

291.   Fall 1990 and 1991, Roundtree returns to NAU football action without further left foot difficulties.[15]

292.   1991, Roundtree signs professional football contract with Professional Spring Football League, (PSFL) Las Vegas Aces.  PSFL goes bankrupt after three weeks of two-a-day practices and scrimmages. Roundtree has no left foot difficulties.

293.   March 1992, Roundtree signs with TruSport Inc., owner and Sports Agent, Ted Updike.

---

[15] NAUs turf football field is mechanically roled out with padding.

294.    April 1992, Roundtree signs professional contract with Canadian Football League (CFL) Hamilton Tiger-Cats, but Roundtree is later released. Roundtree has no left foot issues.

295.    August 1992, Roundtree returns to NAU and graduates with Bachelor of Science in Advertising December 1992.

296.    1993, Roundtree is 22 years old with no left foot difficulties.

297.    April 1993, Roundtree participates in a football tryout for named Rattlers Defendant Wilford Daniel White (White) running barefoot 40-yard dash in 4.40 and 4.41 with cleats. [16]

298.    April 23, 1993, Roundtree signs Arena Football League (AFL) standard contract with Defendant Rattlers as Defensive Specialist to market and promote his skills to the National Football League (NFL) and CFL.

299.    Shortly thereafter Roundtree undergoes physical examination at Defendant Center for Sports Medicine and Orthopedics, PLLC (SportsMed) near 19th Avenue and Indian School Rd. location with unknown PSLP and/or ArenaSports medical staff.

300.    Roundtree informs unknown medical staff of his 1989 sesamoidectomy.

301.    Roundtree informs unknown medical staff that he does not possess health insurance.

302.    Unknown medical staff authorizes Roundtree's physical without restriction, recommendations and/or concerns and/or treat and/or reports regarding Roundtree's

---

[16] Directly contradicts Defendant Dr. William J. Leonetti 7/14/11 IME report and his 2013 hearing testimony that alleges Roundtree's left foot was injured since his '89 sesamoidectomy and prior to his arrival to Rattlers in '93.

bunion and/or hallux valgus or limitus, Freiberg's infarction and/or Morton's toe and/or usually long second and/or third digit.

303.   Unknown medical staff does not recommend and/or prescribe special shoe wear and/or any type of functional orthotic device.

304.   Rattler practice field is constructed on an outside cement basketball court. It is covered with a turf field and padding. The surrounding fence is constructed with wooden boards and padding to simulate the indoor field at America West Arena (AWA).

305.   In late May 1993, Roundtree develops left forefoot plantar tenderness/soreness under his first and second digits and immediately reports tenderness/soreness to named Rattler Defendant Matt Anderson ATC (Anderson).

306.   Anderson prescribes conservative treatment with ice and padding for Roundtree's left forefoot plantar tenderness/soreness.[17]

307.   Anderson does not advise Roundtree of and/or treat Roundtree for any bunion and/or hallux valgus or limitus, Freiberg's infarction and/or Morton's toe and/or usually long second or third digits.

308.   Anderson does not recommend or refer Roundtree see any team and/or independent orthopedic doctors and/or podiatrists.

309.   Anderson does not inspect Roundtree's shoe wear or recommend or prescribe new shoe wear or recommend or prescribe any type of functional orthotic devices.

---

[17] Defendant Anderson was an athletic trainer at NAU during Roundtree's 1989 left foot sesamoidectomy and for at least one subsequent year.

310.    Roundtree continues daily conservative treatment with ice and padding as prescribed by Anderson.

311.    June 18, 1993, Roundtree injuries his left forefoot including but not limited to his first and second digits and plantar sesamoid area of the first and second digits planting his left foot into the turf coming out of his backpedal in a game in Dallas, Texas.[18]

312.    June 21, 1993, named SportsMed Defendant Sellers examines Roundtree and faxes medical report to named PSLP and/or ArenaSports Defendant B. Colangelo, named Rattler Defendants White and Anderson asserting actual present symptoms of injury to Roundtree's first and second digits and plantar sesamoid area.

313.    Sellers diagnose Roundtree with left metacarpophalangeal joint sprain with symptomatic bunion.

314.    Sellers recommends Roundtree receive treatment with Anderson and recheck in one week.

315.    Roundtree receives treatment with ice and padding as prescribed by Anderson.[19]

316.    June 28, 1993, Sellers examines Roundtree and faxes report to B. Colangelo, White and Anderson claiming actual present symptoms of injury to Roundtree's first and second digits and plantar sesamoid area.

317.    Sellers diagnose Roundtree with second metacarpophalangeal joint sprain with symptomatic bunion.

318.    Sellers' clears Roundtree to return to practice on limited status.[20]

---

[18]  A turf-jamming incident that is more typically known as turf toe(s).
[19]  Although Roundtree's injury progresses during the season Anderson treatment of ice and padding does not change and/or progress from ice and pading.

319. Sellers recommends Roundtree continue to receive treatment with Anderson and recheck in one week.

320. Roundtree receives treatment with ice and padding as prescribed by Anderson.

321. July 6, 1993, Sellers examines Roundtree and faxes report to B. Colangelo, White and Anderson. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

   a. Present misleading diagnosis to confuse and mislead the record;

   b. injury record with false and/or misleading diagnosis of left metacarpophalangeal joint sprain, left foot with suspected Freiberg's infarction, resistant by dropping the diagnosis of *symptomatic bunion* and adding *suspected Freiberg's infarction, resistant*;[21]

   c. actual present symptoms of injury to Roundtree's first digit including but not limited to crepitus, capsular tenderness, degenerative spurring and plantar sesamoid pain as established by 6/21/93 and 6/28/93 medical reports;

   d. an accurate factual medical foundation established by 6/21/93 and 6/28/93 reports;

   e. Fail to diagnose flexible hammertoe second digit, left;

   f. pain killing injection treatment of Marcaine and Aristospan as cortisone.

[20] Defendant Rattlers are in the hunt to make first playoff appearance and possibly even host their first playoff game in their short two-year history. Plaintiff contends Sellers returning him to practice while he could not initiate a full toe walk let alone run is initial element in Defendants fraud scheme to eliminate and/or limit their Benefit liability.

[21] Roundtree contends Defendants 7/6/93 change in diagnosis was to limit PSLP and/or ArenaSports workers compensation liability to Roundtree's second toe by disregarding diagnosis of Roundtree's symptomatic bunion.

322.    July 7, 1993, Named PSLP and/or ArenaSports Defendants Kates and Copoloff, examine Roundtree at FootHealth. Defendants deliberately and fraudulently misrepresent, conceal, omit and/or fail to disclose:

    a.  Present misleading diagnosis to confuse and mislead the record;

    b.  actual present symptoms of injury to Roundtree's first digit including but not limited to crepitus, capsular tenderness, degenerative spurring and plantar sesamoid pain as established by 6/21/93 and 6/28/93 reports;

    c.  an accurate factual medical foundation established by 6/21/93 and 6/28/93 reports;

    d.  Fail to re-evaluate Roundtree after orthotic use;

    e.  (Kates) Fails to sign 7/7/93 report;

    f.  7/7/93 x-ray report from 7/7/93 report;

    g.  7/7/93 x-ray report from SCFs file record #93-46568;

    h.  7/7/93 medical report from SCFs file record #93-46568.

323.    Shortly thereafter named Rattler Defendant Kettela deliberately and fraudulently presents Roundtree with additional job as security guard for Rattler practice facility and AWA.[22]

324.    Roundtree continued to seek treatment with Anderson both before and after practices throughout the rest of the season.

---

[22] Only black injured players were offered "second jobs" as security guards. Roundtree's roommate Eric "SWAC" Dooley who was also black and injured was offered work as security guard. Only non-player security guards worked Rattler practice facility prior to Roundtree and/or Dooley getting injured.

325.    Roundtree continued on limited status throughout the rest of the season limping through daily practices. Roundtree periodically was treated with a pain killing injection by PSLP and/or ArenaSport medical staff.

326.    August 3, 1993 named SportsMed Defendant Maddox allegedly examines Roundtree and faxes report to B. Colangelo, White and Anderson. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

    a.  Maddox examined Roundtree on 8/3/93;

    b.  Maddox 8/3/93 document as a S.O.A.P medical report;

    c.  diagnose of flexible and/or rigid hammertoe second left;[23]

    d.  actual present symptoms of injury to Roundtree's first digit including but not limited to crepitus, capsular tenderness, degenerative spurring and plantar sesamoid pain as established by 6/21/93 and 6/28/93 reports;

    e.  an accurate factual medical foundation established by 6/21/93 and 6/28/93 reports;

    f.  7/23/93 report from record;

    g.  pain killing injection treatment to the left foot prior to 7/23/93 game;

    h.  injury to right shoulder in 7/23/93 game;

    i.  date, history, and treatment plan of right shoulder injury;

    j.  pain killing injection treatment to left foot at half-time of 7/23/93 game;

---

[23]    Defendants knew Roundtree had a sesamoidectomy in '89, suffered pain and tenderness on left forefoot in late May '93, suffered injury on 6/18/93, diagnosed with at least a flexible hammertoe on 7/7/93 and continuing to deliberately inject him with ever increasing amounts of pain killers to practice or play would permanently injury his foot.

k. pain killing injection treatment to right shoulder at half-time of 7/23/93 game;

l. Roundtree requested pain killing injections to practice or play as Defendants endorsed pain killing injections as conservative treatments;[24]

m. pain killing injection treatment prior to 7/30/93 game as an examination;

n. amounts of meds given for pain killing injection prior to 7/30/93 game;

o. 7/30/93 report from record;

p. 8/3/93 as a game date;

q. treatment date of pain killing injection of 8cc of 1/4 % Maricane to left foot;

r. 8/3/93 as date of pain killing injection of 3cc of 1/4 % Maricane and epinephrine to right shoulder;

s. 8/3/93 as date a discussion of understanding risks of participation with these injections;

t. any/all injections as treatments; and

u. 8/3/93 as a date a discussion of Roundtree's need to pursue further conservative treatment once he completes the game.

327. Roundtree continued conservative treatment with Anderson with pads and ice since 6/18/93 with no change in treatment since reporting his left forefoot tenderness/soreness in early May.

328. Anderson allowed Roundtree's untreated progression of injury without any change in treatment and/or diagnosis. Anderson deliberately and fraudulently misrepresented, concealed, omitted and/or failed to disclose actual present symptoms

---

[24] Roundtree claim is supported by Sellers 7/6/93 report at Treatment Plan #1.

of injury and/or allowed the untreated progression of injury to Roundtree's left foot from early May or at least 6/18/93 to 8/14/93.

329.    August 16, 1993, named SportsMed Defendants Emerson, Maddox and Sellers examine Roundtree for his Post-Season Physical and fax report to B. Colangelo, White and Anderson. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

    a.  Present multiple misleading diagnosis to confuse and mislead the record;

    b.  Roundtree's accurate 6/18/93 injury diagnosis as left foot 2nd MP joint sprain;

    c.  actual present symptoms of injury to Roundtree's first digit including but not limited to crepitus, capsular tenderness, degenerative spurring and plantar sesamoid pain as established by 6/21/93 and 6/28/93 reports;

    d.  accurate factual medical foundation established by 6/21/93 and 6/28/93 reports;

    e.  Roundtree's flexible floating and/or moderate to rigid second digit hammertoe formation;

    f.  right shoulder injury as 7/27/93;

    g.  McDermott will provide treatment to Roundtree;

    h.  Roundtree may require some physical therapy; and

    i.  Roundtree's release from his employment;

    j.  x-rays being taken;

    k.  undecipherable S.O.A.P. note formation regarding x-rays.

330. August 19, 1993, McDermott exams Roundtree and sends report to Emerson. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

    a. Present multiple misleading diagnosis to confuse and mislead the record;

    b. x-rays that allege third metatarsal was longer than the first metatarsal, but not as long as the second;

    c. Fail to take current x-rays;

    d. the date of previously taken x-rays;

    e. diagnosis of Morton's toe with elongation of second metatarsal, left foot by means of fraudulent concealment;

    f. pain on the plantar aspect of the second metatarsal as primary and principle symptom to 6/18/93 injury;

    g. alleged Roundtree's Morton's toe as a congenital condition;

    h. actual present symptoms of injury to Roundtree's first digit including but not limited to crepitus, capsular tenderness, degenerative spurring and plantar sesamoid pain as established by 6/21/93 and 6/28/93 reports;

    i. reconstructive surgery, such as a wedge osteotomy of the second metatarsal would require internal fixation with screws and plates, would decrease the weight bearing to the distal end of the second metatarsal. As a professional athlete, having this type of surgical procedure performed would most likely be

career ending and would not be undertaken without extensive non-operative therapies. At this time I do not feel it is indicated;

j. Johnson's referral for Hammertoe surgery by asserting, I did not recommend correction of the hammertoe as the surgical procedure would not significantly change his symptomology of increased tenderness at the distal end of the second metatarsal; [25]

k. Roundtree's hammertoe formation is not the result of an acute injury and is described as a result of muscle imbalance. In his situation it is most likely increased following his sesamoidectomy and development of hallux valgus;

l. to provide an addendum to the report following a review of the Roundtree's orthotic wear;

m. more specific recommendations of treatment;

n. failure to review Roundtree's orthotic wear during season;

o. his referral to Johnson for hammertoe surgery;

p. accurate factual medical foundation of Roundtree's 6/18/93 injury as established by 6/21/93 and 6/28/93 reports;

q. Misrepresent treatment plan; and

r. Fail to treat Roundtree's injury and/or provide any physical therapy.

331. August 19, 1993, Roundtree is directed by Defendants at SportsMed to fill out his portion of Worker's & Physicians Report of Injury Form.

---

[25] Roundtree contends Defendants knowingly referred Roundtree for hammertoe surgery but stated in medical reports that they did not recommend said surgery.

332. September 1, 1993, Sellers examines Roundtree and faxes report to B. Colangelo, White and Anderson. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

    a. Present multiple misleading diagnosis to confuse and mislead the record;

    b. Johnson consultation;

    c. pre-arrangement of Johnson's Hammertoe surgery by asserting McDermott did not recommend correction of hammer toe as a surgical procedure;

    d. medical record with false assessment alleging, "(1) Same, hammertoe formation left second toe with metatarsalgia; and (2) Hallux valgus with previous tibial sesamoidectomy to mislead and prevent further inquiry into multiple "opinions;"

    e. actual present symptoms of injury to Roundtree's first digit including but not limited to crepitus, capsular tenderness and degenerative spurring and plantar sesamoid pain as established by 6/21/93 and 6/28/93 reports;

    f. Roundtree as requesting a second medical opinion for surgical options;

    g. (Sellers) Misrepresents himself as the one who refers Roundtree to Johnson, for alleged second opinion consultation when it was McDermott and referral was pre-determined;

    h. previous false diagnoses of Morton's toe and/or Freiberg's infarction, resistant;

    i. accurate factual medical foundation of Roundtree's 6/18/93 injury as established by 6/21/93 and 6/28/93 reports;

j.  to take current x-rays; and

k.  Fails to treat Roundtree's injury and/or provide any physical therapy as previously discussed on August 16th.

333.  September 3, 1993 Sellers' completes his portion of his portion of Worker's & Physicians Report of Injury Form. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

a.  Misrepresent that Roundtree's injury is limited to his second digit;

b.  actual present symptoms of injury to Roundtree's first digit including but not limited to crepitus, degenerative spurring and plantar sesamoid pain at #17 as established by 6/21/93 and 6/28/93 reports;

c.  actual present symptoms of diagnosed injury including but not limited to flexible hammertoe and/or moderate to rigid hammertoe, infraction at #18;

d.  detailed medical fact about Roundtree's pre-existing capsular tenderness, crepitus, degenerative spurring, plantar sesamoid pain and hallux limitus and/or sesamoidectomy at #19 as established by 6/21/93 and 6/28/93 reports;

e.  numerous treatments of pain killing injections administered to practice and/or play at #21;

f.  Misrepresent, conceal, omit and/or fail to disclose if Roundtree sustained permanent injury by stating unknown at #29;

g.  fail to an answer question #29 (B), Able to do the same type of work he performed at the time of injury;

h.  Roundtree's referral to Johnson;

i.  previous diagnosis of Morton's toe and/or Freiberg's infarction, resistant;

j.  diagnosis of unusually long second and third toes;

k.  accurate factual medical foundation of Roundtree's 6/18/93 injury as established by 6/21/93 and 6/28/93 reports; and

l.  details of additional reports by Defendant employer doctors dated 7/7/93, 8/3/93, 8/16/93, 8/19/93, and 9/1/93.

334.  September 7, 1993, Roundtree is examined by California podiatrist Dr. Victor V. Cachia (Dr. Cachia) who diagnosis Hallux limitus with degenerative joint disease, left foot, metatarsus primus varus left foot, hammer toe second digit left foot, fracture second metatarsal phalangeal joint, left foot.

335.  Roundtree contacts named SCF Defendant Lynell S. Brown (Brown) via telephone and requests Dr. Cachia as his treating physician. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

a.  Workers Compensation Rules and Laws (Rules and Laws) asserting, No! No, out of state doctors will be approved by this carrier;

b.  Roundtree's right to choose his physician.

336.  September 17, 1993, named ArenaSports Defendant Colleen A. Cole; Rattler Medical Liaison to ArenaSports sends a letter to Johnson in advance for providing a consultation/second opinion for Roundtree's left foot and copies Maxine, Rattlers and

Anderson. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

    a. Present Roundtree to multiple employee doctors or referrals for multiple opinions to confuse and mislead Roundtree and the record;

    b. Pre-arranging Johnson consultation prior to 9/1/93; and

    c. McDermott arranged Johnson referral.

337. September 20, 1993, Brown mails notice of claim status and fraudulently and deliberately indicates claim is accepted for benefits however no compensation paid because no time was lost from work in excess of 7 days attributable to this injury.[26]

338. Defendants force Roundtree to appeal deliberate and fraudulent 9/20/93 SCF claim notice and abuse the workers compensation process.

339. September 21, 1993, named Mayo Defendant Geoffrey P. Fletcher (Fletcher) takes x-rays of Roundtree left foot. Defendants fraudulently and deliberately misrepresents, conceals, omits and/or fails to disclose actual present symptoms of injury to Roundtree's first digit including but not limited to crepitus, capsular tenderness, degenerative spurring and plantar sesamoid pain as established by 6/21/93 and 6/28/93 reports.[27]

340. September 21, 1993, named Mayo Defendant Kenneth A. Johnson (Johnson) examines Roundtree and faxes and/or mails report to PSLP and/or ArenaSports.

---

[26] Roundtree contends SCF fraudulent and deliberate notice of claim status would force Roundtree to appeal or just give up rights. SCF abused the workers compensation process.

[27] Named Mayo Defendant Fletcher states, "mild bunion deformity of left. Hammertoe deformity left second toe. Left foot otherwise negative."

Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

a. Insist on multiple reports by multiple employee doctors to confuse and mislead the record and its readers;

b. Present Roundtree to multiple employee doctors or referral for multiple opinions to confuse and mislead Roundtree and the record.

c. actual present symptoms of injury to first digit as established by 6/21/93 and 6/28/93 reports;

d. accurate factual medical foundation of 6/18/93 injury;

e. actual present symptoms of injury of second digit hammertoe;

f. Roundtree's 6/18/93 injury occurring only to his second digit;

g. actual present symptoms of injury to Roundtree's first digit including but not limited to crepitus, capsular tenderness, degenerative spurring and plantar sesamoid pain as established by 6/21/93 and 6/28/93 reports;

h. Roundtree's diagnosis; [28]

i. instability and secondary degenerative arthritis at the second metatarsophalangeal joint of left foot as probably secondary to a plantar plate

---

[28] Roundtree contends if diagnosis of instability and secondary degenerative arthritis at the second metatarsophalangeal joint of left foot, is secondary to a plantar plate rupture then why is Johnsons diagnosis not plantar plate rupture instead of former. Johnson misrepresents, conceals, omits and/or fails to disclose actual diagnosis of hammertoe to fraudulent conceal Roundtree's actual injury and ultimately perform hammertoe surgery that was not recommended by McDermott the doctor who allegedly did not refer him Johnson.

rupture to fraudulent conceal Roundtree's actual injury and perform the hammertoe surgery the very surgery McDermott did not recommend;[29]

j.  secondary degenerative arthritis is secondary to acute injury and playing or practicing with numerous pain killing injection treatments since 7/6/93;

k.  instability and secondary degenerative arthritis at the second metatarsophalangeal joint of left foot as probably secondary to a plantar plate rupture as a different injury from Plaintiffs recorded hammertoe;

l.  to disclose that a simple resection of the base of the proximal phalanx of the second toe with an extensor tenotomy to that toe is hammertoe surgery;

m.  fails to review employer medical records dated 6/21/93, 6/28/93, 7/6/93, 7/7/93, 8/3/93, 8/16/93, 8/19/93 and 9/1/93;

n.  Defendant employer doctors numerous pain killing injection treatments since 7/6/93;

o.  Defendant employer doctor diagnosis of Morton's toe, Freibergs infraction and unusually long second and third digits.

341.  October 7, 1993, Brown mails claim status report to Roundtree deliberately and fraudulently alleging temporary compensation and active medical treatment terminated on 10/2/93 because claimant was discharged. Injury resulted in no permanent disability.

---

[29] Roundtree contends if Johnson saw degenerative arthritis at the second digit than it is reasonable to assume he would had have seen the more advanced case of degenerative arthritis and/or degenerative spurring in the first digit.

342.    Defendants force Roundtree to appeal deliberate and fraudulent 10/7/93 SCF claim

notice.

343.    Defendants fraudulently and deliberately abuse the workers compensation process.

344.    October 21, 1993, Brown mails fraudulent claim status report to Roundtree

alleging, "A check for $2053.98 has been mailed to you, covering time lost,

commencing June 19, 1993 through October 20, 1993. Defendants fraudulently and

deliberately misrepresent Benefits from 6/19/93 to 10/20/93 (124 days x 46.03 =

$5,707.72) as $2,053.98.[30]

345.    SCF deliberately and fraudulently mails check of $2,053.98 to Roundtree on

9/21/93.[31]

346.    Roundtree only played and/or practiced at full speed after 6/18/93 with the

treatment of employer doctor's pain killing injection otherwise Roundtree only limped

and/or hopped through practice.

347.    Roundtree looking forward to NFL tryouts in spring 1994 and having been made

to believe he had no other options available to him relied on Defendants, fraudulent

statements, assessments, diagnosis, findings and/or recommendations as true and

[30] Roundtree contends he was totally temporary disabled without the treatment of pain
killing injections from work from 6/19/93 to 10/20/93 and should be paid at 75% of
monthly wage of $2,100.00 = $1,575. Daily rate for $1,575.00 divided by 30 = $52.50 x
124 days = $6,510.00 minus earnings.
[31] Defendants fraudulently provide Roundtree with supplemental work as security guard
to reduce PSLP and/or ArenaSports workers compensation liability.
        Roundtree contends the supplemental security guard work directive come from J.
Colangelo because J. Colangelo manages, operates and controls PAD, ArenaSports,
SportsMed, AWA and SESI through PSLP. The facts of this case demonstrate he also has
considerable influence and/or control over its employees, agents and subsidiaries of SCF
and the ICA claims and ALJ divisions all working for PSLP and/or ArenaSports benefit.

proceeded with surgery on as coerced by Defendants fraud scheme to his own detriment.

348.    November 12, 1993, Roundtree undergoes deliberate and fraudulent surgery by Johnson; "a resection of the base of proximal phalanx second toe, left foot, with extensortenotomy. Scarring and instability at that joint was noted as well as very little synovial reaction was present. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

    a.  Roundtree's 6/18/93 injury occurring only to second digit;

    b.  hammertoe, second digit left;

    c.  actual present symptoms of injury to Roundtree's first digit including but not limited to crepitus, capsular tenderness and degenerative spurring and plantar sesamoid pain as established by 6/21/93 and 6/28/93 reports;

    d.  that a simple resection of the base of the proximal phalanx of the second toe with an extensor tenotomy to that toe is hammertoe surgery;

    e.  Roundtree's injury diagnosis as a plantar plate rupture; [32]

---

[32] Roundtree contends if diagnosis of instability and secondary degenerative arthritis at the second metatarsophalangeal joint of left foot, is secondary to a plantar plate rupture then why is Johnsons diagnosis not plantar plate rupture instead of the former.

Johnson misrepresents, conceals, omits and/or fails to disclose accurate factual medical foundation of hammertoe, crepitus, capsular tenderness, degenerative spurring and plantar sesamoid pain to fraudulent conceal: (1) Roundtree's actual symptoms of 6/18/93 injury; and (2) 9/21/93 and 11/12/93 diagnosis of instability and secondary degenerative arthritis at the second metatarsophalangeal joint of left foot secondary to a plantar plate rupture.

Johnson then deliberately and fraudulently performs hammertoe surgery on Roundtree on 11/12/93 that was not recommended by McDermott on 8/19/93 however McDermott alleges in his 4/6/94 report that he did make such recommendations on

   f.  instability and secondary degenerative arthritis at the second metatarsophalangeal joint of left foot as probably secondary to a plantar plate rupture to fraudulent conceal Roundtree's actual injury and ultimately perform hammertoe surgery; [33]

   g.  plantar plate surgery as a simple resection of the base of the proximal phalanx of the second toe with an extensor tenotomy to that toe;

   h.  Lack of consent/Battery.

349.  November 15, 1993, SCF mails benefit check to Roundtree for 22 days for $959.19.

350.  November 16, 1993, SCF mails Roundtree notice of claim status indicating Roundtree is *again* temporary totally disabled (TTD) benefits effective November 12, 1993. [34]

351.  November 24, 1993, SCF mails TTD benefit check to Roundtree for 14 days. Defendants fraudulently and deliberately misrepresent benefit check amount of 644.42 as TTD benefits. Defendants slickly paid compensation at TPD rate yet distributed checks at TTD frequency.

---

8/19/93. Why did McDermott flip-flop his established statements? Something surely smells here.

[33]  Defendants provide Roundtree with the same diagnosis pre-operatively and post-operatively.

[34]  Plaintiff believes that statute provides during times of TTD benefits should be paid at 75% of monthly wage of 2100.00 at $1575.00.

352.   November 30, 1993, Johnson provides change of dressing alleging, "We'll see in two weeks with x-rays for probable final dismissal." Defendant fraudulently and deliberately:

   a.   Attempt to limit PSLP and/or ArenaSports liability by projecting probable release date;

   b.   Deny Roundtree post-operative physical and functional therapy.

353.   December 6, 1993, Johnson dies from injuries from a 12/5/93 plane crash.

354.   Named Mayo Defendant Kile takes Roundtree as his patient.

355.   December 9, 1993, SCF mails TTD benefit check to Roundtree for 14 days. Defendants fraudulently and deliberately misrepresent benefit check amount of 644.42 as TTD benefits. Defendants slickly paid compensation at TPD rate yet distributed checks at TTD frequency.

356.   December 23, 1993, Defendant Kile fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

   a.   Roundtree has actual present symptoms of moderate to rigid hammertoe second left;

   b.   Misrepresent hammertoe as "there is still slight dorsiflexion present in the weight-bearing position."

   c.   Deny physical and functional therapy to limit PSLP and/or ArenaSports liability;

d. Release Roundtree from active treatment while apparently receiving TTD benefits to limit PSLP and/or ArenaSports liability.[35]

357.    December 23, 1993, named SCF Defendant J.A.K. deliberately and fraudulently authorizes last temporary total compensation payment at 66-2/3% that should be at 75% for Roundtree.

358.    January 4, 1994, Brown mails claim status report to Roundtree changing temporary compensation to 66-2/3%, TPD benefits and releasing Roundtree for work, effective December 24, 1993. Defendants fraudulently and deliberately misrepresent benefit amount, terminate benefits the day after releasing Plaintiff from TTD benefit care.[36]

359.    Shortly thereafter, Roundtree seeks out Dr. Louis H. Freed (Dr. Freed) to be his treating physician and communicates that in writing with SCF and ICA.

360.    February 11, 1994, Roundtree is examined by Dr. Freed who *inter alia*, recommends immediate physical therapy three times a week for three weeks to decrease adhesions and to break-up some of the scar tissue at the second MPJ and relax some of the soft tissue structures.[37] I feel this patient will eventually need surgical correction. In order to place the second toe in the proper position, hallux

---

[35] December 23, 1993, SCF mails TTD benefit check to Roundtree for 14 days. Defendants fraudulently and deliberately misrepresent benefit check amount of 644.42 as TTD benefits. Defendants slickly paid compensation at TPD rate yet distributed checks at TTD frequency.

[36] Roundtree again asserts 75% is the proper percentage for TTD benefits and Defendants fraudulently and deliberately are changing from TTD benefits of 66-2/3% to TPD benefits of 66-2/3%.

[37] Defendant's fraud scheme to limit and/or eliminate liability denied Roundtree access to standard physical and functional therapy after Johnson 11/12/93 surgery.

valgus correction most likely will be needed. The patient was given no guarantees and is informed that hallux valgus correction would probably not be long lasting due to the tibial sesamoid removal. I may consider an adductor tendon transfer. Since Roundtree has rookie try-outs for the NFL in April, I do not feel I can have this patient ready for try-outs. If the patient does not have relief during his training, surgical correction may be needed this year. I will see Roundtree back in a week.

361.    February 18, 1994, Brown faxes information request to Freed who provides a second evaluation of Roundtree informing Defendants of *inter alia*, floating toe deformity of the second left toe, unstable gait, lesser matarsalgia and painful hallux valgus. Defendants fraudulently and deliberately abuse the workers compensation process.

362.    February 21, 1994, initial evaluation of physical therapist Thomas J. Curtis (Curtis) reveals, *inter alia*, Roundtree demonstrates significant limitation of the MTP joint of the second toe, and it seems to be swollen and painful.[38] He also demonstrates stiffness in his ankle decreased dorsiflexion and plantar flexion.

363.    March 1, 1994, Curtis writes progress note for Roundtree stating *inter alia*, active/assistive range of motion and extension flexion strengthening exercises to his great and second toe.

---

[38]  Plaintiff contends Defendants actively misled Roundtree through affirmative conduct by fraudulent means to execute hammertoe surgery through Johnson at Mayo that proximately and directly caused secondary injuries to Roundtree's foot. Defendants, (and clearly McDermott) attempt to conceal the nature and extent of their criminal activities by fraudulent means (McDermott flip-flopping statements in his 4/6/94 from his 8/19/93 reports).

364. March 28, 1994, SCF mails Roundtree directive for McDermott second opinion.

365. March 29, 1994, Roundtree files request for hearing regarding 1/4/94, SCF claim status for termination benefits since 12/24/93.

366. March 29, 1994, Brown mails second opinion request to McDermott reviewing the record to date. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

   a. Present multiple reports by multiple employee doctors to confuse and mislead the record;

   b. Roundtree was examined after 6/21/93 by Sellers on 6/28/93 and 7/6/93.

   c. Roundtree was examined after 6/21/93 by Kates and Copoloff on 7/7/93.

   d. Roundtree was allegedly examined after 6/21/93 by Maddox on 8/3/93.

   e. Roundtree was examined after 6/21/93 by Sellers, Maddox and Emerson on 8/16/93;

   f. Roundtree requested Cachia as his treating physician;

   g. Brown denied Roundtree his right to choose Cachia as his treating physician;

   h. Roundtree was being paid only TPD benefits at 66-2/3% instead of TTD benefits at 75% from 6/19/93 to 10/20/93;

   i. Roundtree was being paid only TPD benefits at 66-2/3% instead of TTD benefit at 75% from 11/12/93 to 12/23/93;

   j. Defendants actively misled Roundtree with affirmative conduct into giving consent for diagnosis of instability and secondary degenerative arthritis at the

second metatarsophalangeal joint of left foot as probably secondary to a plantar

plate rupture to which Defendants then performed hammertoe surgery (the very

surgery McDermott did not recommend but said nothing)[39] and, thereafter,

concealed the nature and extent of their criminal activities by fraudulent

means;

k.  Defendants actively misled Roundtree with affirmative conduct then

committed Battery on Roundtree by performing fraudulent hammertoe surgery

on him;

l.  Misrepresent Roundtree continued conservative care that included physical

therapy under Johnson;

m.  Misrepresent Roundtree was released by Johnson on 12/24/93;

n.  Misrepresent Roundtree sought medical treatment with Freed because Johnson

was involved in a fatal accident;

o.  Misrepresent Freed returned Roundtree to physical therapy;

367.  Defendants fraudulently and deliberately deny Roundtree TPD benefits from

12/24/93 to 3/29/94.

368.  April 6, 1994, McDermott examines Roundtree and mails results to Brown.

Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to

disclose:

---

[39] McDermott and/or Sellers had a duty to speak if they knew hammertoe surgery was not
recommended for Roundtree. Roundtree contends McDermott referral to Johnson was
part of Defendants scheme to limit liability through Johnsons fraudulent hammertoe
surgery and not provide Roundtree with any physical and/or functional therapy.

a.  Present multiple reports by multiple employee doctors to confuse and mislead the record;

b.  Misrepresent Roundtree 6/18/93 injury is limited to his second digit;

c.  Misrepresent that Roundtree reports he is improved from his pre-surgical condition but does continue to experience some pain on the plantar aspect of the distal end of the second metatarsal;

d.  Misrepresent that Roundtree reports a marked improvement of his hammertoe in which the proximal interphalageal joints dorsal skin was being abraded and irritated from the top of his shoe. This condition is corrected and he feels it is improved;

e.  Misrepresent Roundtree sought a second opinion from Freed for post-operative care;

f.  Misrepresent dorsal angulation of the second toe is to a lesser degree than previously;

g.  Misrepresent Roundtree ambulates with normal gait;

h.  actual present symptoms of injury to Roundtree's first digit including but not limited to crepitus, degenerative spurring and plantar sesamoid pain;

i.  dorsal angulation of approximately at 45 degrees is same as it was on Johnson's initial evaluation on 9/21/93 and prior to surgery on 11/12/93;

j. Misrepresent he recommended an osteotomy of the second metatarsal with shortening and changing the angle of the metatarsal because of the amount of the weight bearing of the second metatarsal;[40],

k. Misrepresent McDermott's consideration for correction of Roundtree's hallux valgus;

l. the permanent disability at pg 2, ¶ 7;

m. Misrepresent Roundtree indicates he no longer will be participating for Rattlers; and

n. Misrepresent his 8/19/93 recommendations.

369.  April 6, 1994, Roundtree signs legal authorization for Defendant Attorney Dennis R. Kurth to inspect and copy SCF file 93-46568 and ICA file 93279-406248. Roundtree contends Kurth had a duty to disclose fraud he discovered in his review of said files.[41]

370.  April 8, 1994, ICA mails Notice of Hearing to ArenaSports (PSLP), SCF and B&HLaw is set for September 6, 1994 regarding Roundtree's 3/29/94 request for benefits.

371.  Roundtree contends Defendant ICA conspired with Defendants to fraudulently and deliberately delay hearing for six (6) months concerning payment of claimant's compensation benefits from 12/24/93 to 3/29/93.

---

[40] McDermott is a bold face liar who will say anything at any time as a review of his 8/19/93 report now clearly demonstrates.

[41] Roundtree contends the only way Kurth, a lawyer, did not know of Defendants fraud if Defendants failed to provide him a complete copy of said files.

372. What is more, SCF fraudulently and deliberately did not pay Roundtree benefits while Roundtree received active medical treatment under Freed and physical therapy.

373. SCF fraudulently and deliberately paid medical benefits to Freed, thus SCF and denied benefits to Roundtree.

374. Defendants fraudulently and deliberately delayed benefits payments of:

   a. 3/30/94 to 4/28/94 until 5/20/94;

   b. 4/29/94 to 5/28/94 until 6/14/94

375. Sometime in late June, Roundtree learns Brown misrepresented Roundtree's request to choose an out of state physician. Roundtree immediately files a complaint with ICA.

376. July 7, 1994, named SCF Defendant Eva Keller (Keller) mails letter to Roundtree entitled Wavier of Right to File a Request for Review and Appeal.  Defendants fraudulently and deliberately force Roundtree to settle for benefits due and owing.

377. The six (6) month ICA hearing delay forces Roundtree into a settlement with SCF for $3000.00 instead of receiving $4,372.85 in due and owing Benefits. Named SCF defendant E.V.A. fraudulently and deliberately authorizes Settlement.

378. July 20, 1994, Roundtree undergoes reconstructive foot surgery on his first and second digits in California by Cachia. Defendants fraudulently and deliberately misrepresented Roundtree's request to have this surgery in September 1993.

379. August 2, 1994, Brown mails notice of claim status to Roundtree which states Plaintiff is again TTD at 75% effective 7/21/94.

380.   August 16, 1994, SCF mails benefit check to Roundtree. Defendants fraudulently and deliberately misrepresent TPD benefits as TTD benefits.

381.   August 31, 1994, SCF mails benefit check to Roundtree. Defendants fraudulently and deliberately misrepresent TPD benefits as TTD benefits.

382.   August 31, 1994, named SCF Defendant J.A.K. fraudulently and deliberately authorizes misrepresented TPD benefits as TTD benefits on SCF Compensation benefit history.

383.   September 1, 1994, Roundtree starts physical therapy with Lynn Watkins, PT (Watkins) at Sport and Wellness Mission Regional Hospital (Wellness), Mission Viejo, California.

384.   Roundtree contends Defendants fraudulently and deliberately terminate TTD benefits as Roundtree continues to recover during physical therapy.

385.   September 2, 1994, Brown mails notice of claim status to Roundtree and ICA.

386.   September 21, 1994, SCF and/or HCX, mails letter to Watkins at Wellness alleging, "Enclosed, please find a brief questionnaire for you to complete in order for us to verify the medical necessity of therapy for Plaintiff. No further care will be verified for medical necessity until we obtain the required information.[42] Defendants fraudulently and deliberately:

---

[42] Roundtree contends SCF unleashed its fraudulent company HCX which it controls and operates unto Roundtree's claim after his second surgery to eliminate and restrict liability. Roundtree contends HCX was not a part of his claim early on because SCF fraudulently and deliberately terminated it on 12/23/93; however if claimants continue to receive Benefits and their claims "drag on" and are not disposed of by SCF at an earlier stage, SCF introduces itself as HCX to terminate Benefits by fraudulent means.

    a.  Fail to provide copy of questionnaire in SCF file #93-46568; and

    b.  Fail to provide copy of Wellness answers to questionnaire in said file.

387.  September 29, 1994, SCF and/or HCX mails letter to Watkins, at Wellness stating, "We are able to verify medical necessity for 22 therapy visits over an 8 week period from 09/01/94 to 10/27/94. Each office visit can include up to 60 minutes of treatment time. Defendants fraudulently and deliberately limit physical therapy to 22 visits without any legal and/or medical justification.

388.  January 17, 1995, Brown mails letter to Mission Hospital Regional. Defendants fraudulently and deliberately, misrepresent, conceal, omit and/or fail to disclose:

    a.  Sport and Wellness Mission Regional Hospital name and address to illegally terminate Roundtree's medical benefits;[43]

    b.  Failed to provide forms in initial verification letter fraudulently sent on 9/21/94 to request an extension of treatment for four months later;

    c.  HCX appeal process;

    d.  and/or provide copies of said "forms" and "verification letter;"

    e.  and/or provide copies of said "forms" and "verification letter" in SCF file #93-46568;

---

[43]  Defendants have extensive pattern of fraudulent and deliberate conduct, illegally terminating Roundtree's medical and/or compensation benefits while he is receiving active medical treatment: (1) Johnson; (2) Freed; and (3) Cachia.

    Not only has Roundtree endured fraudulent conduct with injury during the Rattler football season but also in seeking treatment for his injuries that continue to aggravate his original injuries but produce secondary injuries as well as secondary associated injuries.

   f.  and/or provide copies of verification letter detailing appeal process in SCF file #93-46568; and

   g.  Deny Roundtree prescribed physical therapy.

389.   Roundtree stressed and frustrated with his injury, doctors, SCF and/or HCX, workers compensation process, his life, physical therapy and lack of his professional football career impulsively leaves California and returns to Arizona.

390.   January 24, 1995, SCF final pays due and owing compensation payments from 11/30/94 to 12/29/94.

391.   Shortly, thereafter Roundtree stressed and frustrated with his injury, his lack of a professional football career, constant career questions from family, friends, former coaches and strangers files to leave the State of Arizona to go St. Croix, U.S. Virgin Islands (STX), a primitive place where no one would know him, to rehab and recover and return to professional football without the constant pressure from others.

392.   February 9, 1995, Cachia faxes a prescription for Roundtree's physical therapy to Brown and Schuster's Rehabilitation Services (Schuster's), for continuing therapy on his surgically reconstructed left foot at 3 days per week for 6 weeks. Check with physician in 8 weeks.

393.   February 28, 1995, SCF final pays due and owing compensation payments from 12/30/94 to 2/27/95.[44]

---

[44] Roundtree contends Defendants fraudulently conceal this benefit check as Roundtree only received one check on 4/12/95 in STX.

394.   On or about February 28, 1995, named SCF Defendant C.A.M. takes over for Brown authorizing Roundtree's compensation payments.

395.   March 13, 1995, SCF mails letter to Roundtree (Arizona address) and ICA deliberately and fraudulently suspending Roundtree's compensation and medical Benefits effective 3/13/95 by falsely accusing him of leaving the State of Arizona without the written approval of ICA.[45]

396.   March 13, 1995, Roundtree pays $40.00 to repair his orthotics at STX Orthopedic Clinic at STX Hospital and sends receipt to Brown at SCF. Defendants fraudulently and deliberately fail to re-pay costs.

397.   March 15, 1995, SCF and/or HCX mails letter to Schuster's in STX. Defendants fraudulently and deliberately, misrepresent, conceal, omit and/or fail to disclose:

   a.  Schuster's address;

   b.  Fail to pay medical benefits to Schuster's;

   c.  Provide Schuster's a copy of enclosed questionnaire;

   d.  Deny Roundtree prescribed physical therapy;

   e.  Provide copy of questionnaire in SCF file #93-46568;

398.   March 17, 1995, ICA mails an Order to Roundtree and SCF, granting Roundtree's 3/9/95, request to leave the State of Arizona for STX under the provisions of A.R.S Section 23-1071.

---

[45] Roundtree contends this is a pretext to illegally terminate his benefits as Defendants fraudulently and deliberately mailed notice to Roundtree's Arizona address with knowledge of his STX address.

399.   March 24, 1995, SCF, mails notice of claims status to Roundtree (Arizona address) reinstating benefits effective March 17, 1995. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

    a.   Roundtree STX address;

    b.   Provide Schuster's notice of Roundtree's reinstated benefits;

    c.   Remit medical payment to Schuster's;

    d.   Deny Roundtree prescribed physical therapy at Schuster's.

400.   Shortly thereafter, Roundtree is no longer welcomed at Schuster's.

401.   March 24, 1995, copy of Notice of Claim Status with hand written note across front stating, "Please process the attached invoice from mission hospital." Defendants fraudulently and deliberately unduly delay and/or fail to pay medical benefits.

402.   April 12, 1995, SCF mails compensation check to Roundtree STX address. Defendants fraudulently and deliberately pick and choose when to use Roundtree's STX address.

403.   March 30, 1995, Roundtree writes Brown a note oblivious to Defendants fraud and failure to pay Schuster's, claim termination and/or reinstatement of Benefits.

404.   On or about May 10, 1995, Roundtree is examined and treated by Cachia and refers Roundtree to kinesiologist for muscle testing. Defendants fraudulently and deliberately fail to provide a copy of referral in SCF file #93-46568.

405.   May 15, 1995, Brown mails letter to Roundtree and Cachia,[46] alleging, "Under the HCX physical therapy review program,[47] conducted in conjunction with SCF arrangements have been made for you to be evaluated by a medical specialist not previously connected with your case, [Defendant Kates]." [48] Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

a.   Kates is previously associated with Roundtree's case;

b.   Kates prior examination of Roundtree on 7/7/93;[49] and

c.   Kates is PSLP and/or ArenaSports employee and/or agent.

406.   May 31, 1995, Kates addresses his report to Defendant Valerie Moore (Moore), IME Network Coordinator. Kates examines Roundtree at FootHealth the same location he examined Roundtree at on 7/7/93. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

a.   Roundtree's prescription for physical therapy by Cachia;

b.   Roundtree's need for physical therapy;

c.   Kates is PSLP and ArenaSports employee and/or agent;

---

[46]   Roundtree contends letter is in direct response to Cachia referring Roundtree to kinesologist.

[47]   Another HCX agency controlled and operated by SCF and its employees to defraud claimants of Benefits.

[48]   SCF and/or HCX sent letter to Roundtree, "[u]nder the HCX physical therapy review program, conducted in conjunction with SCF," however the letter head reads State Fund, workers compensation insurance with SCF phone number and claims administration with SCF address and signed by SCF employee Brown.

[49]   Roundtree now realizes why Defendants conceal, omit and/or fail to disclose and/or file Kates and Copoloff's 7/7/93 examination record of Roundtree into the SCF file 93-46568. This very fact shows Defendants fraud is established and complex and very difficult to detect. This is also the reason why Kates failed to sign the 7/7/93 examination report.

d.  SCF extensive pattern of failing to provide and/or terminating all post-operative physical therapy associated with Roundtree's injuries;

e.  Roundtree did undergo some physical therapy postoperatively;

f.  Defendants failure to treat Roundtree's first great toe injured on 6/18/93 would inherently increase its risk of further stiffness and/or injury;

g.  SCF failed to provide and/or fraudulently terminated physical therapy associated with Roundtree's claim that would inherently increase the risk of loss of range of motion and residual stiffness in Roundtree's first and second digits;

h.  that with continued physical therapy as prescribed by Cachia would help break-up scar tissue and relax some of the soft tissue structures and reduce Roundtree's residual stiffness and increase flexibility;

i.  SCF failed to provide and/or fraudulently terminated physical therapy associated with Roundtree's claim that would inherently increase his risk of sensory numbness to the first great toe even 10 months postoperatively;

j.  statements associated to Roundtree regarding "patient goes on to indicate to me that he feels that his condition is improving steadily at this point and has not regressed at all;"

k.  fail to provide copy of questions posed to Kates;

l.  any further physical therapy would be nonproductive;

m. Roundtree specified pain on the plantar area of his first and second digits;

n. Roundtree agrees he is stationary;

o. Roundtree is *continuing to improve* therefore he cannot be stationary pursuant the legal and medical definition;

p. stiffness and discomfort of first and second digits and pain plantar area of first and second digits as not experiencing any particular discomfort;

q. that *local podiatrist* is his former partner, employee and/or co-worker at FootHealth under the employ and/or agency of PSLP and/or ArenaSports;

r. prognosis for a complete recovery is excellent;

s. prior examination of Roundtree with Copoloff on 7/7/93 at FootHealth and deliberately did not sign the report;

t. employee doctor medical reports of Roundtree's 6/18/93 injury to avoid actual present symptoms of said injury;

u. employee doctor medical reports of Roundtree's 6/18/93 injury to avoid accurate factual foundation of said injury;

v. employee doctor medical reports of Roundtree's 6/18/93 injury to conceal conflict of interest;

w. Moore questionnaire in SCF file 93-46568;

x. Roundtree was prescribed physical therapy on 2/9/95;

y. Roundtree was referred to kinesologist by Cachia on or about 5/10/95;

z. Kates association with PSLP and/or ArenaSports.

407.   May 31, 1995, Brown telephones Kates. Kates provides Brown fraudulent information for SCF to terminate Roundtree's medical and compensation Benefits. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

   a.  Kates is PSLP and/or ArenaSports employee and/or agent;

   b.  Kates was previously associated with Roundtree's case on 7/7/93;

   c.  Roundtree's active 2/9/95 prescription for physical therapy;

   d.  Cachia referred Roundtree to kinesologist on 5/10/95;

   e.  Roundtree is stationary;

   f.  Roundtree is on regular work status; and

   g.  Roundtree has no permanent injury;

408.   June 1, 1995, named SCF Defendant Brian McFarland (McFarland) mails letter to Cachia to verify active medical treatment. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

   a.  Cachia suite address as 271 instead of 317;

   b.  Roundtree was treated by Cachia on 5/10/95;

   c.  Roundtree's active 2/9/95 prescription for physical therapy;

   d.  Cachia referred Roundtree to kinesologist on 5/10/95;

   e.  Roundtree's notice to receive physical therapy at St. Joseph's Hospital;

   f.  Fail to provide Cachia answers to 6/1/95 questions in SCF file #93-46568;

409.    June 6, 1995, SCF and/or HCX mails letter to Cachia alleging they are unable to verify medical necessity for further treatment of Roundtree. If the information is inconsistent with your understanding of this recommendation **please contact us immediately.** Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

 a. Cachia's correct address;

 b. 6/6/95 letter to Cachia;

 c. Kates is PSLP and/or ArenaSports employee and/or agent;

 d. Kates previously examined Roundtree at FootHealth on 7/7/93;

 e. HCX contact for Cachia to speak with;

410.    June 15, 1995, McFarland mails notice of claim status, to Roundtree and Cachia, terminating Benefits because claimant was discharged. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

 a. Roundtree was discharged;

 b. who discharged Roundtree;

 c. termination of Benefits is based on Kates fraudulent 5/30/95 IME;

 d. Kates is PSLP and/or ArenaSports employee and/or agent;

 e. Kates previously examined Roundtree at FootHealth on 7/7/93;

411.    June 19, 1995, SCF and/or HCX mails fraudulent letter to Cachia alleging unable to verify the medical necessity for further treatment of Roundtree. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

   a.  Cachia's correct Suite number;

   b.  Fail to provide Cachia with a copy of 6/6/95 and/or 6/19/95 letter prior to termination of Roundtree's Benefits;

   c.  Kates is PSLP and/or ArenaSports employee and/or agent;

   d.  Kates previously examined Roundtree at FootHealth offices on 7/7/93;

   e.  HCX contact for Cachia to speak with;

412.   June 21, 1995, SCF fraudulently denies payment to Wellness itemized invoice of $1,120 for physical therapy services provided in September/October 1994.

413.   August 17, 1995, Roundtree files request for hearing at ICA regarding 6/15/95 termination of Benefits, release to work and no permanent injury.

414.   September 27, 1995, named ICA Defendant ALJ Robert T. Wilson (ALJ Wilson) mails Notice of Hearing to Roundtree and copies ArenaSports and named SCF Defendant Peter C. Kilgard (Kilgard) SCF Chief Counsel. Defendants fraudulently and deliberately conceal, omit and/or fail to disclose ALJ Wilson's conflict of interest as a former SCF attorney and/or agent.

415.   October 1995, Roundtree's girlfriend loses confidence in Roundtree because he loses confidence in himself and takes their 3 month old daughter and returns to her hometown in New Hampshire.

416.   November 17, 1995, named SCF Defendant Gervais R. Brand (Brand) fraudulently and deliberately arranges a second IME for Roundtree with Kates and

mails copies to Roundtree, ALJ Wilson and Kates. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

    a.  Kates is PSLP and/or ArenaSports employee and/or agent;

    b.  Kates previously examined Roundtree at FootHealth offices on 7/7/93;

    c.  ALJ Wilson duty to disclose Kates PSLP and/or ArenaSports conflict of interest;

    d.  ALJ Wilson duty to disclose his SCF conflict of interest;

    e.  Brand as an attorney under a code of ethic has a duty to disclose the known conflicts of interest of Kates and his former co-worker ALJ Wilson;

417.  December 6, 1995, Kates examines Roundtree for a second IME and mails and/or faxes report to SCF, ALJ Wilson and Roundtree. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

a.  Present multiple reports by multiple employee doctors to confuse and mislead the record;

b.  Kates is PSLP and/or ArenaSports employee and/or agent;

c.  Kates previously examined Roundtree at FootHealth offices on 7/7/93;

d.  Kates conflict of interest with patient and/or employer;

e.  prior IME exam date as May/94;

f. Review PSLP and/or ArenaSports doctors Sellers, Maddox, McDermott, Emerson, Copoloff's and Johnson medical reports from 6/21/93 to 4/6/95 because Kates is an employee PSLP.[50]

g. the non-existent follow-up postoperative care from Johnson and Kile;

h. did not provide Roundtree with any postoperative care except for a role of tape;

i. that postoperative care was pursued by Roundtree because of the extreme pain and stiffness he experienced after 11/12/93 Johnson/Kile surgery and subsequent 12/23/93 release without physical and/or functional therapy;

j. that all postoperative physical therapy was illegally terminated by Defendants;

k. Roundtree was released by Johnson/Kile on 12/23/93 and had nothing to do with his death;

l. all postoperative physical therapy was routinely terminated by Defendants, there was no "normal rehabilitation;"

m. 5/31/95 IME statements that he should have a full recovery of range of motion which terminated medical benefits for physical therapy over the last 6 months. Roundtree presents with significant decrease in range of motion at the first and second digit. I

---

[50]  Why do Both IME doctors, Kates from 1995 and Leonetti 2011, fail to review the records of PSLP and/or ArenaSports doctors Sellers, Copoloff, Maddox, McDermott, Emerson and their referral to Johnson and Kile from 6/21/93 to 4/6/95.

What are Kates and Leonetti trying to conceal in their review of Roundtree's medical records from 6/21/93 to 4/6/95 that would cause them 16 years apart to duck and dodge the same nine medical reports by same six PSLP doctors and their referral.

What they are ducking and dodging has been pled above and Kates and Leonetti had a duty to disclose said fraud and they both chose not to. They both chose to participate in the fraud fully and now must face the consequences.

had assumed on 5/31/95 that the amount of restriction observed would continue to resolve but apparently it has not done so;[51]

n.  Roundtree's joint motion loss and sensory numbness in his first and second digits is permanent and not expected to reverse at this point was direct and proximate result of Defendants use of his fraudulent 5/31/95 IME that illegally terminate Roundtree's prescribed physical therapy;

o.  Roundtree does not feel that he has experienced any improvement since the last IME however Roundtree continued to experience pain in the foot with activity especially the plantar sesamoid area of the first and second digits since the 5/31/95 IME.

p.  Roundtree's 6/18/93 injury as limited to second digit at ¶ 1;

q.  Roundtree's bunionectomy had no specific relationship to first digit crepitus, capsular tenderness, degenerative spurring plantar sesamoid pain and symptomatic bunion issues described in Sellers 6/21/93 or 6/28/93 injury reports at ¶ 1;

r.  actual present symptoms of injury to Roundtree's first digit including but not limited to crepitus, capsular tenderness, degenerative spurring, plantar sesamoid pain, pain at plantar aspect of first and second digits and symptomatic bunion at ¶ 2;

s.  with continued exercise (but not physical therapy cancelled by his 5/31/95 IME) that limitation of motion and joint restriction might self-resolve at #3;

---

[51] Kates fraudulent 5/31/95 IME lead to the illegal termination of medical Benefits for Roundtree physical therapy as prescribed by Cachia to break up scar tissue and relax some of the soft tissue structures to prevent significant decrease in range of motion.

t.  Kates 5/31/95 IME states Roundtree should have 100% resolution and now states Roundtree injury is stationary, but he has not had and not anticipated to have 100% resolution at ¶ 3;

u.  that he never had a review of Roundtree's history in his 5/31/95 IME at ¶ 4;

v.  Roundtree's 6/18/93 injury as limited to second digit at ¶ 4;

w.  actual present symptoms of injury to Roundtree's first digit including but not limited to crepitus, capsular tenderness, degenerative spurring, plantar sesamoid pain, pain at plantar aspect of first and second digits and symptomatic bunion specified in medical reports taken on 6/21/93 and 6/28/93 at ¶ 4;

x.  "Since he is clearly not going back to perform as a professional football player" clearly contradicts Kates 1996 hearing testimony regarding Roundtree's ability to return to professional football at ¶ 5;

y.  association with Copoloff as PSLP co-employees and/or agents at ¶ 6;

z.  conflict of interest with PSLP and/or ArenaSports at ¶ 6;

aa. major reconstructive foot surgery as not requiring any supportive care other than a pair of orthotics at ¶ 6;

bb. termination of physical therapy after Johnson surgery 11/21/93 and the repeated cancelling all prescribed physical therapy after Cachia surgery 7/20/94 *that all that could be done medically has been offered to Roundtree* at ¶ 7;

cc. Roundtree's pre-existing injury of sesamoidectomy and actual present symptoms of injury to Roundtree's first digit including but not limited to crepitus, capsular

tenderness, degenerative spurring, plantar sesamoid pain, pain at plantar aspect of first and second digits and symptomatic bunion as described in Sellers reports 6/21/93 and 6/28/93 at ¶ 8;[52]

dd. Roundtree's loss of earning capacity while compensating his injury as scheduled claim that will not permit return to prior employment.

ee. 5% percentage of disability is based on Kates fraudulent IME.

418.    On or about December 10, 1995, Roundtree files bad faith claim complaint against SCF for unreasonably delaying benefits, non-authorization of medical benefits, unreasonably interfered and obstructed the claimant's right to choose attending physician and directly advising claimant not to consult an attorney.

419.    December 11, 1995, named SCF Defendant Ellen Coughlin (Coughlin) mails letter to Mission Hospital in California, alleging a need for an itemized bill for 11/29/95 payment request. Defendants fraudulently and deliberately have failed and continue to fail to pay this itemized bill as far back as December 94.

420.    December 18, 1995, Brand mails letter regarding Kates IME to Roundtree and copies ALJ Wilson. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

a.  Kates is PSLP and/or ArenaSports employee and/or agent;

b.  Kates previously examined Roundtree at FootHealth on 7/7/93;

c.  Kates conflict of interest with Roundtree and/or PSLP and/or ArenaSports;

---

[52] As of 2013, Defendants have taken the position that Roundtree's sesamoidectomy was pre-existing injury and injured prior to his arrival to the Rattlers.

d. Roundtree's percentage of disability based on Kates fraudulent IME;

e. Roundtree's loss of earning capacity while compensating his injury as scheduled claim that will not permit return to prior employment.

421.    December 21, 1995, Coughlin mails Notice of Claim Status to Roundtree and copies APC-Arizona Physicians Center[53] and Cachia. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

a. Kates is PSLP and/or ArenaSports employee and/or agent;

b. Kates previously examined Roundtree with Copoloff at his FootHealth offices on 7/7/93;

c. Kates conflict of interest with Roundtree and/or PSLP and/or ArenaSports;

d. Roundtree's percentage of disability is based on Kates fraudulent IME;

e. Roundtree's being discharged based on Kates fraudulent IME;

f. Benefits from June 1, 1995 to December 13, 1995;[54]

g. Misrepresents that SCF provided amended Benefit compensation to Roundtree.

---

[53]  Roundtree cannot figure out the connection of his case to Arizona Physicians Center or why Defendants would copy them on this notice.

[54] Defendants fraudulently and deliberately misrepresent June 1, 1995 to December 13, 1995, Benefit amount as $7,339.47 and as paid. Misrepresent date of check as 5/17/95. The true and accurate Benefit amount should equal about 195 days x 46.03 = $8,975.85. Roundtree contends Defendants never paid him the $7,339.47.

Roundtree contends ALJ Gallaher May 1996 Decision, Order SCF to pay Roundtree benefits from 3/17/95 to 12/13/95, not 6/1/95 to 12/13/95. Even if ALJ Gallaher made a mistake, Defendants did not appeal the dates because Defendants had no intention of paying Roundtree any Benefits as Ordered.

422.  December 22, 1995, Coughlin mails Notice of Supportive Medical Maintenance Benefits to Roundtree and copies Copoloff and ICA. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

    a.  Kates is PSLP and/or ArenaSports employee and/or agent;

    b.  Kates previously examined Roundtree at FootHealth offices on 7/7/93;

    c.  Kates conflict of interest with Roundtree and PSLP and/or ArenaSports;

    d.  Roundtree's percentage of disability based on Kates fraudulent IME;

423.  December 28, 1995, named SCF Defendant Sue Sullivan (Sullivan) mails Notice of Permanent Disability Benefits to Roundtree alleging, Percentage and type of disability 5% functional loss, left foot. $3,150.00 check enclosed. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose

    a.  Kates is PSLP and/or ArenaSports employee and/or agent;

    b.  Kates previously examined Roundtree on 7/7/93;

    c.  Kates conflict of interest with Roundtree and PSLP and/or ArenaSports;

    d.  Roundtree's percentage of disability based on Kates fraudulent IME;

424.  December 29, 1995, Cachia faxes (8-page) Evaluation for determination of impairment at 19% disability for Roundtree's left foot to SCF offices at 4:42pm.

425.  January 4, 1996, ALJ Wilson, conducts hearing, taking testimony of Roundtree regarding Bad Faith and his 6/18/93 injury. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

a.  (ALJ Wilson) conflict of interest during pre-conference hearings and/or 1/4/96 Hearing denying Roundtree right to fair and impartial hearing;

b.  recusing himself (ALJ Wilson) to deny Roundtree right to due process;

c.  (ALJ Wilson) himself as impartial hearing officer to deny Roundtree's right to due process;

d.  Denies Roundtree right to be heard regarding his Bad faith claim;

e.  Denies Roundtree right to be heard regarding actual symptoms of injury and accurate factual medical history of his 6/18/93 injury

f.  Fails to ask Roundtree any specific and/or detailed questions regarding his 6/18/93 injury;

g.  Fails to allow Roundtree to provide specific details regarding his 6/18/93 injury;

h.  bad faith claim regarding SCFs denial of Roundtree's choice of out of state treating physician at pg. 9 ¶¶ 3-14;

i.  Denies Roundtree the opportunity to file Cachia medical report as evidence as he did for Defendants;

j.  Denies Roundtree's opportunity to file Bad Faith claims as evidence;

k.  calling Brown as witness to be cross-examined on bad faith at pg. 11 ¶¶ 4-6;

l.  taking bad faith claim under advisement;

m. Badgered and confused Roundtree;

n.  Threatened Roundtree at pg. 6-7 ¶¶ 25-8;

o.  ALJ Wilson is testifying for Defendants;

p.  Roundtree as stationary or SCF would not have given you the percentage of disability;

q.  mocks Roundtree at pg. 7 ¶¶ 20-23;

r.  bringing in Brown to be cross-examined on Bad Faith at pg. 15 ¶¶ 7-10;

s.  (Brand) first time hearing about bad faith complaint on 1/4/96;

t.  (Brand) the pre-conference hearings between ALJ Wilson, Brand and Roundtree discussing the very same bad faith complained of;

u.  (Brand) knowledge of bad faith claim but accuses Roundtree that ICA ombudsman told Roundtree to file bad faith claim;

v.  Cachia report in file as of 1/4/96;

w.  (Brand) knowledge of Cachia report as late December;

x.  (Brand) knowledge of Cachia examination until 1/4/96;

y.  (ALJ Wilson) taking testimony of Kates at next hearing;

z.  Denies Cachia 12/28/95 medical report as evidence pg. 31 ¶¶ 10-11;

aa. Conspired to deflect Roundtree's bad faith claims.

426.    January 4, 1996, Defendants illegal hearing behavior causes Roundtree to become confused and overwhelmed stating "...I'm falling apart..." at pg. 21-22 ¶¶ 15-7.

427.    January 4, 1996 ALJ Wilson mails conflict of interest letter to Roundtree and Brand. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

   a.  (ALJ Wilson) conflict of interest before the 1/4/96 Hearing and/or pre-conference hearings as former SCF employee and Brand co-worker;

   b.  Conspired to defraud Roundtree of Benefits and his Rights;

c. Act with affirmative conduct by fraudulent means to cover their conspiracy to defraud Roundtree of Benefits and Rights.

428. January 4, 1996, named ICA Defendant Chief ALJ Eileen S. Willett (Chief ALJ Willett) authorizes ALJ Wilson's conflict of interest transfer of Roundtree's case to named ICA Defendant ALJ Walter W. Gallaher (ALJ Gallaher). Defendants fraudulent and deliberate act with affirmative conduct by fraudulent means to cover their conspiracy to defraud Roundtree of his Benefits and Rights;

429. January 8, 1996, named ICA Defendant Karen Hamilton-Ellerman mails letter to SCF, regarding Roundtree's 12/12/95 bad faith complaint. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

a. Conspired to conceal Roundtree's 12/12/95 bad faith complaint until after 1/4/96 Hearing;

b. Conspired to defraud Roundtree of his Benefits and Rights;

c. Act with affirmative conduct to cover their conspiracy to defraud Roundtree of his Benefits and Rights;

d. Conspired to deflect Roundtree bad faith claims.

430. February 5, 1996, named SCF Defendant Marilyn Waite (Waite).[55] Mails ICA, Roundtree and ArenaSports, SCFs' answers to Roundtree's bad faith claims. Defendants fraudulently and deliberately:

a. Conspire to fail to answer Roundtree's Bad faith claim filed 12/12/95 until 2/5/96, for a total of 54 days;

---

[55] Waite has a duty to disclose.

b.  Misrepresent the 11/8/94 itemized invoice;

c.  Misrepresent McDermott as Roundtree's treating Physician;

d.  Misrepresent payment of Cachia's fee on 9/7/93;

e.  Misrepresent Request to Leave State;

f.  Misrepresent Change of Doctors;

g.  Misrepresent referral to Johnson;

h.  Misrepresent Post-operative therapy of McDermott and Johnson;

i.  Misrepresent Roundtree living in California then leaving mainland;

j.  Misrepresent physical therapy in USVI;

k.  Misrepresent 34 physical therapy treatments;

l.  Misrepresent January 17, 1995, letter to Medical provider in Pasadena;

m. Misrepresent second notice to medical provider in USVI on 3/15/95;

n.  Misrepresent 5/95 and 12/95 stationary status, permanent disability and supportive care status based on IMEs performed by Kates, a PSLP and/or ArenaSports employee and/or agent;

o.  Failed to pay compensation benefits from 6/1/95 to 12/13/95;

p.  Failed to pay compensation benefits as Ordered from 3/17/95 to 12/13/95.

431.  February 12, 1996, Roundtree performs his due diligence and responds to Waites' fraudulent and deliberate letter to deflect Roundtree's Bad Faith claims. However Defendants expertise in disinformation and constructed confusion techniques makes it

difficult for Roundtree to detect Defendants complex fraud scheme and his injuries in 1996.

432.    March 7, 1996, ALJ Gallaher conducts the second hearing and takes testimony from Dr. Cachia. Defendants fraudulently and deliberately:

a.   Deny Roundtree right to due process at pg. 15 ¶¶14-20;

b.   Conspired to deny Roundtree right to due process at pg. 15 ¶¶14-20;

c.   Act with affirmative conduct to cover their conspiracy to defraud Roundtree right to due process at pg. 15 ¶¶14-20;

d.   Deny Roundtree right to due process at pg. 33-34 ¶¶ 20-3;

e.   Conspired to deny Roundtree right to due process at pg. 33-34 ¶¶ 20-3;

f.   Act with affirmative conduct to conceal their conspiracy to defraud Roundtree right to due process at pg. 33-34 ¶¶ 20-3;

g.   Act with affirmative conduct to conceal their conspiracy to defraud Roundtree right to due process and fair and impartial hearing by switching ALJs after the first hearing;

433.    March 12, 1996, ALJ Gallaher mails Roundtree and Brand letter regarding Kates 3/21/96 appearance. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

a.   (ALJ Gallaher) has actual knowledge that Kates is a PSLP and/or ArenaSports employee and/or agent;

b.   Kates is PSLP and/or ArenaSports employee and/or agent;

c.   Kates previously examined Roundtree on 7/7/93;

d. Kates conflict of interest with Roundtree and PSLP and/or ArenaSports;

e. Conspire to deny Roundtree right to due process knowing Kates is an PSLP employee and/or agent;

f. Conspire to deny Roundtree Benefits knowing Kates is an PSLP employee and/or agent;

g. Conspire to deny Roundtree fair and impartial hearing knowing Kates is an PSLP employee and/or agent;

h. Conspire to embezzle Roundtree's Benefits;

i. Act with affirmative conduct to conceal their conspiracy to defraud Roundtree right to due process knowing Kates is an PSLP employee and/or agent and failing to disclose it;

j. Act with affirmative conduct to conceal their conspiracy to defraud Roundtree of Benefits knowing Kates is an PSLP employee and/or agent;

k. Act with affirmative conduct to conceal their conspiracy to defraud Roundtree right to fair and impartial hearing knowing Kates is an PSLP employee and/or agent;

l. Act with affirmative conduct to conceal their conspiracy to embezzle Funds knowing Kates is an PSLP employee and/or agent;

434.    March 21, 1996, ALJ Gallaher conducts fraudulent hearing taking testimony from Kates. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

a. (ALJ Gallaher) knows Kates is a PSLP and/or ArenaSports employee and/or agent;

b.  (ALJ Gallaher) acknowledges Kates as expert witness not Roundtree;

c.  Kates is PSLP and/or ArenaSports employee and/or agent;

d.  Kates previously examined Roundtree on 7/7/93;

e.  Kates conflict of interest with Roundtree and PSLP and/or ArenaSports;

f.  Conspire to defraud Roundtree of right to due process, fair and impartial hearing, his Benefits and embezzle funds knowing Kates is PSLP and/or ArenaSports employee and/or agent;

g.  (ALJ Gallaher) Kates is PSLP and/or ArenaSports employee and/or agent at pg. 3-4 ¶¶ 20-2;

h.  (ALJ Gallaher) Kates as expert witness knowing he is an PSLP and/or ArenaSports employee and/or agent at pg. 3-4 ¶¶ 20-2;

i.  (ALJ Gallaher) conspires with SCF to deny Roundtree right to due process by recognizing Kates as an expert witness at pg. 3-4 ¶¶ 20-2 without proper examination;

j.  (ALJ Gallaher) Acts with affirmative conduct to conceal conspiracy to defraud Roundtree knowing Kates is an employee and/or agent of the Suns by recognizing Kates as an expert witness at pg. 3-4 ¶¶ 20-2 without proper examination that would surely expose such information;

k.  (ALJ Gallaher) Kates conflict of interest as Independent Medical Examiner to have examined Roundtree prior to IME at pg. 4 ¶¶ 9-16;

l.  (Kates) he is employee and/or agent of SUNS at pg. 4 ¶¶ 9-16;

m. (Kates) failing in his duty to sign report of his 7/7/93 examination of Roundtree at FootHealth with Copoloff at pg. 4 ¶¶ 9-16;

n. (Kates) accurate factual medical foundation in an attempt to limit Roundtree's 6/18/93 injury to his second digit at pg. 4-5 ¶¶ 21-2;

o. (Kates) actual present injury symptoms of Roundtree's first digit including but not limited to crepitus, capsular tenderness, degenerative spurring and plantar sesamoid pain specified in medical reports taken 6/21/93 and 6/28/93 at pg. 4-5 ¶¶ 21-2;

p. Sellers assessment of left MTP joint sprain with symptomatic bunion taken in first reports (6/21/93 and 6/28/93) after injury at pg. 4-5 ¶¶ 21-2;

q. (ALJ Gallaher) Conspires to conceal and/or omit Kates conflict of interest as an Independent Medical Examiner by clarifying examination date of Roundtree prior to IME date in May 1995 at pg. 5 ¶¶ 6-14;

r. actual first occasion examination for purposes of a diagnosis and determination of whether there was a permanent condition of Roundtree as May 31, 1995 at pg. 5 ¶¶ 6-14;

s. Roundtree sought care conservative care and treatment by Johnson at pg. 5-6 ¶¶ 15-4;

t. Johnson surgically reduced second toe at pg. 5-6 ¶¶ 15-4;

u. 5/31/95 IME as just a few months or thereabouts post operatively to Johnson 11/21/93 surgery at pg. 6-7 ¶¶ 19-4;

v. previous 7/7/93 examination by claiming he had just be recently referred to Roundtree at pg. 7 ¶¶ 16-21;

w. Roundtree underwent additional surgeries between 5/95 IME and 12/95 IMEs at pg. 8-9 ¶¶ 14-6;

x. actual present injury symptoms to Roundtree's first digit including but not limited to crepitus, capsular tenderness, degenerative spurring and plantar sesamoid pain specified in 6/21/93 and 6/28/93 medical reports at pg. 9 ¶¶ 13-25;

y. accurate factual medical foundation in an attempt to limit Roundtree's 6/18/93 injury to his second digit at pg. 9 ¶¶ 13-25;

z. Conspires to defraud Roundtree of Benefits at pg. 9 ¶¶ 13-25;

aa. Kates examined Roundtree within a day or two of 6/18/93 injury at pg. 10 ¶¶ 12-17;

bb. he examined Roundtree on 7/7/93 but did not sign report at pg. 10-11 ¶¶ 18-10;

cc. x-ray report fraudulently attached to Copoloff 7/7/93 report to which Kates was a party but did not sign at pg. 10-11 ¶¶ 18-10;

dd. accurate factual medical foundation consistent with degenerative arthritic changes in first and second MPT joints at 10-11 ¶¶ 18-10;

ee. degenerative arthritic changes to Roundtree's first and second MPT joints by comparing 7/7/93 x-rays to Cachia's 12/95 x-rays at pg. 10-11 ¶¶ 18-10;

ff. Act of affirmative conduct to defraud Roundtree of Benefits at pg. 10-11 ¶¶ 18-10;

gg. actual present injury symptoms to Roundtree's first digit including but not limited to crepitus, capsular tenderness, degenerative spurring and plantar sesamoid pain specified in 6/21/93 and 6/28/93 medical reports at pg. 11-12 ¶¶ 18-3;

hh. accurate factual medical foundation to limit 6/18/93 injury to second toe at pg. 11-12 ¶¶ 18-3;

ii. it is rare and in fact not sure I can remember the lesser impacting the greater at pg. 12 ¶¶ 4-15;

jj. actual present injury symptoms of Roundtree's first digit including but not limited to crepitus, capsular tenderness, degenerative spurring and plantar sesamoid pain specified in 6/21/93 and 6/28/93 medical reports at pg. 12-13 ¶¶ 16-25;

kk. actual present injury symptoms of Roundtree's first digit including but not limited to crepitus, capsular tenderness, degenerative spurring and plantar sesamoid pain specified in 6/21/93 and 6/28/93 medical reports to say second was specific direct injury which claimant remembers having happened at pg. 12-13 ¶¶ 16-25

ll. actual present injury symptoms of Roundtree's first digit including but not limited to crepitus, capsular tenderness, degenerative spurring and plantar sesamoid pain specified in 6/21/93 and 6/28/93 medical reports at pg. 13 ¶¶ 5-9;

mm.   actual present injury symptoms of Roundtree's first digit including but not limited to crepitus, capsular tenderness, degenerative spurring and plantar sesamoid pain specified in medical reports taken on 6/21/93 and 6/28/93 and placing second toe in proper alignment due to hallux valgus deformity for revision of great toe and necessary because of the 6/18/93 injury pg. 13 at 5-9.

nn. residual lack of repair existed was simply because it was but a few months post-surgically and that the rest would resolve at pg. 18 ¶¶ 2-5;

oo. actual present injury symptoms of Roundtree's first digit including but not limited to crepitus, capsular tenderness, degenerative spurring and plantar sesamoid pain specified in 6/21/93 and 6/28/93 medical reports

pp. 6/18/93 to limit injury second toe injury to be able to return to professional football;

435.    Defendants Brand, Kates and ALJ Gallaher conspired to commit perjury.

436.    March 29, 1996, ALJ Gallaher issues Decision Upon Hearing and Findings and Award knowingly based on the fraudulent testimony of Kates in favor of SCF, PSLP and/or ArenaSports. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

a.  (ALJ Gallaher) knows Kates is a PSLP and/or ArenaSports employee and/or agent;

b.  Kates is PSLP and/or ArenaSports employee and/or agent;

c.  Kates conflict of interest with Roundtree and PSLP and/or ArenaSports;

d.  Roundtree testified in regards to describing his injury, his physical complaints subsequent medical treatment and current condition at pg. 2 ¶¶ 3;

e.  alleged Roundtree withdraw Bad faith claims on 2/22/96; [56]

f.  Conspire to violate Roundtree's right to due process;

g.  Conspire to violate Roundtree's right to a fair and impartial hearing;

h.  Conspire to defraud Roundtree of Benefits and his Rights;

i.  Act with affirmative conduct to conceal their fraud through ICA hearings.

437.    April 8, 1996, Roundtree files Request for Review. [57]

---

[56] Roundtree allegedly filed 2/22/96 Bad Faith withdraw is concealed and/or omitted from SCF file #93-46568 and ICA hearing file.

438.   April 12, 1996, Brand files Response to Request for review. Defendants fraudulently and deliberately misrepresent Roundtree never had any subsequent active medical treatment after May 1995.

439.   April 30, 1996, ALJ Gallaher mails Roundtree and SCF his Decision upon Review knowingly based upon the fraudulent testimony of Kates affirming the March 29, 1996 Decision.

440.   May 17, 1996, SCF prints Roundtree's compensation history. Defendants fraudulently and deliberately misrepresent:

a.   all benefit compensation payments from 6/19/93 to 5/17/96;

b.   Roundtree 10/20/93 earnings;

c.   Roundtree 6/1/95 earnings;

d.   Fails to issue Roundtree compensation check from 12/30/94 to 2/27/95;

e.   Fails to issue Roundtree compensation check from 5/17/95 to 12/12/95;

f.   Fails to issue Roundtree compensation check from 3/17/95 to 12/12/95 as awarded;

g.   Embezzles Roundtree's omitted and/or underpaid Benefits with SCF using them as operating costs and/or returning them as dividends to PSLP and/or ArenaSports.

441.   August 1996, Roundtree on massive amounts of daily pain meds auditions for movie Jerry Maguire as a football player but is later released during filming.

---

[57] Roundtree 4/8/96 Request for review is concealed and/or omitted from SCF file #93-46568 and ICA hearing file.

442.    Roundtree petitions named ICA Defendant Special Fund for vocational rehabilitation bonus. Roundtree is subsequently provided schooling to earn a master's degree in Education at Arizona State University (ASU).

443.    Shortly thereafter, Roundtree withdraws from ASU and moves to New Hampshire where his ex-girl-friend and 1.5 year old daughter live.

444.    Roundtree requests Special Fund pay for a master's degree in Massachusetts but deny his request.

445.    Defendants allow Roundtree to get a certificate and on September 30, 1998, ICA Special Fund awards Roundtree an amount not to exceed $686.85 to provide training for certification to become a Physical Instructor for 3 classes at Fitness Resource Associates and American Council on Exercise in Dedham, Massachusetts. Defendants fraudulently and deliberately denied Roundtree opportunity to re-use his vocational rehabilitation to earn a Master's degree out of the state of Arizona.

446.    Sometime in late 1998, Roundtree spoke with a former teammate from NAU, Reyna Stewart (Stewart) who was playing in the NFL. Roundtree had difficulty accepting his injury, the demise of his professional career and his position in life, cried out I want to play. Stewart quickly got off the phone and has never spoken to Roundtree again.

447.    Shortly thereafter, Roundtree depressed walked away from his life, job and residence in Boston and moved to Las Vegas to attempt to train for the NFL.

448.    Roundtree thought he could overcome his foot injury and return to professional football at 28 years of age; however the requirement of ever increasing amounts of pain meds he found the road too hard. Roundtree became severely depressed rejecting friends and family.

449.    Roundtree moved from Las Vegas, Nevada to Phoenix, Arizona back to Boston, Massachusetts in a span of about 6 months.

450.    Roundtree suffered a break from society and chose to live his life on the street over the next four years. Roundtree has ever increasing desire for pain meds.

451.    In 2002, Roundtree found gainful employment through a friend who believed in Roundtree.

452.    June 2004, Roundtree moves to Montreal, Quebec, Canada and subsequently returns to Phoenix, Arizona sometime in early 2005. In late spring 2006, Roundtree returns to Montreal.

453.    January 12, 2007, ICA mails Roundtree a Change of Doctors award to Montreal, Quebec.

454.    February 13, 2007, Dr. Andre Benoit (Benoit) examines Roundtree, casts him for orthotics and issues a report.

455.    April 25, 2007, Benoit sends billing statement to SCF for $525.00 and SCF fraudulently and deliberately refuses payment.

456.    June 25, 2007, Benoit sends additional billing statement to SCF and again SCF fraudulently and deliberately refuses payment.

457.    October 8, 2007, named SCF Defendant C. Lukaszkiewicz (Lukaszkiewicz) mails letter to Benoit. Defendants fraudulently and deliberately misrepresent:

   a.  Roundtree's supportive care expired February 2007, but not closed due to continued use;

   b.  Fail to pay supportive care medical payment to Benoit for services rendered;

   c.  Deny Roundtree supportive care Benefits and

   d.  Require Benoit to execute a questionnaire and terminate services based on those answers;

458.    Shortly thereafter Benoit refuses Roundtree as a patient because of the fraudulent and deliberate behavior of Lukaszkiewicz.

459.    Roundtree recognizes his addiction to pain meds and decides to return to Arizona.

460.    On or about March 6, 2008, Roundtree becomes patient of Defendant Richard P. Jacoby, DPM (Jacoby). Defendants fraudulently and deliberately:

   a.  Fails in his duty to disclose he is an SCF agent;

   b.  Fails in his duty to provide any medical reports of Roundtree's injuries.

461.    February 9, 2011, ICA mails Roundtree letter stating supportive care was terminated on 12/7/10 due to non-use.

462.    February 15, 2011, Roundtree files for 1061J hearing at ICA.

463.    February 23, 2011, Named SCF Defendant Jerry Jimenez (Jimenez) mails letter to ICA and Roundtree authorizing supportive care award.

464.    March 14, 2011, Jimenez faxes note to Dr. Cachia stating Roundtree is authorized to see Cachia however SCF states prior authorization needs to be obtained for all medical treatment.

465.    March 14, 2011, Dr. Cachia examines Roundtree and recommends surgery on his first and second digits, left foot, with possible implant arthroplasty.

466.    April 13. 2011, Defendants fraudulently and deliberately delay authorization for orthotics and/or surgical intervention as recommended by Dr. Cachia.

467.    May 27, 2011, Roundtree suffering from depression and homelessness petitions ICA to reopen his claim.

468.    June 21, 2011, named SCF Defendant Janine Mills (Mills) mails fraudulent and deliberate denial of Roundtree's petition to reopen based on Defendants ongoing fraud scheme.

469.    June 29, 2011, Roundtree files request for hearing for Defendants 6/21/93 denial of petition to reopen.

470.    July 11, 2011, Mills mails named SCF Defendant Dr. William J. Leonetti, D.P.M. (Leonetti) confirmation of IME scheduled for July 14, 2011. Defendants fraudulently and deliberately:

   a.  Misrepresent Cachia's surgical options;

   b.  Conspire to defraud Roundtree of Benefits and his Rights;

   c.  Conspire to commit perjury.

471.    July 14, 2011, Leonetti conducts IME on Roundtree. Defendants fraudulently and

deliberately misrepresent, conceal, omit and/or fail to disclose:

a.  chronological order of Review of Medical Records to fraudulently conceal the nature

and extent of their criminal activities by fraudulent means

b.  Cachia's surgical options;

c.  how Roundtree's 6/18/93 injury occurred;

d.  6/18/93 injury occurring only to second toe;

e.  actual present symptoms of injury to Roundtree's first digit including but not limited

to crepitus, capsular tenderness, degenerative spurring, plantar sesamoid pain, pain at

the plantar aspect of the first and second digits as established by 6/21/93 and 6/28/93

reports;

f.  failed to review medical reports of all PSLP and/or ArenaSports employee doctors

and/or referrals: Sellers, 6/21/93, 6/28/93, 7/6/93 and 8/16/93; Kates and Copoloff,

7/7/93; Maddox, 8/3/93 and 8/16/93; McDermott, 8/19/93 and 4/6/93; Emerson,

8/16/93; and Johnson and Kile 9/21/93 and 11/21/93; [58]

g.  Johnson and Kile did not provide post-operative physical and/or functional therapy

for Roundtree;

h.  Presents 1989 sesamoidectomy as pre-existing injury as red herring;[59]

---

[58] Kates and Copoloff examined Roundtree however Kates did not sign the report. Kates
and Copoloff also failed to attach the x-ray report to the medical report. SCF deliberately
and fraudulently excludes the 7/7/93 medical report from SCF file #93-46568.

[59] In general, an industrial accident need only partially cause an injury. *E.g., Allen v.
Industrial Commission,* 124 Ariz. 173, 602 P.2d 841 (App. 1979). The employer takes the
employee as he is, and if the industrial accident combines with a pre-existing condition to

i. Johnson's diagnosis;

j. chronological order of Cachia 9/7/93 opinion;

k. Cachia 9/7/93 opinion is at the direction of Johnson;

l. postoperative course included a multitude of palliative measures, including physical therapy, custom made orthotics, anti-inflammatories, alteration of shoe gear and treatment by multiple physicians;

m. chronological order of Freed opinion;

n. Freed record as a second opinion to Johnson;

o. accurate medical factual foundation regarding Freed correction of hallux valgus;

p. Freed as recommending continued conservative care;

q. Kates second IME report dated 12/12/95;

r. Cachia 3/14/11 surgical options;

s. Fail to review numerous doctors reports from 1998 to 2010, specifically Dr. Benoit recommending surgery as Dr. Cachia recommended;

---

cause a further injurious result, this condition is compensable. *E.g., Nelson v. Industrial Commission,* 24 Ariz. App. 94, 536 P.2d 215 (1975). Furthermore, potential future progression is no defence to the compensability of actual present symptoms. *See, e.g., Schreven v. Industrial Comm'n,* 96 Ariz. 143, 393 P.2d 150 (1964). Industrial Indemnity concedes that an employer must take an employee "as is" and that the relative importance of contributing causes is immaterial. *See, e.g., Pearce Development v. Industrial Comm'n,* 147 Ariz. 598, 602-03, 712 P.2d 445, 449-50 (App. 1985), *approved in part* 147 Ariz. 582, 712 P.2d 429 (1985). Arizona law recognizes that subsequent workplace injuries can aggravate pre-existing injuries, and coverage for that aggravated injury properly lies with the workers compensation insurer. See Indus. Indemnity Co. v. Indus. Comm'n of Ariz., 152 Ariz. 195, 199, 731 P.2d 90, 94 (Ct. App. 1986). *Harbor Insurance Co. v. Industrial Commission,* 25 Ariz. App. 610, 545 P.2d 458 (1976).

t.  Roundtree complaints of associated secondary injuries of ankle, knee, low back, neck and shoulders.

u.  Roundtree Chief Complaint #6 as pointing to sub 2nd MPT joint area;

v.  Roundtree's weight as 250lbs;

w.  Roundtree's answer to excellent muscle tone;

x.  Roundtree's shoes were removed in Leonetti presence;

y.  Leonetti took Roundtree's shoes from underneath chair and removed orthotic inserts to inspect them without asking;

z.  2nd metatarsal as unusually long regarding Radiographs;

aa. Assessment #2 hallux valgus bunion deformity and cock-up deformity as pre-existing;

bb. Assessment #4 hallux malleolus cock-up 1st digit related to pre-existing factors;

cc. Discussion #1 development a hallux malleolus as a result of 1989 sesamoidectomy;

dd. length of 2nd metatarsal as unusual long;

ee. Discussion #2 response regarding 1st MTP joint bunion deformity;

ff. Discussion #2 response regarding any surgical procedure that addresses 1st digit are not related to 6/18/93 injury;

gg. Discussion #2 that Roundtree does not have hammertoe deformity;

hh. Discussion #2 length of 2nd metatarsal as unusually long;

ii. Associated secondary problems described as 716.17 Trauma Arthropathy in Ankle; 729.5 Pain in Limb; and 726.90 Enthesopathy, Site NOS from IME;

472.    July 14, 2011, Roundtree was directed by Juan "Doe" x-ray technician to take radiograph of left foot standing on the edge of a wooden 2 x 4 with bent knee similar to a calf stretching exercise. Roundtree attempted to accommodate the techs request but declined, due to serious pain and safety concerns. Defendants fraudulently and deliberately attempt to injury Roundtree. Plaintiff now understands Defendants Leonetti and Juan battered Roundtree in attempt to fraudulently discount his injury.

473.    July 19, 2011, at 2:59:27 MST, Leonetti's 7/14/11 IME is faxed to named SCF Defendant Debbie Walker (Walker).[60]

474.    July 19, 2011, Leonetti faxes short form IME results to SCF at 3:42:55pm. Defendants fraudulently and deliberately conceal, omit and/or fail to disclose Roundtree's injuries listed below from Leonetti 7/14/11 IME:

    a.  716.17 Trauma Arthropathy Ankle;

    b.  729.5 Pain in Limb;

    c.  735.0 Hallux Valgus; and

    d.  726.90 Enthesopathy, Site NOS.

475.    July 27, 2011, Hensley mails copy of Leonetti IME to named ICA Defendant ALJ Joseph L. Moore (ALJ Moore) and Roundtree. Defendants fraudulently and deliberately take eight (8) days to provide Roundtree with a copy of Leonetti IME

---

[60] Roundtree contends Leonetti IME is faxed to Walker to be reviewed internally at SCF and the facts furthered altered to fit Defendants fraud scheme. Walker did not request Leonetti IME and she was not related to Roundtree's case prior to Leonetti IME submission. The delay in providing Roundtree with a copy of said IME on July 27th was the time it took Defendants to alter the IME (Roundtree had an Arizona address at this time).

report[61] as well as conspire with ALJ Moore to cancel hearing by falsely stating because the notice denying the petition to reopen the claim served as the basis for the hearing request, the hearing can be cancelled.[62]

476.    July 28, 2011, Roundtree request true and accurate copy of medical records used by Leonetti for 7/14/11 IME in chronological order.

477.    Shortly thereafter, Defendants authorize Roundtree's 5/31/11 petition to reopen but fraudulently and deliberately deny Roundtree medical benefits that were attached to said reopening.[63]

478.    On or about August 2, 2011, Hensley mails Roundtree copy of medical records used by Leonetti during 7/14/11 IME. Defendants fraudulently and deliberately disorder records.

479.    August 5, 2011, ALJ Moore cancels Roundtree hearing stating the carrier will issue a Notice of Claim Status which resolves the issues which were to be considered at the hearing. Defendants fraudulently and deliberately conspire to defraud Roundtree of benefits and conspire to cancel said hearing in an attempt to let the statutes run on Roundtree's potential state and federal claims as he was beginning to investigate Defendants on-going fraud scheme.

---

[61] Pursuant to workers compensation rules and/or laws IME reports are to be immediately provided to opposing counsel. However Defendants did not immediately release a copy of the IME to Roundtree, instead Leonetti faxed the IME to unrelated SCF personnel (Walker) and then 8 days later released a copy of the IME.

[62] Roundtree contends Defendants conspired to cancel said hearing in an attempt to let the statutes run on Roundtree's potential state and federal claims as he was beginning to investigate Defendants on-going fraud scheme.

[63] Dr. Cachia's recommendation for surgical intervention of Roundtree's first and second digits.

480.   On or about August 18, 2011 Roundtree contacts ICA ombudsman office and leaves voicemail regarding procedure to follow when insurer will not pay for medical benefits after reopened claim has been approved for benefits.[64]

481.   Shortly thereafter, unknown ombudsman personnel inform Roundtree to file a request for review.

482.   August 22, 2011, Roundtree files a request for review at ICA, as directed by ICA ombudsman, against SCF for failure to pay for medical benefits as recommended by his treating physician.

483.   August 25, 2011, Hensley sends ALJ Moore letter titled Response to Applicants Request for Review dated 8/22/11. Defendants fraudulently and deliberately conceal, omit and/or fail to disclose Roundtree's request for review within SCF file #93-46568.

484.   September 14, 2011, Roundtree authorizes named Defendant SchiffmanLaw lawyers Alan M. Schiffman (Schiffman) and/or Javier A. Puig (Puig) to inspect his SCF file #93-46568 however Schiffman and/or Puig declines to represent him.[65]

485.   September 19, 2011, Cachia examines Roundtree and places him on **temporary totally disabled** (TTD) from work pending surgery as determined on 3/14/11.[66]

---

[64] The 2011, ICA Ombudsman Office is managed by former SCF Assistant Chief Counsel and named ICA Defendant Melinda K. Poppe, Claims Manager. Roundtree contends why the former SCF Assistant Chief Counsel would become a Claims Manager at ICA. As of information now available the ICA Claims Manager manages the claims department in charge of Bad Faith Claims and the Ombudsman office where claimants can get assistance with their claims. Something just doesn't smell right.

[65] Roundtree contends Schiffman and/or Puig discovered Defendants fraud within SCF file #93-46568, had a duty to disclose and failed to do so. **PLEASE NOTE:** Puig is a former SCF in-house attorney.

486.   Upon receipt of Cachia's report SCF fraudulently and deliberately fail to provide TTD Benefits to Roundtree.

487.   September 29, 2011, Cachia requests authorization to refer Roundtree to orthopedic surgeon for knee and low back problems. Defendants fraudulently and deliberately ignore Roundtree's treating physician requests for reasonable medical benefits.

488.   On or about September 25, 2011, Roundtree authorizes named TaylorLaw Defendant Dennis R. Kurth (Kurth) to inspect SCF file #93-46568 however Kurth declines to represent him.[67]

489.   Roundtree contacts Defendant Fendon law firm (FendonLaw) and named FendonLaw Defendants Matt C. Fendon (M. Fendon) and Don A. Fendon (D. Fendon) and authorizes them to inspect SCF file #93-46568.

490.   October 17, 2011, Roundtree requests a 1061J hearing at ICA against SCF. Defendants fail to provide a copy of Roundtree's 1061J hearing request in SCF file #93-46568.

491.   October 27, 2011, M. Fendon directs Roundtree that he needs to be evaluated by Defendant Stanley C. Graves, MD (Graves) for supporting medical evidence at a cost

---

[66] Roundtree resent Cachia's assessment of temporary total disability on 11/21/11 and again on 12/1/11, however Defendants fraudulently and deliberately did not respond and have failed to pay benefits as of the date of this document.

[67] Roundtree contends Kurth discovered Defendants fraud within SCF file #93-46568, had a duty to disclose and failed to do so.

of $500.00.[68] Upon examining Roundtree with his complete medical file, Graves fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

a.  Roundtree 6/18/93 injury as to second MTP joint only;

b.  multiple diagnoses of employer and/or IME doctors regarding his 6/18/93 injury;

c.  Roundtree's pain was at the second toe joint;

d.  Roundtree currently has pain in both the first MTP and second MTP joints;

e.  flexible and rigid hammertoe development;

f.  pain killing injections;

g.  trauma arthopathy to Roundtree left ankle;

h.  actual present symptoms of injury to first digit including but not limited to crepitus, capsular tenderness, degenerative spurring, and plantar sesamoid pain as established in 6/21/93 and 6/28/93 reports;

i.  accurate factual medical foundation established in 6/21/93 and 6/28/93 reports;

j.  medical reports of Cachia 9/7/93 and Freed 2/18/94 who noted that first digit must be fixed to put second digit in proper alignment.

---

[68] Roundtree submitted Graves report to ICA at the direction of M. Fendon. Roundtree later discovered, Graves report misrepresents, conceals, omits and/or fails to disclose Roundtree's actual present symptoms of injury and an accurate factual medical foundation.

Roundtree now questions why M. Fendon would need additional medical evidence to support his claim when Roundtree's accurate factual medical foundation clearly supports his treating physician's surgical recommendations. Roundtree contends that after he contacted FendonLaw, Defendants planned and executed all the events involving FendonLaw, GravesMed and SCF.

492. November 5, 2011, M. Fendon files notice of representation of Roundtree. Defendants fraudulently and deliberately fail to disclose Defendant Don A. Fendon (D. Fendon) is a former SCF attorney.

493. On or about November 5th through 15th, Roundtree's contends Defendants M. Fendon, D. Fendon, Hensley and SCF fraudulently and deliberately conspired via email and/or telephone to take an illegal deposition of Roundtree.[69] Defendants fraudulently and deliberately failed in their duty to allow Roundtree to review and sign off on said deposition.

494. On or about November 15, 2011, M. Fendon forwards Roundtree his email exchange with Hensley claiming you did not tell me that your injury is res judicata because of Kates 1996 hearing testimony and Gallagher 1996 Decision and Award. Using attachments from Hensley, M. Fendon emails points out hand written notes from Hensley in the margin of the transcript of Kates 1996 testimony allegedly pointing out why Roundtree's injury is res judicata.

495. M. Fendon fraudulently and deliberately informs Roundtree to withdraw his position and accept that his 6/18/93 injury is limited to his second digit only and have surgery as directed by Leonetti.[70] When Roundtree refused M. Fendon immediately withdrew as the attorney on Record.

496. November 17, 2011, Roundtree examined by Cachia in Orange County.

---

[69] Roundtree's SCF file #93-46568 contains no notice or request for deposition.
[70] Defendants Hensley and M. Fendon are in possession of the emails in controversy and know the exact dates and contents thereof. Plaintiffs email account has been deleted.

497.  November 22, 2011, Mills sends letter to named ICA Defendant ALJ Harriet Turney (ALJ Turney) and copies Roundtree in response to Roundtree's 1061J hearing request. Mills fraudulently and deliberately misrepresents the fact that Roundtree did not allege that SCF has improperly denied him compensation or has failed to pay any medical bills.

498.  November 22, 2011, Hensley mails letter to named ICA Defendant Layna Taylor (ALJ Taylor) and attaches 1996 hearing testimony of Kates and ALJ Gallaher Decision Upon Hearing and Award. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

a.  that Kates is PSLP and/or ArenaSports employee and/or agent;

b.  that Kates previously examined Roundtree on 7/7/93 (but did not sign the report with Copoloff) prior to his 5/95 and 12/95 IMEs;

c.  that Roundtree 6/18/93 injury is limited to second digit;

d.  that the great toe was not related to the 6/18/93 injury;

e.  that issues of whether the great toe was related to the subject industrial injury was litigated in 1996 as referenced by transcript and decision;

f.  the issue was decided against applicant and a permanent impairment was awarded to the second toe only;

g.  Roundtree's request for continuance;

h.  Leonetti surgery recommendation is based on accurate factual medical foundation and/or actual symptoms of the 6/18/93 injury.

499. November 23, 2011, ALJ Taylor mails letter to Roundtree and Hensley regarding Roundtree's 1061J hearing request. Defendants fraudulently and deliberately:

    a. Deny Roundtree right to due process and fair and impartial trail by stating it appears from the file that this matter may involve a legal issue of <u>res judicata</u> and not a medical one;

    b. Abuse discretion and deny Roundtree right to due process by denying Roundtree an opportunity to second continuance stating applicant has been through the hearing process before representing himself and is therefore aware of the requirements and familiar with the process; he has had ample time to be preparing for this hearing in the event that he did not find counsel;

500. Defendants fraudulently and deliberately fail to provide a copy of Roundtree's requests for a continuance in SCF file #93-46568.

501. December 1, 2011, Roundtree cancels 12/12/11 1061(J) hearing.

502. December 1, 2011, Roundtree requests 1061(J) hearing for SCFs denial of medical benefits and non-payment of TTD benefits compensation benefits since 9/27/11.[71]

503. December 1, 2011, Mills emails Roundtree the three late 413 form(s) for compensation since 9/27/11. Roundtree contends Defendants deliberately delayed paying compensation benefits in an attempt to coerce Roundtree to give up his rights to medical benefits as recommended by Dr. Cachia. Defendants fraudulently and deliberately fail to pay due and owing TTD benefits since 9/19/11.

---

[71] Defendants deliberate failure to provide due and owing compensation benefits is bad faith and an abuse of process.

504.  December 6, 2011, Hensley mails letter to ALJ Taylor regarding Roundtree 12/1/11 1061(J) request. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

    a.  that adjuster (Mills) *resent* forms;

    b.  Mills did not provide 413 form(s) from 9/27/11 to 11/30/11;

    c.  non-payment of compensation benefits from 9/27/11 to 12/6/11;

    d.  delayed payment of benefits from 9/27/11 to 12/6/11;

    e.  fail to pay due and owing TTD benefits since 9/19/11;

    f.  Defendants conspire to fraudulently conceal bad faith.

505.  December 7, 2011, ALJ Taylor mails letter to Roundtree and Hensley, stating in light of Hensley's 12/6/11 letter and the fact that I will be out of town holding hearings from this afternoon through Friday, 12/9/11, I am going to cancel the hearing until we can determine the exact status of this matter.

506.  December 9, 2011, Mills mails letter to Chief ALJ Turney and Roundtree regarding 12/1/11 1061J request. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

a.  Mills did not provide any 413 form(s) from 9/27/11 until 12/1/11;

b.  Mills ignored all request for 413 forms prior to 12/1/11;

c.  non-payment of TPD benefits from 9/27/11 to 12/6/11;

d.  fail to pay due and owing TTD benefits since 9/19/11;

e.  that only reason Defendants paid delinquent TPD benefits is because Roundtree initiated 12/1/11 1061J hearing request;

f.  Defendants fraudulently conceal bad faith.

507.    December 14, 2011, Chief ALJ Turney mails letter to Roundtree and Hensley regarding 12/1/11 1061(J) request. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

a.  unclear what Roundtree is attempting to accomplish by his 1061J request;

b.  Roundtree withdrew his "request for review" filed 8/22/11 with a hearing scheduled for 12/12/11.

c.  ALJ Taylor issuance of Notice of Cancellation of hearing;

d.  that 1061J request is not a request for review;

e.  that 1061J request had two distinct issues (1) Medical benefits as recommended by Cachia; and (2) due and owing TPD and TTD benefits;

f.  Abuse the process and/or abuse of discretion (Chief ALJ Turney) of 1061J by not requiring SCF to respond to 12/1/11 1061(J) request until Roundtree has clarified what benefits are at issue and difference from what was pending before ALJ Taylor;

g.  Abuse of process and/or deny due process by requiring Roundtree to clarify his 1061(J) request that clearly stated the benefits at issue on its face;

h.  Temporary compensation benefits are being paid as of 12/1/11 as you file the necessary forms;

i.  SCF did not provide 413 form(s) from 9/27/11 to 11/30/11;

j.   Non-payment of TPD benefits from 9/27/11 to 12/6/11;

k.   Abuse workers compensation process to confuse and frustrate pro se Plaintiff to recall any/all Defendants bad faith to pay TTD benefits.

l.   Conspired with SCF to conceal SCF deliberate failure to pay TTD benefits since 9/19/11;

508.   December 15, 2011, Mills mails letter to Chief ALJ Turney and Roundtree regarding 12/1/11 1061(J) request. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose failure to pay due and owing TTD benefits since 9/19/11.

509.   December 20, 2012, Roundtree son, E.J.N is born.

510.   On or about December 22, 2011, Roundtree responds to Chief ALJ Turney's request but she denied Roundtree's request for a 12/1/11 1061J hearing.

511.   Defendants fraudulently and deliberately fail to provide a copy of Roundtree 1061(J) clarification as requested by Chief ALJ Turney in SCF file #93-46568.

512.   January 3, 2012, Roundtree via email exchange (10:50am) requests $25.00 increase in Benefits from Mills for injured workers with dependents for workers receiving TTD benefits as classified by Cachia 9/19/11 report. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

a.   Roundtree is TTD from work as of 9/19/11;

b.   Misrepresent Roundtree's compensation benefits as TPD.

513.   May 5, 2012, Roundtree requests review of SCF file #93-46568.

514. May 11, 2012, Roundtree purchases SCF file #93-46568 (300 documents in non-chronological order) from Mills. Defendants fraudulently and deliberately disordered SCF file #93-46568.

515. July 11, 2012, Roundtree files a RICO complaint for fraud against some of the Defendants herein. Judge Snow dismisses the complaint without leave to amend because apparently could not be cured even if amended.

516. July 24, 2012, Mills faxes letter to Leonetti regarding Roundtree. Defendants fraudulent and deliberately misrepresent, conceal, omit and/or fail to disclose:

    a. actual present symptoms of 6/18/93 injury to Roundtree's first digit including but not limited to crepitus, capsular tenderness, degenerative spurring, plantar sesamoid pain and pain on the plantar aspect of the first and second digits as established in 6/21/93, 6/28/93 and 7/6/93 reports;

    b. accurate factual medical foundation of injury to limit Roundtree's 6/18/93 injury to his second digit only;

    c. that Leonetti cannot medical and/or legally discharge Roundtree from care, provide Roundtree with an impairment rating and/or recommend supportive care award based on a report that recommends surgical intervention for Roundtree as his 7/14/11 or 7/26/12 reports indicate;

    d. Conspire to defraud Roundtree of Benefits and his Rights.

517. July 26, 2012, Leonetti faxes letter to Mills regarding Roundtree. Defendants fraudulent and deliberately misrepresent, conceal, omit and/or fail to disclose:

    a.  actual present symptoms of 6/18/93 injury to Roundtree's first digit including but not limited to crepitus, capsular tenderness, degenerative spurring, plantar sesamoid pain and pain on the plantar aspect of the first and second digits as established in 6/21/93, 6/28/93 and 7/6/93 reports;

    b.  accurate factual medical foundation of Roundtree's 6/18/93 injury;

    c.  Roundtree's 6/18/93 injury to limit his injury to his second digit only;

    d.  Roundtree is stationary; and

    e.  Roundtree is not seeking active medical care.

518.  August 3, 2012, Roundtree requests and purchases SCF file #93-46568 (300 copies). Defendants fraudulently and intentionally disorder SCF file #93-46568.

519.  August 6, 2012, Roundtree files complaint for Bad Faith and/or Unfair claim practices against SCF regarding harassment, threats of stopping indemnity checks and failures to answer.

520.  August 6, 2012, Roundtree receives Claim Master Update at ICA. Roundtree's 6/18/93 injury code states **530 FOOT NOT ANKLE OR TOE**.

Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose Roundtree's 6/18/93 injury as described in reports dated 6/21/93, 6/28/93 and 7/6/93.

521.  August 22, 2012, named ICA Defendant Melinda K. Poppe (Poppe) fraudulently denies Roundtree's complaint of Bad Faith and/or unfair claim practices. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

a. Poppe is former Assistant Chief Counsel at SCF (as recently as 2011);

b. conflict of interest of Poppe as ICA Claims manager;

c. ICA claim office as fair and impartial regulators of workers compensation claims against SCF;

d. Violate Roundtree's right to due process;

e. Violate Roundtree fair and impartial hearings;

f. Conspire to defraud Roundtree of his Benefits and Rights; and

g. Abuse of discretion;

h. Abuse the workers compensation process.

522.    On or about September 13, 2012, Roundtree discovers that Poppe is the former Assistant Chief Counsel at SCF and submits written complaint to ICA claims office.

523.    September 13, 2012, Roundtree attempts to file complaint against Leonetti for his 7/14/11 IME with named State of Arizona Board of Podiatry Examiners (Examiners) Defendant Executive Director Sarah Penttiten (Penttiten).[72] Defendants deliberately and fraudulently:

a. Deny Roundtree right to due process regarding his complaint;

b. Abuse examiners complaint process;

c. Harass Roundtree because of his Leonetti complaint.

524.    September 25, 2012, Poppe rescinds denial of Roundtree's bad faith claim and recuses herself from the matter.

---

[72] Leonetti's brother Joseph Leonetti is the Chairman of Board for Examiners.

525.    September 26, 2012, unknown Assistant Claims manager then denies Roundtree bad faith claims. Defendants fraudulently and deliberately conspire to conceal Defendants criminal acts.

526.    September 26, 2012, named SCF Defendant Bobby J. Fox, Legal Compliance and Risk Officer files an order of protection against Roundtree in Phoenix Municipal Court with Judge Lance F. Jacobs, knowingly using an outdated address. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

    a.  Roundtree is a California resident;

    b.  Roundtree's current address as 2615 N. 114th Lane, Avondale AZ 85234;

    c.  Abuse of process; and

    d.  Coerce Roundtree into signing Arizona Order of protection to receive his September 2012 TPD Benefits and copy of SCF file #93-46568;

    e.  Conspire to violate right to due process;

    f.  Conspire to violate USC 18 § 1503; § 1510(d)(1)(A) and (B); § 1512(b)(1); § 1512(b)(2)(a); § 1512(c)(1); § 1512(c)(2); § 1513(e); § 1621 and § 1951(a).

527.    Roundtree, in his frustration with his situation in life, his injury and Defendant SCF constant trickery and deceit since 1993 clearly lost his temper and did yell obscenities on phone and did use foul language in emails, however death to the oppressor is a biblical reference as well as main theme in black oppression expressed in song by such artist as Bob Marley, but Roundtree concedes it was inappropriate behavior for a 44 year-old man to use towards his insurer albeit there criminals.

Roundtree knows it's not him who controls life and death and that forgiveness is the way our LORD and Savior, however Roundtree is extremely vexed with the Defendants about the events described herein.

528.    Roundtree has suffered and continues to suffer from depression, severe emotional and mental stress and reacted poorly and negatively to the ongoing fraudulent conduct surrounding *inter alia*, the break-up of his family, his injury, lack of a professional football career, lack of medical and compensation benefits and the building anxiety over dual joint replacement. Roundtree asserts he is also frustrated with the tremendous amount of paperwork being created, consuming his time and the considerable amount of time being spent away from his only son E.J.N.

529.    September 26, 2012, Roundtree files his second RICO fraud complaint against PSLP, SCF and ICA *et al.* in Arizona District Court.

530.    September 26, 2012, Roundtree contracts with PHXBIKE and owner Defendant Palmer Martines (Martines) to pack his new 2012 Cannondale Bad Boy Solo bike for shipment to California.[73]

531.    October 4, 2012, Mills mails Notice of Claim Status, Permanent Disability benefits and supportive medical Benefits to Roundtree. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

---

[73]  Roundtree on his return to Phoenix from California in March 2012 brought said bike to PHXBIKE and Martines to be unpacked and reassembled. Roundtree had intermittent history with PHX Bike and Martines purchasing, lights, tune-up, and flats leading up to 10/17/12 shipping incident.

a. that compensation and active medical treatment terminated because Roundtree was discharged;

b. Roundtree's injury is stable;

c. Roundtree's injury does not require active medical treatment;

d. Supportive medical benefits;

e. fraudulently conceal fraud within Leonetti IME;

f. Conspire to defraud Roundtree of his Benefits and Rights;

g. Illegally terminate benefits based on document that recommends surgery;

h. Conceal bad faith of non-payment of TTD and dependent benefits.

532. October 9, 2012, Mills mails letter to Roundtree, fraudulently and deliberately claiming Roundtree elected not have surgery at this time.

533. October 19, 2012, PHXBIKE and Martines shipped said bike via United Parcel Service (UPS) to the California bike shop requested by Roundtree. Roundtree subsequently attempts to retrieve bike from California bike shop however bike packaging is heavily damaged and contents are heavily damaged inside. UPS reports damage in transport. Roundtree takes pictures of bike box, files a UPS claim and returns bike to UPS for inspection.

534. November 27, 2012, named ICA Defendant ALJ Deborah Nye issues notice of pre-conference hearing to be held on 2/26/13.

535.  December 4, 2012, named SCF Defendants Julie A. Doherty (Doherty), of Defendant Klein, Doherty, Lundmark, Barberich & LaMont (KDLBLLaw) mails Roundtree and ALJ Nye notice of appearance.

536.  December 4, 2012, Doherty mails letter to ALJ Nye and Roundtree that fraudulently and deliberately states applicant seeks to re-litigate the relationship of a toe condition which is final and res judicata.

537.  December 14, 2012, ALJ Nye mails letter to Roundtree regarding 2/26/13 preconference hearing. Defendants fraudulently and deliberately misrepresent that ALJ has no jurisdiction over workmen's compensation fraud.

538.  January 7, 2013, Doherty mails letter to Roundtree, fraudulently and deliberately, using wrong address and requesting medical authorization of any/all outside medical records.

539.  January 29, 2013, Doherty, mails letter to Roundtree, fraudulently and deliberately using wrong address and misrepresenting Roundtree's request for any/all correspondence did not mean letters.

540.  January 29, 2013, Doherty, mails letter to Roundtree, fraudulently and deliberately using wrong address and misrepresenting SCF computer system regarding records for any/all compensation and medical payment history.

541.  January 29, 2013, Doherty, mails letter to Roundtree, fraudulently and deliberately using wrong address and conceal, omit and/or fail to disclose due and owing TTD and dependent benefits.

542.    On or about February 6, 2012, Roundtree requested numerous subpoenas for Defendant employer doctors Defendant Kates because he authored documents directly submitted as evidence by the Defendants. However ALJ Nye fraudulently and deliberately denied Roundtree's subpoena request to cross-examine not only Kates, but all the supeonas requested including the author of Defendants submitted evidence in clear violation of Hearing Rule R20-5-155 (G).[74]

543.    On or about February 6, 2012, UPS denied Roundtree's damage claim due to inadequate packaging and contacted Martines at PHXBIKE via certified mail on 2/7/13 to pick up the damaged package within 10 calendar days of receipt of the letter or the contents will be destroyed. Subsequent to 10-day notice Martines failed to pick up damaged package and Roundtree's bike was destroyed.

544.    February 12, 2013, ALJ Nye refuses to act regarding Defendants failure to answer Roundtree request for discovery of medical payments for supportive care award since May 1996. Defendants fraudulently and deliberately violate Roundtree's right to procedural due process, right to a fair and impartial trail. ALJ Nye failure to act show her compliance in Defendants complicated on-going fraud scheme and her attempt to conceal said on-going fraud in which she abuses her discretion, abuse of discovery process, *inter alia*.

---

[74] Roundtree contends ALJ Nye actions show her compliance in the Defendants complicated on-going fraud scheme and her attempt to conceal said on-going fraud. Defendants fraudulently and deliberately conspired to defraud Roundtree of his benefits and his Rights; deny his right to procedural due process and fair and impartial trail; prevented a witness from testifying regarding insurance matter; abuse of process; and abuse of discretion.

545.  February 19, 2013, Doherty mails letter to Roundtree, with correct home address but fraudulently and deliberately conceal omit and/or fail to disclose discovery of medical payments for supportive care award since May 1996.

546.  February 21, 2013, Doherty, faxes letter to Roundtree, with correct home address but fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

   a.  medical payments record prior to named Defendant Jacoby in 2008;

   b.  medical payment record since May 1996 supportive care award.

547.  February 22, 2013, ALJ Nye mails letter to Roundtree fraudulently and deliberately:

   a.  Misrepresenting date of letter as January 30, 2013;

   b.  Misrepresents 2/26/13 hearing as pre-conference hearing.

548.  Hearing date February 26, 2013, ALJ Nye, Doherty and Mills fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

a.  hearing as pre-conference hearing;

b.  appearance of Defense witness Mills;

c.  Violate Roundtree's right to due process;

d.  Violate Roundtree's right to a fair trial;

e.  Mills perjurers herself that Roundtree had no earnings;

f.  Abuse her discretion and the process by allowing Mills to testify without notice;

g.  Interfered with cross-examination of Mills;[75]

---

[75]  Roundtree contends ALJ Nye attempted to conceal Defendants fraud by disrupting cross-examination of Mills because she was fumbling and stumbling over her testimony.

h. ALJ Nye violates A.R.S. 23-941(f).

549.    June 17, 2013, hearing with ALJ Nye and Doherty for the testimony of Cachia. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

a. interfered direct examination of Cachia as to employer medical records;[76]

b. Deny Roundtree right to present medical evidence contained within the record;

c. Deny Roundtree right to subpoena witnesses;

d. Abuse process;

e. Abuse of discretion;

f. Violate A.R.S. 23-941(f).

550.    August 20, 2013, hearing ALJ Nye and Doherty for the testimony of Leonetti. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

a. ALJ Nye denying Roundtree the right to fully cross examine Leonetti;

b. conspire to conceal Leonetti IME misrepresentations;

c. conspired to conceal Defendants ongoing fraud scheme;

d. Interfered with cross-examination Leonetti;

e. ALJ Nye limited Leonetti direct/cross-examination to 57m and 58sec;

f. actual present symptoms of Roundtree's 6/18/93 injury regarding Sellers 6/21/93 exam;

---

[76] Specifically 6/21/93; 6/28/93; 7/6/93; 7/7/93; 8/3/9 3; 8/16/93; 8/19/93; 9/1/93; 9/21/93; 11/21/93 and 4/6/94.

g. actual present symptoms of Roundtree's 6/18/93 injury and the injuries accurate factual medical foundation;

h. Roundtree did not injury his first digit on 6/18/93 claiming his first digit was injured prior to Rattlers arrival notwithstanding the 1989 sesamoidectomy;

i. ALJ Nye, abuse of discretion, abuse of process by denying Roundtree the right to fully cross examine Leonetti;

j. ALJ Nye, Abuse of discretion Abuse of process denying Roundtree right to subpoena Kates for cross examination;

k. Violate A.R.S. 23-941(f).

551. The record will show Leonetti committed perjury during 8/20/13 Hearing regarding his 7/14/11 IME and employer doctor injury reports.

552. On or about October 16, 2013, Roundtree contacted office of ALJ Nye reaching her administrative assist, named ICA Defendant Gloria Gonzalez (Gonzalez) who stated that the ALJ Nye was still waiting on the hearing transcripts and she had 30 days from that day to issue a decision. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

a. when ALJ Nye received hearing transcripts;

b. Defendants conspire in an attempt to let the statutes run on Roundtree's potential state and federal claims;

c. ALJ Nye 60 day delay in issuing a Decision in violation of A.R.S. 23 § 942(A).[77]

---

[77] A.R.S. 23 § 942(A) reads: Upon the conclusion of any hearing, or prior thereto with concurrence of the parties, the administrative law judge shall promptly and *not later than*

d. Defendants knowingly attempt to delay and let the statute of limitations run on Roundtree's state and federal claims.

553.    On or about October 23. 2013, Roundtree contacted court reporter, Deborah J. Worsley Girard (Girard) via telephone. Girard informed Roundtree that as a matter of law that she has to have the transcripts to ALJ Nye within 2 weeks of the close of the hearing, in this case, September 3, 2013.

554.    November 21, 2013, ALJ Nye issues her Decision Upon Hearing and Findings and Award (Decision) and mails it to Roundtree and Doherty. Eventhough, Roundtree was successful in his bid to gain medical treatment for both his first great toe and second digit as recommended by Dr. Cachia, Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose:

a. ALJ Nye 60-day delay in issuing a Decision in violation of A.R.S. 23 § 942(A);

b. conspire with Defendants in an attempt to let the statutes run on Roundtree's potential state and federal claims;

c. conspire with Defendants in an attempt to defraud Roundtree of due and owing TTD and dependent benefits;

d. Applicant is awarded TTD and TTP benefits as provided by law, from May 31, 2011, until his injuries are determined to be medically stationary, with credit

---

*thirty days after the matter is submitted for decision* determine the matter and make an award in accordance with his determination.

given to the carrier for temporary disability benefits previously paid through October 4, 2012;

e. It is Ordered that applicant is due no further temporary disability benefits for the time period May 31, 2011 through <u>October 4, 2012</u>;[78]

f. Actual present symptoms of Roundtree's 6/18/93 injury;

g. Accurate factual medical foundation of Roundtree's 6/18/93 injury;

h. Roundtree filing of preliminary Injunction to prevent further fraud in this case.

555.    December 9, 2013, Roundtree files a request for review regarding due and owing TTD and dependent benefits denied in ALJ Nye Decision and points out the mistake of October 4, 2013 in the Order. Roundtree also requests a 1061(J) hearing regarding SCFs deliberate failure to pay said benefits since 9/19/11 and 12/20/11, respectively which should include a 25% benefit penalty due pursuant ARS 23-942.

556.    December 11, 2013, named ICA Defendant Robert Galyen (Galyen) mails letter to SCF and Roundtree requesting SCFs response to Roundtree's 12/9/13 1061(J) request.

557.    December 13, 2013, Mills contacts Roundtree via email stating she contacted Dr. Cachia for clarification of work status in order to process compensation. Defendants fraudulently and deliberately unreasonably delay pay due and owing benefits.

---

[78]    Roundtree contends ALJ Nye conspires with Defendants in an attempt to let the statutes run on Roundtree's by making numerous "mistakes" such as the October 4, 2013 date pointed out by Plaintiff and corrected by a second Order Nunc Pro Tunc dated December 4, 2013. Defendants actions are also an abuse of process, violate procedural due process and right to fair and impartial hearing, abuse of discretion and 18 USC 1962, inter alia.

558.    January 15, 2014, Roundtree contends his procedural due process rights were violated during the ICA Special Review Process in Arizona Court Appeals by having to wait 45-days for the close of the ICA claim to receive ($0.25) copies of the hearing transcripts to be able to present all relevant issues on Appeal and/or for preliminary Injunction.

559.    The hearing transcripts are critical to any Claimant and especially pro se Claimants for filing an Appeal. The 30-day time limit in which to file a Special Action Review does not allow claimants to base their appeals on the actual hearing record without forcing Claimants to buy the Hearing Transcripts from the court reporter for hundreds if not thousands of dollars.

560.    Roundtree contends Defendants have defrauded him and continue to defraud him beyond the date of this document.

## CAUSES OF ACTION

## COUNT I

### ACTION FOR INJUNCTIVE RELIEF-FRAUD

**(PSLP, LEGACY, ARENASPORTS, J. COLANGELO, B. COLANGELO, SARVER, SCF, HCX, LEONETTI, AFAC, DOHERTY, KDLBLLAW, ICA, ALJ NYE, ARIZONA COURT OF APPEALS ACTION No: 1 CA-IC 14-0007)**

**(STATE OF ARIZONA BOARD OF PODIATRY EXAMINERS, SARAH PENTTINEN, DR. JOSEPH LEONETTI, DR. JEROME COHN)**

561.    Roundtree incorporates each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

### Action For Injunctive Relief-Fraud

562. The first case in controversy is between Roundtree (Plaintiff, Claimant or Roundtree) on the one hand and PSLP and/or LEGACY and/or ArenaSports, SCF, ICA, Kates, Leonetti and ALJ Nye, among others (*collectively*, Defendants) illegal conduct spans 20 years.

563. The second case in controversy is between Roundtree (Plaintiff, Claimant or Roundtree) and State of Arizona Board of Podiatry Examiners (Examiners) specifically Penttinen, Dr. Joseph Leonetti and Dr. Jerome Cohn based on the misprensentation, concealment, omission and/or non-disclosure contained within Dr. Dr. William Leonetti, 7/14/11 IME.

564. Pursuant to Fed. R. Civ. P. Rule 65, Roundtree seeks preliminary injunctive relief as to the following:

   a. that in the Decision workers compensation case of *Sean Roundtree* (Roundtree) *v. State Compensation Fund* (SCF) *and Phoenix Arena Sports* (ArenaSports) with Industrial Commission of Arizona (ICA) claim number #93-279406248 issued a Decision by Administrative Law Judge Deborah A. Nye (ALJ Nye), on 11/21/13 and Request for review filed and upheld on 12/31/13. With a Special Review deadline of 1/30/14 Roundtree would like the appeal process be temporary suspended until the fraud, non-disclosure, negligence and RICO claims against the Defendants are adjudicated.

   b. Roundtree suffered a work place injury on 6/18/93. Roundtree represented himself and the claim was eventually closed with a 5% disability of the left foot in 1996.

c. Roundtree, again pro se, petitioned to reopen his claim on or about May 27, 2011 with a medical report of Dr. Victor V. Cachia (Dr. Cachia) attached dated 3/14/11. On 7/14/11 Defendants requested Roundtree undergo an IME by Dr. William Leonetti (Leonetti) of American Foot and Ankle Care (AFAC). Leonetti issued an IME report wrought with fraudulent concealment.[79] Roundtree investigated

---

[79] July 14, 2011, Leonetti performs IME on Roundtree. Defendants fraudulently and deliberately misrepresent, conceal, omit and/or fail to disclose including but not limited to:

a. Disorder the Review of Medical Records to fraudulently conceal the nature and extent of their criminal activities by fraudulent means;

b. Cachia's surgical options;

c. how Roundtree's 6/18/93 injury occurred;

d. 6/18/93 injury occurring only to second toe;

e. actual present symptoms of injury to Roundtree's first digit including but not limited to crepitus, capsular tenderness, degenerative spurring, plantar sesamoid pain, pain at the plantar aspect of the first and second digits as established by 6/21/93 and 6/28/93 reports;

f. fail to review medical reports of any/all of PSLP and/or ArenaSports employee doctors and/or referrals such as: Sellers, 6/21/93, 6/28/93, 7/6/93 and 8/16/93; Kates and Copoloff, 7/7/93; Maddox, 8/3/93 and 8/16/93; McDermott, 8/19/93 and 4/6/93; Emerson, 8/16/93; and Johnson and Kile 9/21/93 and 11/21/93;

g. Johnson and Kile did not provide post-operative physical and/or functional therapy for Roundtree;

h. Presents 1989 sesamoidectomy as pre-existing injury as Red herring;

i. Johnson's diagnosis;

j. disorder of Cachia 9/7/93 opinion;

k. Cachia 9/7/93 opinion is at the direction of Johnson;

l. postoperative course included a multitude of palliative measures, including physical therapy, custom made orthotics, anti-inflammatories, alteration of shoe gear and treatment by multiple physicians;

m. disorder of Freed February/March 1994 opinion;

n. Freed record as a second opinion to Johnson;

o. accurate medical factual foundation regarding Freed correction of hallux valgus;

p. Freed as recommending continued conservative care;

q. Kates second IME report dated 12/12/95;

r. Disorder of Cachia 3/14/11 surgical options;

1  Leonetti IME and found Leonetti misrepresented, concealed, omitted and/or failed

2  to disclose actual present symptoms of injury regarding Roundtree's 6/18/93

3  injury and misrepresented, concealed, omitted and/or failed to disclose accurate

4  factual medical foundation based on the record.

5

6  d.  Defendants accepted Roundtree's claim for Benefits on or about 9/26/11 however

7  Defendants deny and continued to deny medical treatment as requested by

8  Roundtree's treating physician, Dr. Cachia.

9

10  s.  Fail to review numerous doctors reports from 1998 to 2010, specifically Dr. Benoit recommending surgery as Dr. Cachia recommended in 2007-8;

11  t.  Roundtree complaints of associated secondary injuries of arch, Achilles, ankle, knee, low back, neck and shoulders.

12  u.  Roundtree Chief Complaint #6 as pointing to sub 2nd MPT joint area;

13  v.  Roundtree's weight as 250lbs;

14  w.  Roundtree's answer to excellent muscle tone;

15  x.  Roundtree's shoes removed in Leonetti presence;

    y.  Leonetti took Roundtree's shoes from underneath chair and removed orthotic inserts to inspect them without asking;

16  z.  2nd metatarsal as unusually long regarding Radiographs;

17  aa. Assessment #2 hallux valgus bunion deformity and cock-up deformity as pre-existing;

18  bb. Assessment #4 hallux malleolus cock-up 1st digit related to pre-existing factors;

    cc. Discussion #1 development a hallux mallcolus as a result of 1989 sesamoidectomy;

19  dd. length of 2nd metatarsal as unusual long;

20  ee. Discussion #2 response regarding 1st MTP joint bunion deformity;

    ff. Discussion #2 response regarding any surgical procedure that addresses 1st digit are

21  not related to 6/18/93 injury;

22  gg. Discussion #2 that Roundtree does not have hammertoe deformity;

    hh. Discussion #2 length of 2nd metatarsal as unusually long;

23  ii. Associated secondary problems described as 716.17 Trauma Arthropathy in Ankle; 729.5 Pain in Limb; and 726.90 Enthesopathy, Site NOS from IME;

24  jj. July 14, 2011, Roundtree was directed by Juan "Doe" x-ray technician to take

25  radiograph of left foot standing on the edge of a wooden 2 x 4 with bent knee similar to a calf stretching exercise. Roundtree attempted to accommodate the techs request

26  but declined, due to serious pain and safety concerns. Defendants fraudulently and deliberately attempt to injury Roundtree. Plaintiff now understands Defendants

27  Leonetti and Juan battered Roundtree in attempt to fraudulently deflect his injury.

28

e. Defendants later terminate Roundtree's compensation and medical benefits on 10/4/12 stating Roundtree's was discharged, injury resulted in permanent disability and provided supportive care for two years however the claim notice was based on a report that was in conflict with Roundtree alleged stationary status because Roundtree still required surgery. As Roundtree continued to investigate his claim he started to believe his entire SCF file #93-46568 was wrought with fraud and requested a hearing based on bad faith, fraud, and non-payment of medical benefits.

f. However, ALJ Nye denied jurisdiction of Roundtree's fraud claims and only allowed Roundtree's bad faith and non-payment of medical benefits. Roundtree was informed he would have the burden of proof and will need to prove the extent of his injury through medical evidence and testimony (ALJ Nye, Letter to Claimant dated 12/14/12).

g. However, ALJ Nye denied Roundtree the opportunity to prove the extent of his injury through medical evidence and testimony.

h. Thus Violating Roundtree's constitutional rights to due process and property. Defendants have been allowed to abuse the workers compensation hearing process by failing to answer Roundtree's discover request of medical payment records since 1996 Decision award supplemental medical care.

i. ALJ Nye failed to notify Roundtree of appearance of SCF senior claims representative, Janine Mills (Mills) at the pre-conference hearing on 2/26/13.

When Roundtree asked why is Mills here? ALJ Nye responded because she wanted her here, Roundtree responded nobody told me;

j.  Roundtree didn't get any information that Mills would be appearing on 2/26/13. ALJ Nye offered no explanations. Roundtree objected to Mills appearance on the record.

k.  Later, two (2) other witnesses were allowed to appear, Dr. Cachia for Plaintiff and Dr. William J. Leonetti for Defendants. Roundtree requested additional subpoenas, among others, Dr. Michael J. Kates because Defendants submitted his (2) 1995 IME reports and 1996 hearing testimony as evidence in February 2013, however ALJ Nye abused her discretion and denied Plaintiff's subpoena request for Kates.

l.  ALJ Nye abused her discretion and denied Roundtree the ability to prove the extent of his injury through Dr. Cachia interpretation of established medical record. ALJ Nye granted Defendants objection to Dr. Cachia speaking on medical evidence contained in the record.

m.  ALJ Nye abused her discretion and denied Roundtree full opportunity to cross-examine Leonetti; ALJ Nye interrupted every few minutes either to inform Roundtree how much time Leonetti had remaining on cross or defend Leonetti avoidance of answering the questions about the record compared to his 7/14/11 IME.

n.  ALJ Nye limited Leonetti's time on the stand to 57 minutes for both direct and cross. Roundtree lost his temper and ALJ Nye terminated cross-examination.

Roundtree attempted to expose Leonetti's fraudulent and biased behavior, as pled herein.

o.  Calls in mid-October to ALJ Nye office were met with misrepresentation of material fact regarding non-receipt of the hearing transcripts from Deborah J. Worsley Girard of Worsley Reporting (602.258.2310 or dworsley@quest.net).[80] Additional calls to ALJ Nye's office in late October and early November were not returned.

p.  The hearings concluded on 8/20/13, but oddly enough, ALJ Nye did not issue a Decision until 11/21/13 in violation of the 30-day limit pursuant ARS 23-942.

q.  Although Roundtree was successful in being awarded Medical Benefits as recommended by his treating physician in ALJ Nye Decision issued on 11/21/13.

r.  Roundtree continues to be denied due process, notification of Defense witness Mills, denied due and owing dependent benefits and due and owing benefit penalties for unreasonable delay and/or non-payment of benefits as a matter of law.

s.  ALJ Nye 18-page decision is wrought with disinformation and constructed confusion, fraudulent concealment and constructive fraud.

t.  Roundtree fears Defendants on-going fraud poses a threat to his life, treatment and recovery in anticipation of his artificial joint replacement surgery of his first and

---

[80] Roundtree was informed by ALJ Nye, administrative assistant, Gloria Gonzalez on or about 10/15/13 that ALJ Nye was still waiting on the transcripts.

Roundtree spoke with Mrs. Worsley-Girard of Worsley Reporting, Inc., and Worsley-Girard stated she was required by law to have the transcripts in ALJ Nye's office by 9/3/13 and she said she had done just that.

second digits, left foot, including but not limited to: referrals to orthorpedic doctor and kinesiologist, Roundtree losing 50lbs, complete physical and function therapy.

u. (1) Roundtree should succeed on the merits of his workers compensation case despite Defendants fraud because (i) the facts and case law support Roundtree's claim; (ii) the medical evidence supports Roundtree's claim; and (iii) Defendants fraud is exposed; (2) Defendant's original argument was that Roundtree's 6/18/93 injury was limited to second toe only and that the claim was bared by claim preclusion, however Roundtree was blessed with the discovery of a Memorandum that demonstrates it was actually the Defendants who were precluded from re-litigating the compensability and/or medical treatment of Roundtree's 6/18/93 injury that included but is not limited to his first great toe and his second digit (Roundtree 2/11/13 Memorandum).[81]

---

[81]    Compensability of a work injury requires both legal and medical causation. *Grammatico v. Indus. Comm'n,* 211 Ariz. 67, 71, ¶ 19, 117 P.3d 786, 790 (2005); *DeSchaaf v. Indus. Comm'n,* 141 Ariz. 318, 320, 686 P.2d 1288, 1290 (App.1984). A claimant establishes legal causation by demonstrating that the accident "arose out of" and "in the course of" employment. *Grammatico v. Indus. Comm'n,* 208 Ariz. 10, 12-13, ¶ 8, 90 P.3d 211, 213-14 (App.2004), aff'd, 211 Ariz. 67, 117 P.3d 786 (2005); *see also* A.R.S. § 23-1021(A) (Supp.2006) Medical causation is established by showing that the accident caused the injury. *Grammatico,* 211 Ariz. at 71, ¶ 20, 117 P.3d at 790; *DeSchaaf,* 141 Ariz. at 320, 686 P.2d at 1290. An increased risk of injury related to work satisfies this standard. *See, e.g.,* 1 A. Larson, *Workmen's Compensation Law* § 6.30 (1989). Therefore, Roundtree's 6/18/93 industrial injury to his left foot as described in Defendants medical report dated 6/21/93 includes his first great toe and his second digit.

    In general, an industrial accident need only partially cause an injury. *E.g., Allen v. Industrial Commission,* 124 Ariz. 173, 602 P.2d 841 (App. 1979). The employer takes the employee as he is, and if the industrial accident combines with a pre-existing condition to cause a further injurious result, this condition is compensable. *E.g., Nelson v. Industrial Commission,* 24 Ariz. App. 94, 536 P.2d 215 (1975). Therefore, Roundtree's 6/18/93

industrial injury to his left foot as described in report dated 6/21/93 includes his first great toe and his second digit.

Furthermore, potential future progression is no defense to the compensability of actual present symptoms. *See, e.g., Schreven v. Industrial Comm'n,* 96 Ariz. 143, 393 P.2d 150 (1964). Industrial Indemnity concedes that an employer must take an employee "as is" and that the relative importance of contributing causes is immaterial. *See, e.g., Pearce Development v. Industrial Comm'n,* 147 Ariz. 598, 602-03, 712 P.2d 445, 449-50 (App. 1985), *approved in part* 147 Ariz. 582, 712 P.2d 429 (1985). Arizona law recognizes that subsequent workplace injuries can aggravate pre-existing injuries, and coverage for that aggravated injury properly lies with the workers compensation insurer. *See, Indus. Indemnity Co. v. Indus. Comm'n of Ariz.,* 152 Ariz. 195, 199, 731 P.2d 90, 94 (Ct. App. 1986). Therefore, Roundtree's 6/18/93 industrial injury to his left foot as described in report dated 6/21/93 includes his first great toe and his second digit.

It is well settled that to be compensable in Arizona an accident need not be the sole cause of a medical condition as long as it is a cause. *Harbor Insurance Co. v. Industrial Commission,* 25 Ariz. App. 610, 545 P.2d 458 (1976). Therefore, Roundtree's industrial left foot injury as described in the injury report dated 6/21/93 and 9/4/93 workers & physician's injury report includes his first great toe and his second digit. A statement of the test used in determining causation is set forth in *American Smelting & Refining Co. v. Industrial Commission,* 25 Ariz. App. 532, 544 P.2d 1133 (1976): It is well established that where, as here, the chain of causation from the original industrial injury to the condition for which compensation is sought is direct, and not interrupted by any intervening cause attributable to the claimant's own intentional conduct, then the subsequent injury or death should be compensable. See 1 Larson, Law of Workmen's Compensation, § 13.11, and cases cited therein. 25 Ariz. App. at 534, 544 P.2d at 1135.

An award of the Industrial Commission will be affirmed if it can be supported by any reasonable theory of the evidence. *Reynolds Metals Company v. Industrial Commission,* 119 Ariz. 566, 582 P.2d 656 (App. 1978). Therefore, Roundtree's 6/18/93 industrial injury to his left foot as described in report dated 6/21/93 includes his first great toe and his second digit.

Roundtree advances a two-step argument for setting aside Defendant SCF October 4, 2012, Notice of Claim Status, Supportive Care Award and Notice of Permanent Disability. First, Roundtree contends SCF is barred from re-litigating the compensability of his left foot injury including the first great toe and the second digit because SCF accepted Roundtree's claim without protest or limitation in October 1993. Second, Roundtree asserts that Leonetti's medical opinion, when limited to addressing the need for surgery rather than the underlying compensability of Roundtree's first digit, is consistent with Roundtree's physician's (Dr. Cachia) opinion that Roundtree's foot injury requires surgery. Therefore, ALJ Nye cannot find conflicting medical opinions or even credit Leonetti's opinion that Roundtree's injury to his first digit is not work related.

Arizona's workers' compensation system is designed to allow carriers to make unilateral benefit determinations, which are subject to the claimant's right to request a hearing. A.R.S. § 23-1061(F) (Supp. 2010); *Nelson v. Indus. Comm'n,* 115 Ariz. 293, 295, 564 P.2d 1260, 1262 (App. 1977). If none of the parties requests a hearing, a notice of claim status becomes final and binding at the expiration of a ninety-day protest period. A.R.S. § 23-947(A)-(B) (Supp. 2010); *Church of Jesus Christ of Latter Day Saints v. Indus. Comm'n,* 150 Ariz. 495, 498, 724 P.2d 581, 584 (App. 1986) (holding claimant may "void the binding effect" of notice of claim status by filing a hearing request, and carrier can do so by unilaterally issuing a new notice). Once a notice of claim status becomes final, it is treated the same as any other final ICA award. *County of Maricopa v. Indus. Comm'n,* 134 Ariz. 159, 162, 654 P.2d 307, 310 (App. 1982). Therefore, Roundtree's 6/18/93 industrial injury to his left foot as described in Defendant Sellers report dated 6/21/93 includes his first great toe and his second digit.

A final ICA award has res judicata effect by application of principles of issue preclusion and claim preclusion. *See Circle K Corp. v. Indus. Comm'n,* 179 Ariz. 422, 428, 880 P.2d 642, 648 (App. 1993). Issue preclusion bars re-litigation of an issue of fact that is actually litigated and becomes essential to a final judgment. *Red Bluff Mines, Inc. v. Indus. Comm'n,* 144 Ariz. 199, 204-05, 696 P.2d 1348, 1353-54 (App. 1984). Claim preclusion bars re-litigation of the claim actually decided or that could have been decided after a timely protest. *W. Cable v. Indus. Comm'n,* 144 Ariz. 514, 518, 698 P.2d 759, 763 (App. 1985). Therefore, Roundtree asserts that SCF is barred by claim preclusion from re-litigating the compensability of his left foot because SCF accepted the claim in October 1993 (and upon reopening May 2011), and became final and binding ninety days later.

A claim is compensable if (1) the claimant suffered an injury and (2) the injury was caused by his work. *Yates v. Indus. Comm'n,* 116 Ariz. 125, 127, 568 P.2d 432, 434 (App. 1977). Unless obvious to a lay person, medical evidence is necessary to establish these elements. *Noble v. Indus. Comm'n,* 140 Ariz. 571, 574, 683 P.2d 1173, 1176 (App. 1984). Once the notice becomes final, however, "the elements of a compensable claim may not be re-litigated at a subsequent claim stage." *Aldrich v. Indus. Comm'n,* 176 Ariz. 301, 307, 860 P.2d 1354, 1360 (App. 1993) (citation omitted). Therefore, SCF acceptance of Roundtree's injury claim to his left foot as compensable is res judicata. The medical evidence establishing the elements of compensability was Defendant Sellers report included in Roundtree's initial claim filing. This report described an injury: "There is trace swelling second metatarsal. There is exquisite pain at the MP joint and distal second metatarsal. There is an obvious bunion deformity present with capsular tenderness at the first MP joint. There is motion restriction with crepitus to the first MP joint. Also, plantar sesamoid pain." The X-ray examination states, "second metatarsal reveals no evidence of acute fracture present. There appears to be a very microscopic fleck osseous avulsion present along the tibial aspect of the second MP joint. This does not appear to be involved with any major joint surface. There is evidence of hallux valgus deformity with degenerative spurring present, primarily tibia aspect of the first MP joint." Sellers'

1    assessment states "Left metacarpophalangeal joint sprain with symptomatic bunion." It
2    described the requisite work-related causation: Back-peddling at game in Dallas, planted
3    and felt pop to the foot. SCF had the opportunity to dispute that Roundtree's left foot
4    injury, including his first great toe and second digit, was a work-related injury. Having
     accepted Roundtree's injury as compensable, however, SCF is barred from re-litigating
     that issue. *Aldrich,* 176 Ariz. at 307, 860 P.2d at 1360.

5        SCF will argue that, because Roundtree's claim did not specify that treatment was
6    needed for both his first and second digits, SCF is not precluded from later disputing that
     Roundtree's first digit was work related. SCF rationale presents two distinct questions:
7    causation of the injury and appropriate treatment for the injury. Upon receipt of
8    Roundtree's claim, nothing prevented SCF from litigating whether injury to his first great
     toe was caused by work regardless of what treatment might be warranted. SCF was free,
9    however, to dispute the treatment for injury to the first great toe because the claim stated
10   that further treatment was needed but undetermined. On 8/19/93 employer physician
     Defendant McDermott reported that surgery to Roundtree's second digit would not help
11   his problem referring Roundtree instead to Defendant Johnson of the Mayo Clinic.
12   However, on 9/7/93 Dr. Cachia evaluated Roundtree addressing the need for surgery to
13   both the first great toe and second digit. Conversely, on 9/12/93 Dr. Johnson evaluated
     Roundtree addressing the need for surgery on his second digit only. Consequently, the
14   need for surgery on the first great toe and second digit could have been litigated at the
     time of acceptance (October 1993) thus claim preclusion applies to bar re-litigation of
15   Roundtree's surgical treatment. *Aldrich,* 176 Ariz. at 307, 860 P.2d at 1360. Therefore
16   ALJ Nye would err by adopting Leonetti's opinion that the first great toe was not work
     related or Leonetti's opinion of second toe surgery.

17       Consequently, Defendants are hereby collateral estopped or estopped by laches
18   from using res judicata as a defense. Roundtree hereby respectfully requests
     reinstatement of medical and compensation benefits pursuant A.R.S. 23-1061(H) and 23-
19   1062(C) and seeks treatment as prescribed by Dr. Cachia's 3/14/11 and/or 1/30/13
20   reports. This includes reasonable and necessary diagnostic and/or investigative tests for
     well-documented associated secondary and adaptive complaints that are causally related
21   to the 1993 injury including but not limited to claimants, ankles, knees, hips, low back
     and shoulders.

22       After discounting Dr. Leonetti's opinion regarding causation and treatment, the
23   remaining medical evidence fails to support any facet of the Defendants case including
     the Notice of Claim Status, Supportive Care Award and/or Permanent Disability Award.
24   Both Drs. Cachia and Leonetti agree that Roundtree's left foot injury should be actively
25   treated. Thus, no conflict in the medical evidence exists concerning Roundtree's need for
     further treatment therefore, Roundtree is not stationary.

26       A condition is stationary when medical treatment will not improve it. *E.g., Field v.*
27   *Industrial Commission,* 128 Ariz. 425, 626 P.2d 155 (App. 1981). Expert medical
     evidence, therefore, is indispensable to prove when a condition becomes stationary. *Id.* at
28   428, 626 P.2d at 158. Further, Leonetti's IME cannot, without pure conjecture, medically

v. Roundtree filed a Memorandum that demonstrates Defendants 10/4/12 Notice of

Claims status is void on its face as a matter of law because it is based on medical

report recommending further active medical care. Roundtree also points out that

or legally support Defendants Supportive Care Award prior to Roundtree receiving said treatment and/or prior to achieving maximal medical rehabilitation as this would be below the standard of care and complete guess work. (The supportive care statute, A.R.S. § 23-1065, provides that it is within the discretion of the Industrial Commission to award supportive medical benefits to be paid from a special fund. The Commission, however, cannot arbitrarily disregard the uncontradicted testimony of expert medical witnesses. *Gomez v. Industrial Commission*, 72 Ariz. 265, 233 P.2d 827 (1951)).

And for this Court to grant Defendants Supportive Care Award would be: wholly unreasonable; nonsensical and equivalent to putting the cart before the horse and clearly not in line with the constitutional objectives of the Act. What is more, Leonetti's IME cannot, without pure conjecture, medically or legally rate Roundtree (who is actively seeking medical treatment) with a permanent impairment within the criteria of the AMA Guides because Roundtree has not achieved maximal medical rehabilitation for his injury to be eligible for a Permanent Disability Award.

Roundtree adopts the definitions of the terms "permanent impairment" and "permanent disability" found in the *Preface* to the AMA Guides: "(1) *Permanent Impairment.* — This is a purely medical condition. Permanent impairment is any anatomic or functional abnormality or loss after maximal medical rehabilitation has been achieved, which abnormality or loss the physician considers stable or non-progressive at the time evaluation is made. It is always a basic consideration in the evaluation of permanent disability."(2) *Permanent Disability.* — This is not a purely medical condition. A patient is `permanently disabled' or `under a permanent disability' when his actual or presumed ability to engage in gainful activity is reduced or absent because of `impairment' which, in turn, may or may not be combined with other factors...."(3) *Evaluation (Rating) of Permanent Impairment.* — This is a function that physicians alone are competent to perform. Evaluation of permanent impairment defines the scope of medical responsibility and therefore represents the physician's role in the evaluation of permanent disability...."(4) *Evaluation (Rating) of Permanent Disability.* — In the last analysis, this is an administrative and not solely a medical responsibility and function. Evaluation of permanent disability is an appraisal of the patient's present and future ability to engage in gainful activity as it is affected by such diverse factors as age, sex, education, economic and social environment, in addition to the definite medical factor — permanent impairment...."

Therefore, Leonetti's "expert" IME testimony is ambiguous, misleading and confusing at best rendering Defendants Notice of Claims Status, Supportive Care and Permanent Disability Awards as factually flawed and without medical or legal foundation.

his treating physician did not discharge him on 10/4/12 as indicated by Defendants. (Roundtree 3/6/13 Memorandum).[82]

---

[82] Roundtree contends that Defendants Notice of Claims Status issued on 10/4/12 is void or voidable as a matter of law because it is based on Dr. William J. Leonetti's IME 7/18/11 medical report that directly contradicts the notice by recommending further active medical care. *See Roseberry v. Industrial Commission,* 113 Ariz. 66, 546 P.2d 802 (1976) (termination void because based on medical report recommending further active medical care). *But cf. Calixto v. Industrial Commission,* 126 Ariz. 400, 616 P.2d 75 (App. 1980). What is more, the conclusion of a stationary condition contained in the notice is unsupported by the very medical report upon which the notice depended; the notice there was held to have been void on its face. *See also Bernard v. Industrial Commission,* 24 Ariz. App. 136, 536 P.2d 705 (1975) and *Best v. Industrial Commission,* 14 Ariz. App. 221, 482 P.2d 470 (1971), Therefore, Defendants Notice of Claims Status, Notice of Permanent Disability Benefits and Notice of Supportive Care Award should be rescinded and Benefits reinstated retroactively since 10/4/12. (Roundtree Memorandum dated 3/6/13).

In his 8/29/12 report Claimants treating Physician (Dr. Victor V. Cachia) states Claimant is on "temporary and total disability from work until 10/4/12 pending surgery." Dr. Cachia did not discharge Claimant on 10/4/12 but only offered an arbitrary date in which to attempt to gain approval from Defendants regarding his surgical recommendations. This assertion is supported by Dr. Cachia's 4/4/12 report which states "patient is on temporary and total disability from work until 10/4/12 pending surgery" as well as other reports including the one attached to Claimants petition to reopen which states "He will be scheduled for surgery once workers' compensation approves." Surely it is reasonable for Dr. Cachia to assume Defendants would have approved Claimants surgery within the next 6 months having already waited 14 months previously. Therefore, Defendants assertion that Claimant was discharged on 10/4/13 is wholly unfounded.

More importantly, between 8/29/12 and 10/4/12 Defendants did not issue Claimant a "twenty-day" letter, nor did Defendants attempt to email claimant with the same type of examination and/or active medical care reminder they had done in their 7/24/12 email. Therefore, Defendants assertion that Claimant was discharged on 10/4/13 is wholly unfounded.

All of the medical evidence in this case contradicted the Defendants 10/4/12 termination notice as Defendants were on notice that Claimant was awaiting approval of his surgical benefits. SCF Representative Janine Mills exchanged correspondence with Dr. Cachia and even spoke with him directly via telephone regarding the difference in surgical recommendations and the long delay in approving such benefits shortly before Defendants termination. Moreover, medical reports were prominent and to discover them, SCF did not have to search its file for inconspicuous information. "[SCF] is deprived of any right to make a unilateral determination of benefits where there could be the slightest

w. Roundtree has and will continue to suffer irreparable harm in the absence of preliminary relief including but not limited to: (1) Defendants non-disclosures, misrepresentations, concealments and omissions; (2) Defendants conspiracy to commit fraud; (3) Embezzlement of Plaintiffs compensation and medical benefits; (4) Denial 14th Amendment Rights of procedural due process; (5) ALJ Nye refusal to recluse herself regarding her conflict of interests as a former attorney for physicians of SportsMed, PSLP and ArenaSports team doctors; (6) Constant disruption of Plaintiffs cross-examination of Defense witness Leonetti by ALJ Nye and/or Defense attorney Julie A. Doherty; (7) Roundtree denial of Kates subpoena to cross-examine witness who authored filed medical evidence;[83] (8) limited cross-

---

doubt of the correctness of its determination." *Nelson v. Industrial Commission,* 115 Ariz. 293, at 295, 564 P.2d at 1262 (App. 1977). Therefore, Defendants assertion that Claimant was discharged on 10/4/13 is wholly unfounded.

Dr. Cachia examined Claimant on 1/30/13 and states "patient continues temporary total disability from his usual occupation due to the intrinsic structure of his left foot and associated secondary and adaptive complaints exacerbated by a 20-month delay since his initial examination." As of date of this document Claimant continues to seek medical approval of Dr. Cachia surgical recommendations. Therefore, Defendants assertion that Claimant was discharged on 10/4/13 is wholly unfounded.

[83] On 1/31/13 Defendants incorporated the 12/12/95 medical report of Dr. Michael J. Kates (Kates) in addition to his 1996 Hearing Testimony as documentary evidence. On 2/5/13 Roundtree timely requested a subpoena for Kates pursuant R5-20-141 and R5-20-155; ALJ Nye is dependent upon the documentary evidence of Kates; In 2/26/13 hearing Defendants wrestled with the fact of calling Kates and Leonetti to testify on their behalf.

As part of the statutory mandate of "substantial justice," Arizona courts have carefully guarded a party's right to cross-examine the author of any document that the ALJ considers as substantive evidence. *See Schnatzmeyer v. Industrial Comm'n,* 78 Ariz. 112, 114, 276 P.2d 534, 535 (1954) (an opponent has a right to cross-examination "by decision of this court if the commission is to use as evidence reports of investigators and doctors or ex parte affidavits"); *Obersteiner v. Industrial Comm'n,* 161 Ariz. 547, 549, 779 P.2d 1286, 1288 (App. 1989) ("The right to cross-examination is fundamental and attaches when the Industrial Commission receives any testamentary or documentary

1   examine of Leonetti who was accused of misrepresentation, concealments and/or

2   material omissions to less than 30 minutes for a nine page IME report covering 18

3   years of medical history; Leonetti failed to answer questions and gave long drawn

4   out answers that failed to answer what was asked. When asked to please answer

5   the question ALJ Nye jumped in and told Plaintiff to move on; (9) Failure to

6   notify Plaintiff of Defense witness appearance, Janine Mills causing Roundtree to

7   be unprepared to present evidence bad faith and due and owing dependent and

8   evidence."); *Division of Fin. v. Industrial Comm'n,* 159 Ariz. 553, 556, 769 P.2d 461, 464 (App.1989) ("The right of cross-examination is necessary for substantial justice."); *Jones v. Industrial Comm'n,* 1 Ariz. App. 218, 222, 401 P.2d 172, 176 (App.1965) ("where the Commission uses evidence, testimony, reports, documents, affidavits or any matter which may appear in the file upon which to base an award, there must be full and complete opportunity on the part of the parties to cross-examine"); *see also* 7 Arthur Larson & Lex K. Larson, *Larson's Workers'* Compensation Law § 127.11[3][a]-[b], at 127-47 (2000) (characterizing the right of cross-examination as rule of evidence protecting elementary fair play). Accordingly, a claimant is entitled to cross-examine the author of a medical report entered into evidence by the respondent. *Scheytt v. Indus. Comm'n,* 134 Ariz. 25, 28, 653 P.2d 375, 378 (App. 1982).

   "If [A]pplicant believes a medical witness to be prejudiced or biased he may show this through his cross-examination of the witness at the time the witness testifies" (ALJ Nye in her letter dated 12/14/12 at pg. 2 ¶6 and at pg. 3 ¶9).

   The ALJ's discretion to regulate and control the witnesses that appear before it should *not be used arbitrarily to deny a litigant the opportunity to present evidence. See Polston v. Indus. Comm'n,* 13 Ariz. App. 291, 293, 475 P.2d 950, 952 (App. 1970).

   The Arizona Supreme Court has held that a party is denied procedural due process only when an official acting in a judicial or quasi-judicial capacity has "a direct, personal, substantial, pecuniary interest in reaching a conclusion against a litigant." *Ison v. Western Vegetable Distributors,* 48 Ariz. 104, 118-19, 59 P.2d 649, 656 (1936).

   Roundtree was denied procedural due process if he was deprived of the opportunity to cross-examine Dr. Kates, the author of a medical report entered into evidence by the respondents. *Scheytt, supra.* Workmen's compensation statutes are given a liberal interpretation in favor of the workman. *Pascucci v. Industrial Commission,* 126 Ariz. 442, 444, 616 P.2d 902, 904 (App.1980).

temporary total disability (TTD) benefits; Roundtree also contends he should receive a benefit penalty for unreasonable delay and/or non-payment of TTD and Dependent Benefits; (10) Fraudulent delay of ALJ Nye Decision Upon Hearing and Findings and Award pursuant to A.R.S. 23-942(A); (11) misrepresenting and/or concealing hearing transcripts to justify fraudulent delay of Decision Upon Hearing and Findings and Award past 30 days pursuant to A.R.S. 23-942(A); (12) ALJ Nye misrepresenting her jurisdiction over worker compensation fraud; (13) Allowing Defendants to fail in their duty to adhere to Plaintiff's discovery requests or orders of the Court; (14) RICO 18 U.S.C. § 1961 (a), (c) and (d) charges pending against these very Defendants for the very conduct complained of herein; (15) violation of Plaintiffs rights under 42 U.S.C. § 1983; (16) Defendants conspiracy to commit perjury; (17) illegal termination of his medical and compensation benefits since 10/4/12; (18) Plaintiff is need of surgical intervention of his left foot including but not limited to artificial replacement joints in the first and second digits; (19) Defendant ICA has a number of former SCF attorneys and/or attorney agents in vital position such as ALJs, Chief ALJ and Claims Manager that represent an obvious conflict of interest but those former employees fail to recuse themselves or recuse themselves after taking testimony or only recuse themselves after being called to the carpet which may have impacted thousands if not hundreds of thousands of Claimants cases since ICA and SCF split in 1968; (20) denial of property; (21) abuse of process; (22) harassment,

intimidation and retaliation for exerting rights as a pro se claimant; (23) Defendant doctors wilful misconduct in violation of A.R.S. § 23-1022 (24) disparagement treatment; (25) violation of 14th Amendment due process; (26) violation of 28 USC § 1985; (27) Defendants using employer doctors who previous examined Plaintiff as IME doctors; (28) Defendants illegally terminating benefits by fraudulent means (*i.e.*, using false addresses); (29) Defendants denying Plaintiff the ability to get material medical information on record on direct testimony;[84] (30) ALJ Nye telling Plaintiff to be quite and you'll be better off keeping quite when he objects to defendants line of questioning; (31) Defendants denying witness presentation of medical evidence on file in case;[85] (32) SCF and ICA Defendant employees actively misled Roundtree through affirmative conduct since

---

[84] We (Arizona Court of Appeals) note at the outset that the purpose of workmen's compensation is remedial. Provisions should be construed liberally so as to effectuate the purposes of the Act. "* * * proceedings before [the Industrial Commission] are not adversary proceedings and * * * it is as much the duty of the Commission to encourage and evaluate proper claims fairly as it is to expose and reject improper claims. The intention of the Workmen's Compensation Act was to provide benefits for workmen injured in the course and scope of their employment, and to do so by a relatively informal administrative procedure which would be less cumbersome and time consuming than formal court action. When a hearing is held it should be inclusive of all pertinent data available as of the date of the hearing * * *." *Lugar v. Industrial Commission,* 9 Ariz. App. 44, 49, 449 P.2d 61, 66 (1966). See *Allen v. Industrial Commission,* 87 Ariz. 56, 347 P.2d 710 (1959). Our supreme court has held that a party is denied procedural due process only when an official acting in a judicial or quasi-judicial capacity has" a direct, personal, substantial, pecuniary interest in reaching a conclusion against a litigant." *Ison v. Western Vegetable Distributors,* 48 Ariz. 104, 118-19, 59 P.2d 649, 656 (1936).

[85] Workmen's compensation statutes are given a liberal interpretation in favor of the workman. *Pascucci v. Industrial Commission,* 126 Ariz. 442, 444, 616 P.2d 902, 904 (App.1980).

1993; and (33) Defendants are having Petitioner followed and kept under surveillance long after the hearings have ended.

x. Roundtree fears for his life; Defendants wilfull miconduct is of trickery and deceitfulness as described herein.

y. Defendants are rumoured to have connections to gambling, organized crime and/or the mob.

z. This Honourable Courts granting of a preliminary injunction will serve public interest by simply delaying the ICA Special Review hearing on the preliminary injunction has been convened to: (1) tip the balances of fair play in Plaintiffs favour; (2) balancing the competing claims of injury; (3) exposing the fraud and/or conspiracy to commit fraud herein and bring about possible class action litigation against these Defendants; (4) persuading SCF to act in good faith and fair dealing with any/all injured Arizona workers; (5) fair and impartial adjudication of matters at the ICA for any/all injured Arizona workers; (6) dissuade all further acts of fraud by officers, directors, attorneys and/or agents of SCF, SCF policy holders and any/all ICA employees; (7) tipping the balances of fair play and possibly exposing former ICA hearing decisions (including bad faith claims filed with ICA claims division) where former SCF attorneys and/or employees preside over claims as ALJs and/or the claims division Manager against their former employer; and (8) by exposing to the public and other pro se claimants that former SCF